**Robbins Geller Rudman & Dowd LLP**

| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Susannah R. Conn
sconn@rgrdlaw.com

March 30, 2018

Honorable Jay C. Gandhi                                                                                                    VIA ECF
United States Magistrate Judge
United States District Court
411 West Fourth Street, Courtroom 6A
Santa Ana, CA  92071

      Re:     *Hsu v. Puma Biotechnology, Inc., et al.*, No. 8:15-cv-00865-AG-JCG

Dear Judge Gandhi:

      Plaintiff's motion to compel non-party Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz") to respond to Plaintiff's December 4, 2017 subpoena (the "Subpoena") was transferred to this Court on March 28, 2018.[1]  Pursuant to the Order Establishing an Informal Discovery Dispute Protocol, Plaintiff submits this reply in support of its motion.

      **Mintz Has Not Established that the Redacted Emails Are Privileged**.  Mintz's opposition ("Opp.") misstates the dispute: it is not whether the Redacted Emails are communications with Mintz's client (they're not), but rather that Mintz has failed to establish that they reflect legal advice intended for its clients.  Indeed, Mintz tacitly admits the emails are not privileged: in four emails, Mintz attorneys "discuss their representation of the Underwriters," and the fifth merely "comments on the contents of Auerbach's email." Opp. at 13.  None of this establishes, as it is Mintz's burden to do, that the redacted communications reflect legal advice for the underwriter clients.  *See In re Keeper of Records*, 348 F.3d 16, 22 (1st Cir. 2003).  Mintz's authority is therefore inapposite.  *Cf. Smithkline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 481 (E.D. Pa. 2005) (attorney-client privilege "'attaches'" only "'to inter-attorney communications . . . which include legal advice or confidential information received from the client'") (citation omitted); *Natta v. Zletz*, 418 F.2d 633, 637 n.3 (7th Cir. 1969) (same).

      **Mintz Should Produce Its Communications with Morgan Lewis and Latham & Watkins**.  To avoid producing its communications with Morgan Lewis and Latham regarding this litigation, Mintz resorts to misrepresenting the parties' conferrals and casting aspersions on Plaintiff's counsel.  At no time did Plaintiff agree that Mintz's response to Requests 2 and 3 would be limited to "communications regarding due diligence conducted in connection with the ExteNET trial."  *See* Ex. 1 at Exs. D-N; *see also* Declaration of Susannah R. Conn ("Conn Decl."), ¶5, filed

---

[1] For the Court's convenience, a copy of: (1) the motion (and accompanying memorandum, declaration and exhibits); (2) Mintz's opposition thereto (and accompanying declaration and Exhibit 2); and (3) the order transferring the motion to this Court are attached as Exs. 1, 2 and 3, respectively.  To avoid confusion, Plaintiff's exhibits to this reply are numbered, whereas Plaintiff's exhibits attached to the original filings are alphabetical.  Exhibit B, which contains the Redacted Emails at issue that have been designated confidential by Mintz, is being filed with a placeholder sheet for purposes of this reply, with the full exhibit to follow in a separate Application to File Under Seal.

**Robbins Geller Rudman & Dowd LLP**

The Honorable Jay C. Gandhi
March 30, 2018
Page 2

concurrently herewith. In fact, when Mintz belatedly claimed that limitation of discovery, Plaintiff swiftly corrected that fiction. Ex. 1 at Ex. L; Conn Decl., ¶5. The correspondence shows that Mintz agreed to search the ESI of seven "due diligence custodians" (Hicks among them) and to separately search Sylvia's and Hicks' emails, consistent with Plaintiff's understanding that Sylvia's and Hicks' emails would be searched for communications concerning this litigation. Conn Decl., ¶4. Mintz's revisionist position simply doesn't make sense: Why include Sylvia (who had no role in due diligence) in a search if the parties agreed to limit Requests 2 and 3 to communications about due diligence? Far from a "red herring" (Opp. at 18), Sylvia's inclusion as a custodian supports the scope of the agreed-upon search memorialized by Plaintiff's counsel.

