1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  HSINGCHING HSU, Individually and<br>12  on Behalf of All Others Similarly<br>Situated, et al., | Case No. 8:15-cv-00865-AG (SHK) |
| 13                              Plaintiffs, | **ORDER RE DISCOVERY MOTION** |
| 14                   v. | **FOR RULE 30(B)(6) DEPOSITION**<br>**OF NON-PARTY JP MORGAN** |
| 15  PUMA BIOTECHNOLOGY, INC., et | **SECURITIES, LLC** |
| 16  al., | |
| 17                              Defendants. | |

18

19          Before the Court is Plaintiff Norfolk County Council's ("Plaintiff") Motion

20    to Compel ("Motion") non-party J.P. Morgan Securities LLC ("JPM") to again

21    produce a witness prepared to address Topics 2, 3, and 4 of Plaintiffs' August 21,

22    2017, Federal Rule of Civil Procedure 30(b)(6) ("Rule 30(b)(6)") subpoena and

23    identify the documents used to prepare its corporate designee for deposition.

24    Electronic Case Filing Number ("ECF No.") 267, Motion.  Having reviewed the

25    papers filed by the parties and the arguments made by the parties involved in this

26    dispute as well as by the other parties to this litigation, the Court **GRANTS IN**

27    **PART** and **DENIES IN PART** Plaintiffs' Motion.  ECF Nos. 267-272, 278, 296,

28    298, 300, 302, 330, and 331.

# I.   BACKGROUND

Plaintiffs bring a class action lawsuit against Defendants Puma Biotechnology, Inc. ("Puma") and several of its officers, alleging violations of §§ 10(b), 20(a), and Rule 10b-5 of the Securities Exchange Act.  ECF No. 138, First Amended Complaint at 2; ECF No. 218, Order Granting Class Certification. Plaintiffs allege that Puma's primary focus was the development of a cancer drug called neratinib.  Id. at 3.  Plaintiffs claim, among other things, that Defendants made statements regarding the effectiveness of neratinib, which were later revealed to be false after the results of the ExteNET trial—involving another cancer drug— was found to be less effective than Defendants allegedly, initially claimed.  Id. at 3-4.  JPM was a co-lead underwriter for Puma's public offering.  ECF No. 268-1, Declaration of Susannah R. Conn In Support of Plaintiff's Application for Leave to File Portions of Its Letter Motion and Exhibits in Support Thereof Under Seal ("Conn Decl.") at 2.

## A.   **<u>Disputed Discovery</u>**

On August 21, 2017, Plaintiff issued a subpoena, pursuant to Rule 30(b)(6), to depose JPM's representative.  ECF No. 267-2, Application to file document Portions of Letter Motion to Compel JP Morgan, Redacted Document ("Appl. Redacted Doc.") at 19-24.  This subpoena listed the following six topics:

> TOPIC NO. 1:
> The professional services performed by you in connection with the Offering, including, but not limited to, any due diligence, pricing of Puma Securities in the Offering and drafting, reviewing and editing the prospectuses, registrations statements and all materials used to sell or promote the Offering.

> TOPIC NO. 2:
> Your compensation for all professional services performed by you in connection with the Offering.

/ / /

TOPIC NO. 3:

Your investigation and grounds to believe, at the time of the Offering, that the statements contained therein were true and that there was no omitted fact required to be stated therein or necessary to make the statements therein no misleading, including, but not limited to, the information obtained from your investigation.

TOPIC NO. 4:

The substance, nature and scope of any other professional services performed by you on behalf of Puma during the period January 1,2014 to the present, including, but not limited to , any commercial banking, lending, derivative transactions or services related to potential strategic transactions to sell Puma, to sell a substantial portion of Puma's assets or to seek a substantial investment of another nature in Puma, whether or no such transactions were consummated, and your compensation for such services.

TOPIC NO. 5:

Your analysts' coverage of Puma during the period January 1, 2014 to July 1, 2015, including the nature and sources of information used in preparing research analyst reports concerning Puma.

TOPIC NO. 6:

Your communications with clients and other third parties concerning Puma.

Id. at 23-24.

Following negotiations between counsel, the topics agreed to by JPM's counsel were set out in a letter on October 11, 2017.  Id. at 8-9.  These topics were set out as follows:

**Topic 1**
Services JPM provided pursuant to the Underwriting Agreement, dated January 21, 2015 (the "Underwriting Agreement").

**Topic 2**
Compensation JPM received pursuant to the Underwriting Agreement.

**Topic 3**
Due diligence JPM performed pursuant to the Underwriting Agreement in connection with statements contained in the Registration Statement and Prospectus for the January 2015 follow-on offering (the "Offering") for Puma Biotechnology, Inc. ("Puma").

**Topic 4**
Professional Services JPM performed on behalf of Puma, if any, during the period from July 22, 2014 through May 29, 2015 (the "Class Period"), relating to strategic transactions to sell Puma, to sell a substantial portion of its assets or to seek a substantial investment of another nature in Puma.

**Topic 5**
This topic has been withdrawn.

**Topic 6**
Communications that the investment banking team of JPM had with third parties during roadshow presentations for the Offering.
   and
Disclosure of material non-public information regarding Puma, if any, by the investment banking team of JPM to third parties during the Class Period.

Id.

