UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HSINGCHING HSU, Individually and on Behalf of All Others Similarly Situated, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PUMA BIOTECHNOLOGY, INC., et al., <br><br> Defendants. | Case No. 8:15-cv-00865-AG (SHK) <br><br> **ORDER RE PLAINTIFFS' DISCOVERY MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTY MINTZ, LEVIN, COHEN, FERRIS, GLOVSKY & POPEO** |

Before the Court is Plaintiffs' Motion to Compel ("Motion") non-party Mintz, Levin, Cohen, Ferris, Glovsky and Popeo ("Mintz Levin") to provided five e-mails that were redacted on the basis of attorney client privilege and communications between Mintz Levin and the law firms of Latham & Watkins LLP ("Latham") and Morgan, Lewis & Bockius ("Morgan Lewis"). Electronic Case Filing Number ("ECF No.") 263 at 1-3.[1] The Motion was originally filed in the United States District Court for the District of Massachusetts. In a well-reasoned order, that court ordered the discovery dispute be transferred to the Central

---

[1] The page citation refers to the page number(s) assigned by the Court's ECF system unless noted otherwise.

District of California, because, among other things, the underlying securities litigation is pending here.  The matter was fully briefed in Massachusetts, but upon transferring, and a previous order issued by this Court to provide letter briefs for discovery disputes, the parties to this discovery dispute supplemented the Massachusetts briefing by their respective letter briefs.  A telephonic hearing was conducted on June 8, 2018.  ECF No. 263, 316, and 329.  Having reviewed the papers and the arguments made by the parties involved in this dispute as well as by the other parties to this litigation, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion.

## I.   BACKGROUND

Plaintiffs bring a class action lawsuit against Defendants Puma Biotechnology, Inc. ("Puma") and several of its officers, alleging violations of §§ 10(b), 20(a), and Rule 10b-5 of the Securities Exchange Act.  ECF No. 138 at 2; ECF No. 218.  Plaintiffs allege that Puma's primary focus was the development of a cancer drug called neratinib.  Id. at 3.  Plaintiffs claim, among other things, that Defendants made statements regarding the effectiveness of neratinib, which were later revealed to be false after the results of the ExteNET trial—involving another cancer drug—was found to be less effective than Defendants allegedly, initially claimed.  Id. at 3-4; ECF No. 263-1 at 11.  Mintz Levin "served as counsel to various banks that underwrote Puma's January 2015 follow-on offering."  ECF No. 263-1 at 11.  In November 2017, Puma's counsel, Latham, supplemented their initial disclosures and identified Puma's underwriting counsel, William C. Hicks as "an individual with knowledge of '[d]ue diligence in connection with Puma's [January 2015] stock offering' and purported knowledge of the very non-public results from the ExteNET trial that are at issue in the [u]nderlying [l]itigation."  Id. at 11-12.

Latham represents Puma in this litigation and was also Puma's counsel during the underwriting process and Morgan Lewis is the underwriter's litigation

1   counsel in relation to the third party discovery being conducted in this litigation.

2   Id. at 12.

3       Plaintiffs served Mintz Levin with a subpoena containing eight requests for

4   documents.  ECF No. 263-1 at 15.  Generally, these requests seek the following

5   category of documents related to the underlying litigation: documents related to the

6   due diligence, communications between Mintz Levin and Puma or the individual

7   defendants, communications between Latham and Mintz Levin, communications

8   between Morgan Lewis and Mintz Levin, documents related to steps that Mr.

9   Hicks took as a result of being underwriter's counsel for the Puma offering, and

10   billings and calendars related to same.  See id.

11       Plaintiffs claim that in response to these requests, Mintz Levin has provided

12   a limited number of documents and numerous, unfounded objections.  Id. at 15-16.

13   There were several meet and confers between Plaintiffs and Mintz Levin's counsel

14   and the parties have narrowed the issues to several groups of documents: 5

15   redacted e-mails that were identified on Mintz Levin's privilege log,

16   communications between Latham and Mintz Levin for a particular time period

17   regarding the underlying litigation, and communications between Morgan Lewis

18   and Mintz Levin for a particular time period regarding the underlying litigation.