In any event, Mintz's communications with Morgan Lewis and Latham are plainly relevant, and their importance has only become more evident. Specifically, Mintz's production contains a single publicly-available PowerPoint presentation Puma delivered at a J.P. Morgan conference in January 2015. Opp., Ex. 2; *see also* Opp. at 7. Yet, Mintz states that "[t]his slide deck is *different* from the PowerPoint presentation regarding the results of the ExteNET Trial that defendants in th[is] . . . Litigation claim Auerbach showed Hicks during their January 2015 in-person meeting." Opp. at 7 n.5. This raises more questions than it answers: Why isn't that *other* slide deck in Mintz's production? How does Mintz know it exists? And, since the slide deck Defendants now claim they showed Mintz has never been made public and was filed *under seal*, how does Mintz know it is "*different*"? *See* ECF No. 246-1 at 4 & Ex. 2. The unavoidable conclusion is that Mintz, Latham and Morgan Lewis are communicating about this litigation in an effort to coordinate Hicks' upcoming deposition testimony. Plaintiff's need for those communications is apparent, particularly as its discovery efforts have been repeatedly stymied by the selective invocation of privilege by both Mintz and the underwriters.

Unable to credibly stand on its relevance objection, Mintz instead newly asserts that its communications with Morgan Lewis (but not Latham) are protected from disclosure by the joint-defense privilege and common interest doctrine. Opp. at 20. That argument fails, because "a shared desire to see the same outcome in a legal matter is insufficient" to invoke those protections. *Pac. Pictures Corp. v. United States Dist. Ct.*, 679 F.3d 1121, 1129 (9th Cir. 2012). As neither Mintz nor Morgan Lewis (nor, for that matter, their underwriter clients) is a defendant in this action, Mintz cannot meet its burden of establishing that: "'(1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived.'" *Ken's Foods*, *Inc. v. Ken's Steak House*, *Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002) (citation omitted). Rather, Hicks and the Underwriters are merely percipient fact witnesses.[2]

---

[2] Mintz should also supplement its privilege log. Mintz wrongly claims that the parties have "agreed that only the metadata for each document withheld from production must be included on any privilege logs." Opp. at 15. There is no such agreement and all privilege logs must comply with Fed. R. Civ. P. 26(b)(5)(A)(ii) absent good cause.

**Robbins Geller Rudman & Dowd LLP**

The Honorable Jay C. Gandhi
March 30, 2018
Page 3

      The Court should also reject Mintz's novel proposition that the multinational law firm be excused from any further document production because it has purportedly expended 140 hours to produce 45 documents.[3]  *See* Opp. at 18-19.  Tellingly, Mintz does not claim that searching for and producing communications with Morgan Lewis and Latham – readily-identifiable and limited to two custodians – would be unduly burdensome.

      **Conclusion**.  For the foregoing reasons, Plaintiff requests the Court issue an order compelling Mintz to: (a) produce unredacted copies of the five Redacted Emails (or submit them for *in camera* review); and (b) produce all communications with Latham or Morgan Lewis regarding this litigation.

                                            Respectfully submitted,

                                            SUSANNAH R. CONN

SRC:tdv
cc:  John F. Sylvia, Esq. (via email)
      All Counsel of Record (via ECF)

---

[3]  Mintz's claim that it has produced "hundreds of documents" (Opp. at 20) is simply false.  It has produced 45 documents, totaling approximately 500 pages that mostly consist of: (a) six identical or nearly-identical copies of a Puma PowerPoint presentation (54 pages each); and (b) six identical or nearly-identical copies of the Underwriters' organizational memo (15-17 pages each).  *See* Ex. 4 (selected metadata of Mintz's entire production, sorted by page count), attached hereto.  Mintz's claim of diligence is also difficult to reconcile with its steadfast refusal to search for documents, update or supplement its privilege log, or even to provide metadata for its production.

1403665_1