On February 27, 2018, Plaintiffs deposed JPM's Rule 30(b)(6), corporate designee, Joshua R. Bleharski. ECF No. 268-1, Conn Decl. at 26-79.[1] Plaintiff argues that Mr. Bleharski was unprepared to answer questions regarding the noticed topics as the designated JPM Rule 30(b)(6) representative. Id. at 1. During the deposition, Mr. Bleharski testified that he "spent about a day and a half with counsel on [his] side, reviewing various documents and e-mails, and had a brief call with other members of the J.P. Morgan deal team who were still at the firm." Id. at 33 (emphasis added). When asked additional questions, he indicated that he spoke briefly with one other member of the JPM deal team, who was the only other JPM

---

[1] The pagination of Mr. Bleharski's testimony refers to the ECF pagination and not the original Transcript pagination.

4

deal team member that was still at JPM, Mike Gaito. <u>Id.</u> Mr. Bleharski stated that he did not speak with other JPM deal team members who had left JPM, nor did he speak with JPM's underwriter's counsel, Mintz Levin, during the due diligence. <u>Id.</u> Finally, as best as can be garnered from the transcript, there was no indication that Mr. Bleharski, nor any other JPM representative made any attempt to contact the JPM deal team members that no longer worked at JPM in order to prepare Mr. Bleharski.

With respect to the documents, and in response to Plaintiffs' counsel's question: "Did those documents refresh your recollection as to the events and topics under discussion today?", Mr. Bleharski responded: "Yes." <u>Id.</u> Plaintiff's counsel then requested production of "whatever [Bleharski] reviewed" to refresh his recollection in preparation for the deposition, however, counsel for JPM objected "on grounds of attorney work product." <u>Id.</u>

On June 7, 2018, the Court held a telephonic status conference regarding the deposition discovery dispute and ordered counsel for Plaintiffs and JPM to submit supplemental letter-briefs in support of their positions and identify particular portions of the transcript that illustrated Mr. Bleharski's level of knowledge on the topics for which he was designated.  ECF No. 328, Minutes of Telephonic Status Conference.  On June 8, 2018, counsel for Plaintiffs and JPM submitted supplemental letter-briefs in support of their positions.  ECF No. 330, Supplemental Letter Brief in Support of Plaintiffs' Motion to Compel Further Rule 30(b)(6) Testimony ("Pls. Supp. Brief"); ECF No. 331, Non-Party JPM's Supplemental Letter Brief In Opposition to Motion to Compel ("JPM's Supp. Brief").

**B.** <u>**Plaintiffs' Supplemental Brief**</u>

In their supplemental letter-brief in support of their argument to compel further testimony from JPM, Plaintiffs specifically identified several instances from three predetermined topics to be covered during JPM's deposition where Plaintiffs

seek to illustrate that Mr. Bleharski was unprepared as JPM's representative.  ECF No. 330, Pls. Supp. Brief.

### 1.    Topic 2: Compensation

Plaintiffs identify testimony showing that Mr. Bleharski could not answer questions regarding how much money JPM made in its capacities as an investor and co-lead underwriter for Puma, and claimed that the billing department would know. Id. at 1 (citing ECF No. 238-1, Conn Decl., Ex. F at 31, 36, 37).

### 2.    Topic 3: Due Diligence

#### a.    The ExteNET Trial

Plaintiffs identify testimony showing that Mr. Bleharski did not remember whether JPM executed a confidentiality agreement with Puma or its then CEO Alan Auerbach with respect to the follow-on offering, whether Mintz Levin reviewed data related to the ExteNET trial on behalf of JPM, what information JPM was provided with respect to Mintz Levin's clinical data review despite Mr. Bleharski's notes documenting a forthcoming meeting with Mintz Levin, whether Latham & Watkins or anyone from BAML participated in a clinical data review phone call or when it took place, what the "new data that [Puma] recently discovered" from Exhibit 528 referred to, or whether JPM received specific data concerning the disease-free survival rate between "neratinib patients and the placebo patients" during the course of Puma's follow-on offering as well as the instances of side effects like diarrhea.  Id. (citing ECF No. 238-1, Conn Decl., Ex. F at 40, 42-43, 46, 47, 56, 60, 61, 62).

#### b.    The Opinion Letters And Officer's Certificate

Plaintiffs identify testimony showing that Mr. Bleharski could not recall whether JPM received a favorable opinion letter from Mintz Levin and that Mr. Bleharski was unfamiliar with the officer's certificate and stated that internal legal would know the answer.  Id. (citing ECF No. 238-1, Conn Decl., Ex. F at 35).  Also, Plaintiffs identify testimony regarding Mr. Bleharsk's inability to recall whether he

spoke to any of Puma's outside directors or JPM's due diligence team in the course of due diligence or if JPM knew the ExteNET trial results before they signed the S-3. Id. (citing ECF No. 238-1, Conn Decl., Ex. F at 57).

### c.    Outside Directors

Plaintiffs identify testimony showing that Mr. Bleharski could not recall whether he spoke to Puma's outside counsel during the course of due diligence. Id. at 2 (citing ECF No. 238-1, Conn Decl., Ex. F at 57).