19                 **II.**     **DISCUSSION**

20   **A.**   **Redacted E-Mails**

21       With respect to the five redacted e-mails, Plaintiffs' argue that the sole basis

22   for refusing to provide complete copies of these redacted e-mails is Mintz Levin's

23   improper claim that these communications are privileged.  Id. at 16-18.  Plaintiffs

24   specifically argue that these communications do not appear to contain privileged

25   communications, or, alternatively, Mintz Levin should provide unredacted copies

26   of these e-mails for *in camera* review by the Court.  Id. at 19.  The e-mails at issue

27   are Bates numbered Mintz_PUMA000037, Mintz_PUMA000081-83,

28

1  Mintz_PUMA000321-324, Mintz_PUMA000328-330, and

2  Mintz_PUMA000495-497. <u>Id.</u> at 19-20.

3         Mintz Levin argues that "four of [the Mintz Levin] [c]ommunications are

4  between Mintz Levin attorneys representing the Underwriters and discussing legal

5  advice and carrying out its representation of the Underwriters in connection with

6  Puma's preparation of a PowerPoint presentation that Puma made during the J.P.

7  Morgan Healthcare Conference in San Francisco, California, in January 2015.

8  [These] [c]ommunications follow non-privileged e-mail communications between

9  Mintz Levin attorneys and Puma's counsel, Latham & Watkins, regarding

10 suggested edits to the presentation, emails of which were produced by Mintz Levin.

11 The remaining [Mintz Levin] [c]ommunication is an e-mail from Mintz Levin

12 partner Hicks, to another Mintz Levin partner representing the Underwriters,

13 Linda Bentley.  In this email, Hicks forwards to Bentley and comments on the

14 earlier email Hicks had received from Auerbach attaching the minutes from

15 Puma's meeting with the FDA for the drug neratinib."   ECF No. 263-2 at 12-13

16 (internal citations omitted).

17         Following the telephonic hearing, Mintz Levin provided these five

18 unredacted e-mails for the Court's *in camera* review.

19         **1.    <u>Legal Standards</u>**

20         Generally, "a claim of privilege" is governed by the common law.  Fed. R.

21 Evid. 501.  "Issues concerning application of the attorney-client privilege in the

22 adjudication of federal law are governed by **federal** common law."  <u>U.S. v. Ruehle</u>,

23 583 F.3d 600, 608 (9th Cir. 2009) (quoting <u>U.S. v. Bauer</u>, 132 F.3d 504, 510 n.4

24 (9th Cir. 1997)) (emphasis added).  "The attorney-client privilege protects

25 confidential communications between attorneys and clients, which are made for the

26 purpose of giving legal advice."  <u>United States v. Richey</u>, 632 F.3d 559, 566 (9th

27 Cir. 2011) (citation omitted).  The burden of establishing a privilege falls on the

28 party asserting a privilege.  <u>Id.</u>

4

Under the attorney-client privilege, when: "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." Id. (quotation marks and citation omitted). However, "[b]ecause [the assertion of the attorney client privilege] impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002) (quotation marks and citation omitted). It is necessary "that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." United States v. Gurtner, 474 F.2d 297, 298 (9th Cir. 1973) (emphasis in original) (quotation marks and citation omitted).

"Communications between co-counsel are not categorically protected by the attorney-client privilege as they are not communications by the client." Wade v. Chase Bank N.A., 2013 WL 12154997 at *2 n.6 (D.S. Car. Aug. 30, 2013) (citing In re D.H. Overmyer Telecasting Co. Inc., 470 F. Supp. 1250, 1255 (S.D.N.Y. 1979)). However, "communications within a firm and among firms representing the same client are protected by the attorney-client privilege to the extent that they are prepared from confidential information from the client." Mass Engineered Design, Inc. v. Ergotron, Inc., 2008 WL 11348359, *4 (E.D. Tex. Oct. 14, 2008) (citing Natta v. Zletx, 418 F.2d 633, 637 n.3 (7th Cir. 1969)).

**2.   Discussion**

Applying these standards to the e-mails in questions and upon *in camera* review of the unredacted e-mails, all of them turn on whether the communications contain communications by a client or disclose legal advice that is to be provided to Mintz Levin's client that would disclose communications by the client. As a practical matter, the difficulty in assessing whether each e-mail contains an attorney-client communication arises from the fact that it is similar to analyzing

5

1   each sentence in a conversation independently and whether disclosure of each

2   particular sentence would then, expressly or implicitly, disclose the communication

3   between counsel and the client.

4              a.      E-mail Bates Numbered Mintz_PUMA000037

5              There is no disclosure of a client communication, expressly or implicitly,

6   that is being provided in the redacted portion of this e-mail.  Though it is an intra-

7   law firm communication that may be protected in other circumstances, or by other

8   doctrines, Mintz Levin has not carried its burden to show that this constitutes

9   material protected by the attorney client privilege.  Therefore, Plaintiffs' motion is

10  GRANTED in this  regard and the unredacted version of this e-mail is ordered to

11  be produced in accordance with this order.