### d.    Insider Trading And FINRA Investigation

Plaintiffs claim that Mr. Bleharski was unprepared for this topic because could not recall whether Puma's insider trading policy restricted individuals who were in possession of material nonpublic information from trading on those securities nor could he recall if he had done due diligence as to whether those employees who traded in Puma securities were in violation of the insider trading policy at Puma. Id. (citing ECF No. 238-1, Conn Decl., Ex. F at 52-53). Also, Plaintiffs cite Mr. Bleharski's inability to recall the particulars of JPM's Financial Industry Regulatory Authority ("FINRA") investigation or when JPM became aware of the FINRA investigation. Id. (citing ECF No. 238-1, Conn Decl., Ex. F at 55, 59).

### e.    Board Of Directors Meeting

With respect to the board of directors meeting, Plaintiffs claim that Mr. Bleharski's preparation was deficient because he was unable to answer questions regarding JPM's attendance at Puma's board of directors meeting on January 15, 2015. Id. (citing ECF No. 238-1, Conn Decl., Ex. F at 76).

### 3.    Topic 4: Strategic Transactions

Plaintiffs claim that Mr. Bleharski was not adequately prepared because he was not aware of whether any of Puma's major shareholders wanted Puma to conduct an offering, whether there was any consideration of postponing the offering until after the ExteNET trial results were publicized, who initiated

1    discussions between JPM and Mr. Auerbach to discuss market conditions, potential

2    financing windows, and strategic considerations, specifically whether the

3    discussions were the result of a large spike in Puma's stock price in July 2014,

4    whether JPM was informed that the full data from the ExteNET trial would not be

5    released until mid-2015, and whether JPM made any recommendations as to

6    whether Puma should pursue equity financing or convertible debt financing but that

7    the managing director of the healthcare group at JPM, Mike Gaito, would know.

8    Id. (citing ECF No. 238-1, Conn Decl., Ex. F at 33, 34, 43, 69, 74).

9         **C.    JPM's Supplemental Brief**

10        JPM argues that Plaintiffs are not entitled to discovery of materials that Mr.

11   Bleharski used to prepare for his deposition because Plaintiffs' cross-examination

12   of Mr. Bleharski "must be predicated on its own assessment of relevant

13   documents, which have been in Plaintiff's possession since January 19, 2018."

14   ECF No. 331, JPM's Supp. Brief at 1.  Additionally, JPM argues that Mr. Bleharski

15   should not be subjected to a second deposition because he was indeed fully

16   prepared and testified knowledgably during his deposition.  Id.

17        **1.    Topic 2: Compensation**

18        JPM argues that further testimony is not warranted because Plaintiffs can

19   calculate the exact dollar figures that they seek based on the underwriting

20   agreement that JPM provided Plaintiffs.  Id. at 2.

21        **2.    Topic 3: Due Diligence**

22        JPM argues that Mr. Bleharski was fully prepared to testify during his

23   deposition regarding the scope of due diligence conducted for the offering.  Id.

24   Specifically, with respect to the ExteNET Trial, JPM argues that Mr. Bleharski

25   "repeatedly and clearly distinguished between the scope of data available to [JPM]

26   versus the scope of data available to underwriter's counsel, Bill Hicks," cites to his

27   deposition testimony in this regard, and that states that Plaintiffs will have an

28   opportunity to ask the questions of Mr. Hicks that Mr. Bleharski could not answer

when Plaintiffs depose Hicks.  <u>Id.</u>  With respect to the Opinion Letters and Officer's Certificate, JPM argues that Plaintiffs had "ample opportunity to verify the receipt of these documents from the production of January 25, 2017, and privilege log of January 19, 2018." <u>Id.</u>  With respect to Outside Directors, JPM argues that "there is no reason to believe that further relevant testimony could be obtained" because Mr. Bleharski could not answer "whether a specific question was posed to outside counsel." <u>Id.</u>  With respect to Insider Trading and the FINRA Investigation, JPM argues that Mr. Bleharski sufficiently testified because JPM "has no further information beyond what is stated in the Commitments Committee Memo." <u>Id.</u>  Finally, with respect to the Board of Directors Meeting, JPM argues that the question regarding who specifically attending the Puma board meeting three years ago "has no apparent relevance to the litigation." <u>Id.</u>

### 3.   Topic 4: Strategic Transactions

JPM argues that Mr. Bleharski was adequately prepared to testify and did adequately testify on this topic, by directing the Court to the portions of the relevant testimony in this regard. <u>Id.</u>

## II.   DISCUSSION

### A.   <u>Rule 30(b)(6) And Further Deposition</u>

Rule 30(b)(6) provides that:

[A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.  A subpoena must advise a nonparty organization of its duty to make this designation.   The persons designated must testify about information known or reasonably available to the organization.  This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30.

"In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation.  The Rule 30(b)(6) designee does not give his personal opinion.  Rather, he presents the corporation's position on the topic.  The designee testifies on behalf of the corporation and thus holds it accountable." Sprint Commc'ns Co. v. Theglobe.com, Inc., 236 F.R.D. 524, 527 (D. Kan. 2006) (quotation marks and footnotes omitted).  Under Rule 30(b)(6), "companies have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter."  Id. (quotation marks omitted). Consequently, the entity being deposed "must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits."  United States v. Taylor, 166 F.R.D. 356, 362 (M.D.N.C. 1996).