12             b.      E-mail Bates Numbered Mintz_PUMA000081-83

13             The redacted portion of this e-mail, at least, implicitly discloses the nature of

14  attorney client communication because the information would disclose more than

15  the general nature of Mintz Levin's charge from its client.  Consequently, Mintz

16  Levin has carried its burden with respect to the redactions in this e-mail and

17  Plaintiffs' motion is DENIED in this regard.

18             c.      E-mail Bates Numbered Mintz_PUMA000321-324

19             As with the previous e-mail, at least a portion of redacted e-mails on page

20  ending in 321 contain information that require the sender to implicitly disclose

21  communications from the client.  The top e-mail from Megan Gates (dated

22  1/19/2015, 1:31:05 PM), however, does not disclose attorney client information and

23  is ordered to be produced.  Therefore, Plaintiffs' motion with respect to this e-mail

24  string is GRANTED IN PART and DENIED IN PART.

25             d.      E-mail Bates Numbered Mintz_PUMA000328-330

26             The redacted portion of this e-mail, at least, implicitly discloses the nature of

27  an attorney client communication.  Consequently, Mintz Levin has carried its

28

1  burden with respect to the redactions in this e-mail and Plaintiffs' motion is
2  DENIED in this regard.

3           e.    E-mail Bates Numbered Mintz_PUMA000495-497

4        The redacted portion of this e-mail, at least, implicitly discloses the nature of
5  an attorney client communication.  Consequently, Mintz Levin has carried its
6  burden with respect to the redactions in this e-mail and Plaintiffs' motion is
7  DENIED in this regard.

8  **B.    Communications Between Law Firms And Mintz Levin**

9        Plaintiffs seek to obtain communications between Mintz Levin and several
10 law firms – Latham (Puma's counsel) and Morgan Lewis (underwriter's litigation
11 counsel).  ECF No. 263 at 2-3.  With respect to Latham, Plaintiffs seek "[a]ll
12 documents sent to or received from Latham & Watkins during the period July 22,
13 2014 through the present regarding any due diligence in connection with the
14 Offering, the ExteNET Trial or this litigation."  ECF No. 263-1 at 37.  With
15 respect to Morgan Lewis, Plaintiffs seek "[a]ll documents sent to or received from
16 Morgan Lewis during the period July 22, 2014 through the present regarding any
17 due diligence in connection with the Offering, the ExteNET Trial or this
18 litigation."  Id. at 38.  Plaintiffs argue, in sum, that this is relevant to test the bias
19 and credibility of Mr. Hicks and to determine whether there has been any
20 coordination between the law firms related to the testimony Mr. Hicks may provide
21 during his deposition.  ECF No. 263 at 2-3.

22       Mintz Levin argues that Plaintiffs' requests seek irrelevant information, this
23 is nothing more than a fishing expedition, and with respect to communications with
24 Morgan Lewis, the request is improper because it seeks documents and
25 communications that are protected under the common interest doctrine because
26 Mintz Levin was underwriter's counsel during the due diligence and Morgan Lewis
27 is underwriter's counsel in this litigation.  ECF No. 316 at 2-4.

28

1      In its motion to compel production, Plaintiffs seek the Court to order Mintz

2   Levin to "search for and produce all communications with Latham & Watkins or

3   Morgan Lewis regarding the Underlying Litigation."  ECF No. 263 at 3; ECF No.

4   263-1 at 24.

5      **1.**    <u>**Legal Standards**</u>

6      Federal Rules of Civil Procedure, Rule 26 provides that a party may obtain

7   discovery "regarding any nonprivileged matter that is relevant to any party's claim

8   or defense and proportional to the needs of the case, considering the importance of

9   the issues at stake in the action, the amount in controversy, the parties' relative

10   access to relevant information, the parties' resources, the importance of the

11   discovery in resolving the issues, and whether the burden or expense of the

12   proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevant

13   information "need not be admissible in evidence to be discoverable. <u>Id</u>.  In fact,

14   "[r]elevance for purposes of discovery is defined very broadly." <u>Garneau v. City of</u>

15   <u>Seattle</u>, 147 F.3d 802, 812 (9th Cir.1998).