Specifically, , the corporate party is obligated to present witnesses capable of testimony on the noticed topics on information that are reasonably available to the corporation and not limited to the witnesses' personal knowledge.  Covad Commc'ns Co. v. Revonet, Inc., 267 F.R.D. 14, 25 (D.D.C. 2010); see also Nutramax Labs., Inc. v. Twin Labs. Inc., 183 F.R.D. 458, 469 (D. Md. 1998) ("The testimony of [FRCP 30(b)(6)] witnesses also is not limited to matters within their personal knowledge, but extends to matters known or reasonably available to the party designating the witness." (quotation marks omitted)).  Though an entity need not make "extreme efforts to obtain all information possibly relevant to the" topics, "[t]he deponent must prepare the designee to the extent matters are reasonably available, whether from documents , past employees, or other sources." In re JDS Uniphase Corp. Sec. Litig., No. C-02-1486 CW (EDL), 2007 WL 219857, at *1 (N.D. Cal. Jan. 29, 2007) (emphasis in original).  This does not, however, mean that the witness must be able to pass a "memory contest." Alexander v. F.B.I., 486 F.R.D. 137, 143 (D.D.C. 1998).

Finally, "[b]ecause FRCP 30(b)(6) places substantial responsibilities and burdens on the responding corporate party, [however,] the rule itself expressly requires that the party requesting the deposition must describe with reasonable particularity the matters for examination." Adidas Am., Inc. v. TRB Acquisitions LLC, No. 3:15-CV-2113-SI, 2017 WL 5630038, at *4 (D. Or. Nov. 22, 2017) (internal quotation marks omitted).

### 1.    Topic 2: Compensation

As agreed to by the parties, following negotiations such that both parties presumably knew the parameters of the deposition and the scope of the topics, JPM was required to produce a witness who could testify regarding "[c]ompensation JPM received pursuant to the Underwriting Agreement." ECF No. 267-2, Appl. Redacted Doc. at 8. The plain language of this topic would appear to include how much money JPM made pursuant to the Underwriting Agreement.

In sum, JPM's Rule 30(b)(6) designee should have been prepared to answer this question with a number, or at least refer to a document that had this information such that JPM would be bound by the answer. See Sabre v. First Dominion Capital, LLC, 2001 WL 1590544, at *1 (S.D. N.Y. Dec. 12, 2001) (noting that "[a] 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information know or reasonably available to the entity" (citing 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2103 (2d ed. 1994))).

JPM's argument that this number is derived from the gross spread and that it can be calculated does not provide this information such that JPM would be bound by a number. See ECF No. 272-1, JPM's Letter Brief at 3-4. For example, Plaintiffs' calculation could be wrong based on their calculations and Plaintiffs would then be left with no recourse to bind JPM to a figure that was sought and properly noticed for deposition. Therefore, Plaintiff's request is **GRANTED** and

11

1    JPM will be required to produce a witness that can testify to this previously agreed

2    to topic.  Alternatively, Plaintiffs' and JPM's counsel may seek to agree on a figure

3    that would bind JPM.

4                  **2.    Topic 3: Due Diligence**

5           In its response, JPM argues that "due diligence" is "an incredibly broad

6    process that involves among other things, conducting a series of calls with the

7    issuer, the issuer's counsel and underwriter's counsel to have a comprehensive

8    discussion of various aspects of the company."  ECF No. 272-1, JPM's Letter Brief

9    at 4.  This argument would be more persuasive had the parties not arrived at this

10   term through negotiations rather than what Topic 3 originally spelled out in the

11   subpoena issued by Plaintiffs' counsel.  See ECF No. 267-2, Appl. Redacted Doc.

12   at 8, 23.  Presumably, there was a meeting of a the minds between Plaintiffs' and

13   JPM's counsel when they agreed to the term "due diligence JPM performed

14   pursuant to the Underwriting Agreement."  Further, this Court has no basis to find

15   that the deficiencies identified by Plaintiffs in Mr. Bleharski's preparation for

16   particular sub-topics under "due diligence" could not have been reasonably

17   anticipated and for which JPM should have been prepared.

18          JPM also argues that Mr. Bleharski was prepared to testify as to Mr.

19   Bleharski's due diligence and, in fact, prepped with Mr. Gaito who was also

20   responsible for JPM's due diligence.  ECF No. 272-1, JPM's Letter Brief at 4.  Mr.

21   Bleharski testified that he had a "brief call" with Mr. Gaito and did not speak with

22   anyone else from the team that worked on the Puma matter, including former

23   employees.  ECF No. 268-1, Conn Decl., Ex. F at 33.  There is no indication that

24   JPM made an attempt to speak with underwriter's counsel at Mintz Levin or other

25   team members who had since left JPM and who Mr. Bleharski was able to name.

26   See id. at 38.

27          In this regard, JPM argues that "[n]o circumstances can justify requiring

28   [JPM] to locate and question former employees, who have less knowledge than Mr.