16      "The party seeking to compel discovery has the burden of establishing that

17   its request satisfies the relevancy requirements of Rule 26(b)(1). The party

18   opposing discovery then has the burden of showing that the discovery should be

19   prohibited, and the burden of clarifying, explaining or supporting its objections."

20   <u>Bryant v. Ochoa</u>, 2009 WL 1390794 at * 1 (S.D.Cal. May 14, 2009). "The party

21   opposing discovery is 'required to carry a heavy burden of showing' why discovery

22   should be denied."  <u>Reece v. Basi</u>, 2014 WL 2565986, at *2 (E.D. Cal. June 6,

23   2014), <u>aff'd</u>, 704 F. App'x 685 (9th Cir. 2017) (quoting <u>Blankenship v. Hearst</u>

24   <u>Corp.</u>, 519 F.2d 418, 429 (9th Cir.1975)).

25      Further:

26

27      District courts have broad discretion to determine relevancy for
        discovery purposes, <u>see</u> <u>Hallett v. Morgan</u>, 296 F.3d 732, 751 (9th

28      Cir.2002), and "[f]or good cause, the court may order discovery of

1   any matter relevant to the subject matter involved in the action,"
2   Fed.R.Civ.P. 26(b)(1). District courts also have broad discretion to
    limit discovery to prevent its abuse. See Fed.R.Civ.P. 26(b)(2)
3   (instructing that courts may limit discovery where it is "unreasonably
4   cumulative or duplicative," "obtain[able] from some other source that
    is more convenient, less burdensome, or less expensive," or where its
5   burden or expense "outweighs its likely benefit')."
6
7   Watkins v. Hireright, Inc., 2014 WL 11191092, at *2 (S.D. Cal. Feb. 21, 2014).

8       **2.   Discussion**

9           By way of clarification, the present request appears to be distinct from a
10  request to Mintz Levin for materials related to the due diligence, including
11  communications Mintz Levin may have received from Latham, when Latham was
12  acting as Puma's corporate counsel during the offering.  Assuming that is the case,
13  and though it is a close call, Plaintiffs' requests for communications related to the
14  underlying litigation between Latham and Morgan Lewis does not appear to be
15  "proportional to the needs of the case, considering the importance of the issues at
16  stake in the action."  Fed. R. Civ. P. 26(b)(1).

17          The focus of the request appears to be any coordination that may have
18  occurred between Latham and Mintz Levin and Morgan Lewis and Mintz Levin in
19  responding to discovery and preparing Mr. Hicks for deposition.  Though bias and
20  testing Mr. Hicks' credibility are fair game during Mr. Hicks' deposition, it is too
21  speculative to require the production of documents in this regard and seems a step
22  too far from being "relevant to any party's claim or defense."  Id.

23          Additionally, the communications between Mintz Levin and Morgan Lewis
24  will fall into two potential categories: those covered by the attorney client privilege
25  and those that do not.  Specifically, any communications between Mintz Levin and
26  Morgan Lewis related to the underlying litigation would likely include, at least
27  some, communications that are protected under the attorney-client privilege
28  between Mintz Levin and the underwriter bank during the course of Mintz Levin's

1   due diligence representation and Morgan Lewis's representation of the same client

2   as litigation counsel, involving the same subject matter.  See  Mass Engineered

3   Design, Inc. v. Ergotron, Inc., 2008 WL 11348359, *4 (E.D. Tex. Oct. 14, 2008)

4   (citing Natta v. Zletx, 418 F.2d 633, 637 n.3 (7th Cir. 1969)) (noting that

5   "communications . . . **among firms** representing the same client are protected by

6   the attorney-client privilege to the extent that they are prepared from confidential

7   information from the client") (emphasis added).  This does not mean that all such

8   documents would be protected, but it would require Mintz Levin to cull through

9   those documents to see which documents are properly protected and those that are

10  not.  This level of effort is disproportionate to the needs of the case and "the

11  burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

12  Civ. P. 26(b)(1).

13          Therefore, Plaintiffs' Motion is DENIED in this regard.

14                                  **III.   ORDER**

15          IT IS HEREBY ORDERED that Plaintiff's Motion is **GRANTED IN**

16  **PART AND DENIED IN PART** as described above and Mintz Levin is to

17  produce the unredacted e-mails in accordance with the previous reasoning in this

18  order within 3 business days.  Each side is to bear its own costs and attorneys' fees.

19

20  Dated:  6/27/18

21

22  _____

23  HON. SHASHI H. KEWALRAMANI
    United States Magistrate Judge

24

25

26

27

28

10