                                         12

Bleharski, particularly about events that occurred more than three years ago." ECF No. 331, JPM's Supp. Brief at 2.  JPM claims that this would constitute "'extreme efforts' . . . particularly where there is no evidence 'that another . . . employee recalls more than'" Mr. Bleharski. Id. (quoting In re JDS Uniphase Corp. Sec. Litig., 2007 WL 219857, at *1).  JPM's arguments are unpersuasive because even though it appears Mr. Bleharski spent a day and a half reviewing documents with counsel, and had a brief conversation with Mr. Gaito, there was no indication provided as to what effort was made to gather the collective memory and understanding from JPM's team, beyond what would have been included in documents Mr. Bleharski reviewed with litigation counsel.  Though it is possible litigation counsel made efforts to contact former JPM employees and Mintz Levin to obtain information with which to prepare Mr. Bleharski, no such argument or information was provided to the Court.

### a.  ExteNET Trial Data

With respect to the ExteNET Trial data, JPM argues that JPM clearly provided information that JPM did not "learn any facts about the ExteNET trial results." ECF No. 331, JPM's Supp. Letter Brief at 2 (citing ECF No. 268-1, Conn Decl. at 47).  This would have been sufficient, but for the fact that there appeared to have been two phone calls related to the ExteNET trial and Mr. Bleharski was on one of them and a former employee, who there was no effort to contact, was on the other.  ECF No. 268-1, Conn Decl., Ex. F at 47.  It may be that no information was provided to JPM regarding the ExteNET trial, but there does not appear to have been any steps to contact a former team member, with arguably relevant information, or to show that it would have been unreasonable to do so, is not enough.  See Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., 251 F.R.D. 534, 539 (D. Nev. 2009) ("The fact that an organization no longer has a person with knowledge on the designated topics does not relieve the organization of the duty to prepare a Rule 30(b)(6) designee.")

Moreover, JPM's argument that because Plaintiffs will have an opportunity to depose underwriters' counsel, Bill Hicks, absolves JPM of its responsibility in this regard is not persuasive.  See Mitchell Eng'g v. City & Cty. of S.F., No. C 08-04022 SI, 2010 WL 455290, at *1 (N.D. Cal. Feb. 2, 2010) (citation omitted) (stating that "[e]ven if the general topics to be addressed at the 30(b)(6) deposition will overlap to some extent, the questions asked and the answers given might not").

Therefore, Plaintiffs' motion is **GRANTED** in this regard and JPM is ordered to produce a witness to testify regarding the ExteNET trial data after taking reasonable steps to prepare the JPM representative, including obtaining any information that is not privileged, or subject to other doctrine that would protect its disclosure.  This should include contacting JPM's underwriting counsel as part of JPM's due diligence, as well as attempting to contact former JPM personnel that worked as part of the Puma diligence team.  Because the issue of whether any particular information may be protected by a privilege or another doctrine is not before the Court at this time, the Court will not address this particular issue.

### b.   Opinion Letters And Officer's Certificates.

JPM argues that Plaintiffs had enough time to verify the receipt of these documents and Plaintiffs argue that Mr. Bleharski was unfamiliar with whether JPM received these documents as part of its due diligence.

Based on Mr. Bleharski's testimony, the underwriting agreement that appears to be the underwriting agreement referred to in the agreed upon Topic 3, contained provisions expressly referencing a "favorable opinion and negative assurance letter."  ECF No. 268-1, Conn Decl., Ex. F at 34-35.  Similarly, the underwriting agreement appears to specifically require a "officer's certificate."  Id. at 35.  Mr. Bleharski indicated that he was unaware of whether JPM received these documents, that JPM internal legal would presumably have the "favorable opinion and negative assurance letters," and that absent these documents he was not aware

of whether the offering would have gone forward without these documents, "but presumably not." Id.

Though JPM argues that "due diligence" encompasses a wide area of information and that requiring a 30(b)(6) representative to be knowledgeable on every aspect of "due diligence" would be unreasonable, the identification of the underwriting agreement was expressly set out in Topic 3, and agreed to by JPM's counsel. ECF No. 267-2, Appl. Redacted Doc. at 8. Specifically, Topic 3 provides for a JPM representative to be knowledgeable about "[d]ue diligence JPM performed pursuant to the Underwriting Agreement . . . ." Id. (emphasis added).

Because JPM did not provide facts to support its argument showing why it would be unreasonable for a JPM representative to be knowledgeable about an obligation expressly spelled out in the underwriting agreement as part of its due diligence obligations, this Court concludes that Plaintiffs' inquiry into this area should have been foreseeable. Moreover, Mr. Bleharski's equivocal answers in this regard did not bind JPM. Consequently, Plaintiffs' request is **GRANTED** and JPM is ordered to produce a knowledgeable and prepared witness regarding the "favorable opinion and negative assurance letter" and "officer's certificate."

### c.  *Communications With Outside Directors*

Third, with respect to outside directors, although JPM argues that there is no reason for further deposition because Mr. Bleharski was the most involved person in the due diligence, it appears that Mr. Bleharski was not involved in every communication with Puma leading up to and during the due diligence period. See ECF No. 268-1, Conn Decl., Ex. F at 41 (indicating that JPM's underwriter's counsel had a call with Mitzi Yue, who was a member of JPM's diligence team, following underwriter's counsel's review of ExteNET data, on which Mr. Bleharski was not present). Though this issue presents a closer call because it is unclear whether conversations with outside directors was understood to be part of "due diligence . . . pursuant to the Underwriting Agreement," in light of the

previous findings regarding the level of preparation conducted and Mr. Bleharski's
equivocal answers on this issue, Plaintiffs' request in **GRANTED** and Plaintiffs
will be allowed to seek further deposition testimony JPM in this regard.  See id. at
57 (responding to inquiry of whether Mr. Bleharski "spoke to any of Puma's
outside directors in the course of due diligence," he replied, "I don't think so.")

### d.    Insider Trading And FINRA Investigation

Fourth, with respect to Insider Trading and the FINRA Investigation, JPM
argues that Mr. Bleharski satisfactorily testified to what was already stated in the
Commitments Committee Memo.  Plaintiffs argue that they sought testimony for
information regarding Puma's insider trading policy, who was privy to material
nonpublic information, whether some of those employees were involved in the
ExteNET trial, the particulars about the FINRA investigation, and the date in
which JPM became aware of the FINRA investigation.

Because it is unclear whether conversations with outside directors was
understood to be part of "due diligence . . . pursuant to the Underwriting
Agreement" and Mr. Bleharski's unequivocal claim that the "notes that were
taken . . . encompasses what [JPM] understood about the situation," it appears
JPM has provided all the information that it remembers in this regard.  Therefore,
the motion is **DENIED** with respect to this sub-topic.

### e.    JPM's Attendance At Puma's Board Of Directors Meeting

Fifth, with respect to the Puma Board of Directors Meeting, JPM argues that
Mr. Bleharski testified truthfully regarding JPM's lack of memory as to who
attended a Puma Board of Directors meeting.  ECF No. 331, JPM's Supp. Brief at
2.  Plaintiffs, however, do not provide information as to how this ties to agreed
upon topic of "due diligence."

Mr. Bleharski's equivocal answers to some of the questions in this area,
however, raises concerns.  For example, in response to a possible explanation that
JPM would attend such a meeting to "answer questions of the board or Mr.

1   Auerbach might have had related to the offering," something that the person with

2   the most knowledge of the due diligence would appear to know, Mr. Bleharski

3   answered, "It's possible, I would assume so."  ECF No. 268-1, Conn Decl. at 77.

4   Additionally, Mr. Bleharski stated that with respect to who attended the meeting

5   on behalf of JPM, "[i]t's something the deal team would know."  Id.

6        In light of the equivocal answers and the appearance that this information

7   was within the possession of JPM, as well as the failure to attempt to contact other

8   members of the deal team, Plaintiffs' motion is **GRANTED** in this regard.

9        *f.     Plaintiffs' General Complaints Of Unpreparedness*

10       In their supplemental briefing, Plaintiffs also identify other areas they believe

11  JPM was deficient in providing a person with knowledge noticed in the Rule

12  30(b)(6) subpoena.  Specifically, Plaintiffs identify testimony related to due

13  diligence meetings that occurred on September 2014 and December 2014 as

14  examples.  ECF No. 330, Pls. Supp. Brief at 2.  As stated previously, though a Rule

15  30(b)(6) designee must be prepared, it does not mean that the witness must be able

16  to pass a "memory contest."  Alexander, 486 F.R.D. at 143.

17       Here, though the term "due diligence" is used in the topic description, there

18  is no indication that JPM sought any more clarity nor is there any argument made

19  that the questions asked pertained to categories outside of what was understood to

20  be obtained.  What is known, however, is that this term was used by JPM in their

21  identification of a topic on which JPM was to produce a witness.  Of additional

22  concern is the steps that JPM took to prepare its witness, particularly by failing to

23  reach out to its former employees, its underwriter counsel, and beyond a brief call

24  with Mr. Gaito.  For these reasons, Plaintiffs motion is **GRANTED** in this regard

25  to provide a witness that can speak about the due diligence related meetings and

26  documents that JPM participated in and received/provided, respectively.

27  / / /

28  / / /

### 3.   Topic 4: Strategic Transactions

As with Topic 3, the parameters of Topic 4 were modified by agreement and re-worded by JPM's litigation counsel.  ECF No. 267-2, Appl. Redacted Doc. at 8, 24.  In its supplemental response, JPM identified over forty pages of testimony that Mr. Bleharski provided on this topic.  ECF No. 331, JPM's Supp. Brief at 2.  In its supplemental response, Plaintiffs identify several portions of the deposition where Mr. Bleharski stated that he did not know the answer and in response to at least one question indicates that Mr. Gaito at JPM would know.  ECF No. 330, Pls. Supp. Brief at 2 (citing ECF No. 268-1, Conn Decl., Ex. F at 74).  Though it is not ideal, the deposition is not a memory test.

Considering the length of the testimony that Mr. Bleharski provided and the relatively few areas that Plaintiffs complain of, the Court finds that with respect to this topic, Mr. Bleharski was adequately prepared and Plaintiffs' motion in this regard is **DENIED**.

### B.   Rule 30(b)(6) And Federal Rule Of Evidence 612

In addition to a further deposition, Plaintiff seeks the identity or production of the materials that Mr. Bleharski used to refresh his recollection prior to his deposition, under Federal Rule of Evidence ("FRE") 612, which waives attorney-client privilege or work product protection.  ECF No. 268-1, Conn Decl. at 4.  JPM argues that FRE 612's purpose is to facilitate cross-examination and that this would be undermined because Plaintiff's cross-examination of Mr. Bleharski "must be predicated on its own assessment of relevant documents, which have been in Plaintiff's possession" for more than a month before Mr. Bleharski's deposition. ECF No. 331, JPM's Supp. Brief at 1.  Further, JPM argues that the work-product doctrine's protection should apply.  Id.

### 1.   Attorney-Client Privilege

Generally, "a claim of privilege" is governed by the common law.  Fed. R. Evid. 501.  "Issues concerning application of the attorney-client privilege in the

1   adjudication of federal law[, however,] are governed by federal common law."

2   U.S. v. Ruehle, 583 F.3d 600, 608 (9th Cir. 2009) (quoting U.S. v. Bauer, 132 F.3d

3   504, 510 n.4 (9th Cir. 1997)).  "The attorney-client privilege protects confidential

4   communications between attorneys and clients, which are made for the purpose of

5   giving legal advice."  United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011)

6   (citation omitted).  The burden of establishing a privilege falls on the party

7   asserting a privilege.  Id.

8         Under the attorney-client privilege, when: "(1) legal advice of any kind is

9   sought (2) from a professional legal adviser in his capacity as such, (3) the

10   communications relating to that purpose, (4) made in confidence (5) by the client,

11   (6) are at his instance permanently protected (7) from disclosure by himself or by

12   the legal adviser, (8) unless the protection be waived."  Id. (quotation marks and

13   citation omitted).  On the other hand,  "[b]ecause it impedes full and free discovery

14   of the truth, the attorney-client privilege is strictly construed."  United States v.

15   Martin, 278 F.3d 988, 999 (9th Cir. 2002) (quotation marks and citation

16   omitted).  Finally, it is necessary "that the communication be made in confidence

17   for the purpose of obtaining legal advice from the lawyer."  United States v.

18   Gurtner, 474 F.2d 297, 298 (9th Cir. 1973) (emphasis in original) (quotation marks

19   and citation omitted).

20         **2.**    **Work-Product Doctrine**

21         Unlike the attorney-client privilege, the attorney work-product doctrine is a

22   "qualified immunity protecting from discovery documents and tangible things

23   prepared by a party or his representative in anticipation of litigation."  Admiral Ins.

24   Co. v. U.S. Dist. Ct. for the Dist. of Ariz., 881 F.2d 1486, 1494 (9th Cir. 1989)

25   (citing Fed. R. Civ. P. 26(b)(3)).  In order to apply the work-product doctrine, the

26   material must "(1) be prepared in anticipation of litigation or for trial and (2) be

27   prepared by or for another party or by or for that other party's representative."  Id.

28   (quotation marks omitted).  The work-product doctrine provides primary

1    protection over material that reveals an attorney's mental impressions and opinions

2    or "core" work product.  Id.  And unlike the attorney-client privilege, which

3    "exists to keep inviolate confidences of clients to their attorneys, thereby

4    presumably enhancing the communication exchange[, t]he work-product doctrine,

5    however, seeks to enhance the quality of professionalism within the legal field by

6    preventing attorneys from benefitting from the fruit of an adversary's labor."

7    Heron Interact, Inc. v. Guidelines, Inc., 244 F.R.D. 75, 78 (D. Mass. 2007)

8    (citations omitted).  Consequently, "opinion work product may be discovered and

9    admitted when mental impressions are at issue in a case and the need for the

10   material is compelling."  Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d

11   573, 577 (9th Cir. 1992) (emphasis omitted).  Finally, like the attorney-client

12   privilege, the work-product protection is waivable.  United States v. Richey, 632

13   F.3d 559, 567-68 (9th Cir. 2011).

14                  **3.     Federal Rule Of Evidence 612**

15          FRE 612 "gives an adverse party certain options when a witness uses a

16   writing to refresh memory: (1) while testifying; or (2) before testifying, if the court

17   decides that justice requires the party to have those options."  Fed. R. Evid. 612.

18   Generally, "the adverse party is entitled to have [the document] produced and to

19   introduce into evidence any portion that relates to the witness's testimony."  In re

20   Kellogg Brown & Root, Inc., 796 F.3d 137, 143 (D.C. Cir. 2015); Fed. R. Evid.

21   612(b).  Under Rule 30(c)(1), FRE 612 applies to depositions.  U.S. ex rel. Bagley v.

22   TRW, Inc., 212 F.R.D. 554, 565 (C.D. Cal. 2003).

23                  **4.     The Adidas Balancing Test**

24          Although the Ninth Circuit has not yet addressed the specific question of

25   whether a corporate representative's review of documents that are protected by the

26   attorney-client privilege or work-product doctrine that the corporate representative

27   designee relied upon in preparation for testimony under a Rule 30(b)(6) deposition

28   waives that privilege or protection, the Court adopts the balancing test from the set

                                              20

out in <u>Adidas</u>, 2017 WL 5630038, at *8.  The Court in <u>Adidas</u> laid out a three-part balancing test considering the following factors: (1) whether the documents that the designee used in preparation for a Rule 30(b)(6) deposition was used to refresh his or her recollection; (2) whether the documents were used for the purpose of testifying; and (3) whether the interests of justice require disclosure of such documents.  <u>Id.</u> at *8-9.

### a.    The Documents

The first factor—whether the documents refreshed the designee's recollection—is read broadly because "it is the corporation that has the 'prior knowledge of the facts contained in the documents' and thus it is the corporation's knowledge that is being 'refreshed' under FRE 612."  <u>Id.</u> at *8 (citations omitted).  Consequently, "[t]his element is presumed to be met when the corporation or its attorneys choose to refresh the corporation's knowledge with the selected documents."  <u>Id.</u>

Here, Mr. Bleharski testified that he refreshed his recollection with respect to the topics for discussion during the Rule 30(b)(6) deposition.  Mr. Bleharski testified that he refreshed his recollection by "reviewing various documents and e-mails" in order to prepare for his deposition.  ECF No. 268-1, Conn Decl., Ex. F at 33.  Read broadly, this factor is satisfied.

### b.    For The Purpose Of Testifying

The second factor—whether the documents were used for the purpose of testifying—the Court applies a rebuttable presumption when the party orders specific documents that were shown to a designated corporate representative to prepare that witness under 30(b)(6).  <u>Adidas</u>, 2017 WL 5630038, at *8.  "This is particularly true 'where a corporate designee testifies on topics of which he denies any personal knowledge, [because] he is an "empty vessel" and documents reviewed on those topics in preparation for the deposition necessarily informed his testimony.'"  <u>Id.</u> (citation omitted).

Here, JPM argues that <u>Adidas</u> is distinguishable in this instance because, unlike the deponents in <u>Adidas</u> who were essentially "empty vessels," requiring the corporate entity to provide the entire scope of information through production of documents for the deponents to refresh their recollections in preparation for their depositions, whereas Mr. Bleharski had personal knowledge and thus the scope of relied upon materials is narrower and consequently undiscoverable. The Court in <u>Adidas</u>, however, found that "the fact of whether the witness is an 'empty vessel' is not dispositive on this element." <u>Id.</u> at *9. On the contrary, "[i]f the corporation chooses to use documents to refresh the recollection of a witness with prior knowledge, <u>i.e.</u>, who is not an empty vessel, the rebuttable presumption remains the same, albeit likely more easily rebutted." <u>Id.</u> Consequently, the Court finds that JPM has not rebutted this presumption because it failed, for example, to present "evidence showing that the subjects addressed in the withheld documents were not in fact covered in the depositions or that [Mr. Bleharski] testified exclusively based on knowledge obtained from sources other than those documents." <u>Id.</u>

Finally, this request does not appear to be a wide-ranging fishing expedition but rather a focused inquiry directed at material that Mr. Bleharski used to refresh his recollection in preparation for his Rule 30(b)(6) deposition. <u>See id.</u> at *8 (noting that concerns of a fishing expedition are lessened because the inquiry is focused on documents "shown to a designated corporate representative to prepare the witness for a deposition under FRCP 30(b)(6)" (citations omitted)).

### c.  *The Interests Of Justice*

The third factor looks to the whether the disclosure of documents relied on in preparation for a Rule 30(b)(6) deposition would serve the interests of justice. <u>Id.</u> The Court is mindful as to the potential abuses of seeking the disclosure of protected documents through Rule 30(b)(6) disclosures as a means to "circumvent the attorney-client privilege and gain knowledge of otherwise privileged

communications." Id.  "This concern, however, can be avoided by the corporation filing a motion for a protective order upon receiving such a deposition notice under FRCP 30(b)(6)" if it appears that the topics seek to obtain information that will likely be protected by a privilege or other protective doctrine, e.g., areas that involve legal conclusions such as whether a company believes the opposing party breached a contract or infringed a trademark.  Id. (citing Fed. R. Civ. P. 26(c)(1)).  Of course, a "notice requiring the deposition of a corporate representative issued under [Rule] 30(b)(6) must describe with reasonable particularity the matters for examination.  Thus, the corporation will have advance notice if a party is attempting to designate an improper topic that seeks to place a privileged document or communication at issue."  Id. (internal quotation marks omitted).  Additionally, the Court still applies a "a heightened concern with compelling disclosure of pure 'opinion' or 'core' work product."  Id. at *10 (citations omitted).

Here, the Court finds that the balance favors disclosure of the documents that JPM relied on to prepare Mr. Bleharski for his deposition under Rule 30(b)(6) on the noticed topics at issue.  First, the topics on which Mr. Bleharski testified were negotiated by JPM's litigation counsel.  Second, none of the topics involve areas that seek legal conclusions.  Third, there is no indication that the materials include core work product.  Fourth, JPM has failed to carry its burden in noting that the number of documents at issue are a very small subset of the produced documents that would necessarily disclose JPM's counsel's thought processes.  Finally, there is no indication that producing the index of documents would be burdensome.

Accordingly, having considered the Adidas factors, Plaintiffs' motion, in this regard, is **GRANTED**.  JPM must produce the documents, or an index of those documents, that were shown to Mr. Bleharski in preparation for their Rule 30(b)(6) deposition on Topics 2, 3, and 4.

1

## III.   ORDER

2     IT IS HEREBY ORDERED that Plaintiff's Motion is **GRANTED IN**

3 **PART AND DENIED IN PART** as described above and Plaintiffs are granted the

4 ability to depose a JPM representative for an additional 2 hours.  Each side is to

5 bear its own costs and attorneys fees.

6

7 Dated: June 20, 2018

8

9 _____

10 HON. SHASHI H. KEWALRAMANI
United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28