1   LATHAM & WATKINS LLP
      Michele D. Johnson (Bar No. 198298)
2     *michele.johnson@lw.com*
      Kristin N. Murphy (Bar No. 268285)
3     *kristin.murphy@lw.com*
    650 Town Center Drive, 20th Floor
4   Costa Mesa, CA  92626-1925
    Tel:  (714) 540-1235
5   Fax:  (714) 755-8290

6   LATHAM & WATKINS LLP
      Colleen C. Smith (Bar No. 231216)
7     *colleen.smith@lw.com*
    12670 High Bluff Drive
8   San Diego, CA  92130-3086
    Tel:  (858) 523-5400
9   Fax:  (858) 523-5450

10  LATHAM & WATKINS LLP
      Andrew B. Clubok (*pro hac vice*)
11    *andrew.clubok@lw.com*
      Sarah A. Tomkowiak (*pro hac vice*)
12    *sarah.tomkowiak@lw.com*
    555 Eleventh Street NW, Suite 1000
13  Washington, DC  20004-1304
    Tel:  (202) 637-2200
14  Fax:  (202) 637-2201

15  *Additional counsel on signature page*

16  *Attorneys for Defendants*
    *Puma Biotechnology, Inc., Alan H. Auerbach,*
17  *and Charles R. Eyler*

18                  UNITED STATES DISTRICT COURT

19                  CENTRAL DISTRICT OF CALIFORNIA

20

21  HSINGCHING HSU, Individually and        CASE NO. 8:15-cv-00865-AG (SHKx)
    On Behalf of All Others Similarly
22  Situated,                               **DEFENDANTS' OPPOSITION TO**
                                            **MOTION TO EXCLUDE THE**
23              Plaintiff,                   **TESTIMONY OF EXPERT DR.**
                                            **GREGORY K. FRYKMAN**
24        v.
                                            Date:        October 1, 2018
25  PUMA BIOTECHNOLOGY, INC.,               Time:        10:00 a.m.
    ALAN H. AUERBACH, and                   Courtroom:   10D
26  CHARLES R. EYLER,                       Judge:       Hon. Andrew J. Guilford

27              Defendants.                  Trial Date:  November 6, 2018

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................ 1

II.   BACKGROUND .............................................................................. 3

III.  LEGAL STANDARD ...................................................................... 6

IV.  ARGUMENT .................................................................................... 6

    A.    Dr. Frykman's Opinions Regarding Disclosure Practices in the Biotechnology Industry Are Admissible ................................. 6

        1.    Dr. Frykman Is Uniquely Qualified to Offer Opinions on the Disclosure of Clinical Trial Results ............................................................................ 7

        2.    Dr. Frykman's Opinions Regarding Industry Disclosure Practices Are Based on His Experience and Are Reliable ................................................. 11

        3.    Dr. Frykman's Opinion Fits the Facts of the Case ................. 16

        4.    Dr. Frykman's Testimony Regarding ASCO Presentation Practices Is Based on Specialized Knowledge and Provides Important Context for His Opinions ............................................................. 17

    B.    Dr. Frykman Is Qualified to Offer an Opinion Regarding Customary Industry Practices With Respect to Stock Offerings ............................................................................. 19

V.    CONCLUSION ............................................................................. 21

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

US-DOCS\102657707

i

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Avila v. Willis Envt'l. Remediation Tr.,*
  633 F.3d 828 (9th Cir. 2011) ............................................................. 10, 19

*Cage v. City of Chicago,*
  979 F. Supp. 2d 787 (N.D. Ill. 2013) ...................................................... 13

*Custom Prods. Corp. v. Intermet Corp.,*
  170 F. Supp. 2d 853 (E.D. Wis. 2001) .................................................... 16

*Daubert v. Merrell Dow Pharm., Inc.,*
  509 U.S. 549 (1993) ................................................................. 6, 11, 19

*Daubert vs. Merrell Dow Pharms, Inc.,*
  43 F.3d 1311 (9th Cir. 1995) ............................................................... 17

*English v. Estes Express Lines,*
  No. 5:16-cv-01353-CAS(SKx), 2018 WL 1136058 (C.D. Cal.
  Feb. 15, 2018) ...................................................................... 12, 15

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.,*
  68 F. Supp. 3d 439 (S.D.N.Y. 2014) ....................................................... 14

*Friedman v. Medjet Assistance, LLC,*
  No. CV 09-07585 MMM VBKX, 2010 WL 9081271 (C.D. Cal.
  Nov. 8, 2010) ............................................................................. 6

*Hangarter v. Provident Life & Acc. Ins. Co.,*
  373 F.3d 998 (9th Cir. 2004) .......................................................passim

*Highland Capital Mgmt., L.P. v. Schneider,*
  379 F. Supp. 2d 461 (S.D.N.Y. 2005) ...................................................... 18

*Huskey v. Ethicon, Inc.,*
  29 F. Supp. 3d 691 (S.D.W.V. 2014) ....................................................... 10

*In re ConAgra Foods, Inc.,*
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ..................................................... 7, 9

*In re Fosamax Prods. Liab. Litig.,*
  645 F. Supp. 2d 164 (S.D.N.Y. 2009) ...................................................... 10

*In re James Wilson Assocs.,*
  965 F.2d 160 (7th Cir. 1992) ............................................................. 17

*In re Rezulin Products Liability Litigation,*
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................ 14, 15, 18

*In re Tolona Pizza Prods. Corp.,*
  3 F.3d 1029 (7th Cir. 1993) ............................................................ 16, 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

US-DOCS\102657707

ii

OPP'N TO MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

*Johns v. Bayer Corp.*,
  No. 09CV1935 AJB (DHB), 2013 WL 1498965 (S.D. Cal Apr. 10,
  2013) ........................................................................................................... 17

*Kannankeril v. Terminix Int'l., Inc.*,
  128 F.3d 802 (3d Cir. 1997) ..................................................................... 6, 11

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ...................................................................................... 11

*Lewert v. Boiron, Inc.*,
  212 F. Supp. 3d 917 (C.D. Cal 2016) .............................................. 16, 18, 19

*Lewis v. D.A. Stuart Co.*,
  No. 5:02CV20, 2003 WL 26097791 (E.D. Tex. Oct. 22, 2003) ..................... 10

*LinkCo, Inc. v. Fujitsu Ltd.*,
  No. 00 CIV. 7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16,
  2002) ........................................................................................................... 18

*Matuez v. Lewis*,
  No. CV 11–7411–JVS (JPR), 2012 WL 3582122 (C.D. Cal. May
  9, 2012) ..................................................................................................... 9, 10

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
  752 F.3d 807 (9th Cir. 2014) .................................................................... 9, 20

*Ralston v. Smith & Nephew Richards, Inc.*,
  275 F.3d 965 (10th Cir. 2001) ...................................................................... 10

*SEC v. Bankatlantic Bancorp, Inc.*,
  No. 12-cv-60082, 2013 WL 12009694 (S.D. Fla. Nov. 14, 2013) ........... 14, 17

*SEC v. Dain Rauscher, Inc.*,
  254 F.3d 852 (9th Cir. 2001) ........................................................................ 13

*SEC v. Tourre*,
  950 F. Supp. 2d 666 (S.D.N.Y. 2013) ........................................................... 11

*Smith v. Microsoft Corp.*,
  No. 11-CV-1958 JLS (BGS), 2013 WL 6497073 (S.D. Cal.
  Dec. 10, 2013) .............................................................................................. 13

*Stewart Title Ins. Co. v. Credit Suisse*,
  No. 1:11-cv-227-BLW, 2015 WL 4250704 (D. Idaho July 13,
  2015) ........................................................................................................... 11

*Theranos, Inc. v. Fuisz Pharma LLC*,
  No. 5:11-CV-05236-PSG, 2014 WL 12695908 (N.D. Cal. Mar. 10,
  2014) ......................................................................................................... 6, 17

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
  648 F. App'x 609 (9th Cir. 2016) ................................................................. 13

*Thomas v. Newton Int'l Enters.*,

US-DOCS\102657707

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

    42 F.3d 1266 (9th Cir. 1994) ................................................................. 7, 9, 20

*United States v. Finley,*
    301 F.3d 1000 (9th Cir. 2002) ................................................................. 18, 19

*United States v. Rodriguez,*
    No. 2:11–cr–296–JAM, 2017 WL 4700043 (E.D. Cal. Oct. 19,
    2017) ................................................................................................................ 13

*United States v. Senchenko,*
    133 F.3d 1153 (9th Cir. 1998) .............................................................................. 6

*United States v. Thompson,*
    229 F. Supp. 3d 91 (D. Mass 2017) ................................................................ 10

*United States v. Velasquez,*
    64 F.3d 844 (3d Cir. 1995) .................................................................................. 6

*WH Smith Hotel Servs., Inc. v. Wendy's Int'l, Inc.,*
    25 F.3d 422 (7th Cir. 1994) .............................................................................. 13

## OTHER AUTHORITIES

Notes of Advisory Committee on Proposed Evidence Rules for Fed.
    R. Evid. 702 ....................................................................................................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iv

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

US-DOCS\102657707

# I.    INTRODUCTION

Plaintiff's core contention in this case is that Defendants intentionally misled investors by hiding the full ExteNET trial results for as long as possible in order to sell stock in a secondary offering at an inflated price.  To support this theory, Plaintiff will argue that Puma's July 22, 2014 statement disclosing that the ExteNET clinical trial achieved its primary endpoint was out of the ordinary, and that there was no valid reason why Puma could not have disclosed the full ExteNET trial results at the same time.  But, as industry expert Dr. Gregory K. Frykman will explain, Puma's announcement of the ExteNET trial top-line results disclosed exactly what biotechnology companies typically disclose when announcing the results of a pivotal clinical oncology trial—that the trial hit its primary endpoint with a particular level of statistical significance, that the company would seek FDA approval based on the results, and that the full results would be presented later at a medical conference.  Many similar companies have disclosed their clinical trial results in a similar fashion.  Moreover, as Dr. Frykman will explain, it is common for companies in the biotechnology industry to sell stock in a public stock offering after making this type of announcement of top-line clinical trial results.  Because Plaintiff does not want the jury to learn that Puma's disclosures and its stock offering were consistent with industry practice, it now seeks to exclude Dr. Frykman's testimony.  Plaintiff's arguments do not support this result.

First, contrary to Plaintiff's contention, Dr. Frykman is well qualified to offer the opinion that Puma's July 22, 2014 press release was in line with industry standards.  Dr. Frykman has worked with or around biotechnology companies like Puma for his entire career, and he possesses an unparalleled combination of credentials in the fields of oncology, clinical trials, and capital markets.  He graduated from medical school, studied oncology during a fellowship at The Johns Hopkins University School of Medicine, trained in pharmaceutical development as

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
US-DOCS\102657707
1
OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   a medical officer in the Division of Oncology Drug Products at the U.S. Food &

2   Drug Administration ("FDA"), and analyzed thousands of press releases disclosing

3   clinical trial results as a senior executive and industry analyst.  Disregarding these

4   qualifications, Plaintiff asserts that because Dr. Frykman has not routinely *drafted*

5   press releases himself, he is not qualified to offer an opinion about them.  Such a

6   standard is not what the law requires.  It is more than enough that Dr. Frykman has

7   extensive and directly relevant professional experience reviewing and evaluating

8   the disclosure of clinical trial results.

9          Second, Plaintiff attacks Dr. Frykman's methodology, arguing that it is not

10   reliable or capable of being reproduced.  Plaintiff asserts the wrong standard.

11   Where, as here, the expert's proffered testimony is not "scientific or technical,"

12   reliability is evaluated not by reference to a scientific methodology, but rather on

13   the expert's "knowledge and experience" alone.  *Hangarter v. Provident Life &*

14   *Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004).  Dr. Frykman's testimony—

15   rooted in his deep and unique experience—easily meets the parameters of

16   reliability under *Daubert* and its progeny.  He relied on his knowledge and

17   experience to first identify a universe of press releases, and then to apply further

18   criteria yielding a set of comparable press releases to help the jury understand

19   typical disclosure practices for similar companies in the industry.  He articulates an

20   industry standard for what one would expect to see in a comparable top-line press

21   release, and explains why each of the examples illustrates that standard.  Courts

22   routinely admit this type of industry-standard evidence, as it is particularly helpful

23   for jurors who have no significant familiarity with the industry at issue.

24          Third, Plaintiff now argues for the first time in this case that the top-line

25   press release itself was not false or misleading and "can only be considered in

26   context with the conference call statements"—and therefore that Dr. Frykman's

27   opinion about Puma's press release does not fit the facts of this case.  Mot. at 13.

28   While Plaintiff may now contend that the press release is only false or misleading

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

2

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1    in combination with other statements, that contention does not change the fact that

2    Plaintiff still contests the truth or falsity of the statements considered together.  No

3    matter how Plaintiff chooses to characterize its claims, Dr. Frykman's testimony

4    will help the jury evaluate what Puma disclosed in its top-line press release and

5    why the full results were not disclosed until a later medical conference.

6         Fourth, Plaintiff's argument that Dr. Frykman's testimony regarding ASCO

7    presentation practices is "Wikipedia-like" is not grounds for exclusion.  The

8    testimony is based on his specialized industry knowledge and will provide

9    important context that will be helpful to the trier of fact, and is therefore

10   admissible.

11        Finally, Plaintiff's attempt to exclude Dr. Frykman's testimony regarding the

12   timing of stock offerings by comparable biotechnology companies fails for much

13   the same reason.  Dr. Frykman's routine and frequent exposure to and analyses of

14   stock offerings by biotechnology companies provide the requisite experience

15   supporting his opinions.  That experience was the basis for his selection of

16   examples illustrating the common industry practice of conducting securities

17   offerings following the release of top-line results.  Courts in this circuit have

18   repeatedly recognized that the type of experience Dr. Frykman has is sufficient for

19   just such opinions.  Any quibble Plaintiff has with Dr. Frykman's selection of data

20   points goes to the weight of the testimony, not its admissibility.

21        Plaintiff's narrow reading of Rule 702 is inconsistent with well-established

22   law.  Its motion to exclude Dr. Frykman's testimony should be denied.

23   **II.    BACKGROUND**

24        On July 22, 2014, Puma disclosed the top-line ExteNET trial results in a

25   press release titled, "Puma Biotechnology Announces Positive Top Line Results

26   from Phase III PB272 Trial in Adjuvant Breast Cancer (ExteNET Trial)."

27   Declaration of Debashish Bakshi ("Pl. Ex.") 1 at Attachment A ("Press Release").

28   The Press Release provided several critical pieces of information about the

LATHAM&WATKINS‑LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

3

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1    ExteNET clinical trial, including that:

2    • The primary endpoint of the trial was disease free survival (DFS).

3    • The results of the trial demonstrated that treatment with neratinib resulted in

4       a 33% improvement in disease free survival versus placebo.  The hazard

5       ratio was determined to be 0.67, which was statistically significant with a p-

6       value of 0.0046.

7    • Based on these results from the ExteNET study, Puma plans to file for

8       regulatory approval of neratinib in the extended adjuvant setting in the first

9       half of 2015.

10   • Full results of the ExteNET trial for PB272 will be presented at a future

11      scientific meeting.

12   *Id.*  In its complaint, Plaintiff challenges the following statement in the Press

13   Release as false and misleading:  "***The results of the trial demonstrated that***

14   ***treatment with neratinib resulted in a 33% improvement in disease free survival***

15   ***versus placebo***."  Am. Compl. ¶ 49 (emphasis in original); *see also id.* ¶ 111.

16          To provide necessary context for the content and timing of Puma's press

17   release regarding the ExteNET trial results, Defendants retained Dr. Frykman to

18   explain what disclosures are customary in the biotechnology industry and why.  In

19   particular, Dr. Frykman intends to testify at trial that:  (1) Puma's Press Release

20   was in line with typical industry practices for disclosure of similar top-line clinical

21   trial results; and (2) it is common for public biotechnology companies to raise

22   capital following announcement of positive clinical trial results.  Pl. Ex. 1 at 4.  Dr.

23   Frykman's opinions are based on his knowledge and experience with disclosures of

24   clinical trial results, including his training in the field of oncology, his review of

25   the facts of this case, and his research of data regarding comparable biotechnology

26   companies and clinical trials.   Pl. Ex. 1 at 1-3; Pl. Ex. 4; Pl. Ex. 5 at 17:8-17;

27   51:10-54:19; 70:15-71:14; 72:20-74:24; 76:25-77:9.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

4

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1       As Dr. Frykman will explain at trial, it is common for biotechnology

2   companies that conduct Phase III clinical trials (meaning, trials on humans) to

3   disclose certain particular information in an initial, or "top-line," disclosure.  Pl.

4   Ex. 1 at 10-11.  For a successful Phase III clinical trial such as Puma's ExteNET

5   trial, the information initially disclosed typically includes whether the trial hit its

6   main objective, also known as the "primary endpoint," and whether and when the

7   company intends to seek regulatory approval based on these results.  *Id*.  To

8   demonstrate this industry standard practice to the jury, Dr. Frykman has identified

9   and will present examples of comparable press releases issued by companies like

10  Puma.  *Id.* at Ex. A.

11      Dr. Frykman will also offer expert testimony explaining *why* biotechnology

12  companies disclose successful Phase III clinical trial results in this customary

13  manner.  Specifically, he will help the jury understand the process for submission

14  of clinical trial results to a scientific or medical conference, such as ASCO, and

15  why the organizers of these conferences impose strict confidentiality restrictions

16  on drug companies hoping to be selected for an oral presentation.  *Id.* at 10, 11-19.

17  He will also explain what an oral presentation session is, and why being selected

18  for such a presentation is critically important to the potential success of new drug.

19  *Id.* at 3-4, 11-19.

20      Finally, Dr. Frykman will offer testimony that provides important context

21  for Puma's January 2015 stock offering, which Plaintiff claims is probative of

22  scienter.  While Plaintiff will seek to persuade the jury that the January 2015 stock

23  offering was unusual, Dr. Frykman will explain—and illustrate with specific

24  examples—that it is not at all uncommon for biotechnology companies like Puma

25  to conduct a secondary stock offering following the disclosure of top-line clinical

26  results.  *Id.* at Ex. B.

27

28

LATHAM&WATKINS⁻ᴸᴸᴾ
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

5

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   **III.   LEGAL STANDARD**

2      Expert testimony is admissible under Federal Rule of Evidence 702 ("Rule

3   702") if it "rests on a reliable foundation and is relevant to the task at hand."

4   *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  The Federal

5   Rules of Evidence embody a "strong and undeniable preference for admitting any

6   evidence having some potential for assisting the trier of fact."  *Theranos, Inc. v.*

7   *Fuisz Pharma LLC*, No. 5:11-CV-05236-PSG, 2014 WL 12695908, at *2 (N.D.

8   Cal. Mar. 10, 2014) (quoting *United States v. Velasquez*, 64 F.3d 844, 849 (3d Cir.

9   1995)) (vacating judgment where district court erred in not permitting expert

10   testimony where experts' experience could not be questioned and testimony did not

11   opine on an ultimate question).  Notably, "rejection of expert testimony has been

12   the exception rather than the rule."  *Id.* (citation omitted).

13      Any disagreement Plaintiff may have with Dr. Frykman's conclusions and

14   his level of expertise goes to the credibility and weight of his testimony, not its

15   admissibility.  *See Friedman v. Medjet Assistance, LLC*, No. CV 09-07585 MMM

16   VBKX, 2010 WL 9081271, at *4 n.30 (C.D. Cal. Nov. 8, 2010) (citing *United*

17   *States v. Senchenko*, 133 F.3d 1153, 1157 (9th Cir. 1998)); *Kannankeril v.*

18   *Terminix Int'l., Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) ("If the expert meets liberal

19   minimum qualifications [under Rule 702], then the level of the expert's expertise

20   goes to credibility and weight, not admissibility").

21   **IV.   ARGUMENT**

22      **A.   Dr. Frykman's Opinions Regarding Disclosure Practices in the**
           **Biotechnology Industry Are Admissible**
23

24      Plaintiff's Motion largely ignores the well-established principle in this

25   circuit that, where an expert is not offering *scientific* testimony, his knowledge and

26   experience can be the "the predominant, if not sole, basis for a great deal of

27   reliable expert testimony."  *Hangarter v. Provident Life & Accident Ins. Co.*, 373

28   F.3d 998, 1015 (9th Cir. 2004) (quoting the Notes of Advisory Committee on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

6

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   Proposed Evidence Rules for Fed. R. Evid. 702).  This controlling authority weighs

2   heavily against excluding Dr. Frykman's testimony.

3               **1.      Dr. Frykman Is Uniquely Qualified to Offer Opinions on
                          the Disclosure of Clinical Trial Results**
4

5        Rule 702 "contemplates a broad conception of expert qualifications" based

6   on either "knowledge, skill, experience, training, or education."  *Thomas v. Newton*

7   *Int'l Enters*., 42 F.3d 1266, 1269–70 (9th Cir. 1994) (district court abused its

8   discretion in excluding expert's declaration because expert had over two decades

9   of relevant work experience and "had worked in a variety of job categories" in the

10  relevant field).  "In the Ninth Circuit, an expert may be qualified to offer a

11  particular opinion either as a result of practical training or academic experience."

12  *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 953 (C.D. Cal. 2015) (finding

13  expert qualified based on "combination of educational training and professional

14  experience").  "The threshold for qualification is low for purposes of admissibility;

15  minimal foundation of knowledge, skill, and experience suffices."  *Id*. (citation

16  omitted); *see also Hangarter*, 373 F.3d at 1015 ("Rule 702 is broadly phrased and

17  intended to embrace more than a narrow definition of qualified expert.") (citing

18  advisory committee notes to Fed. R. Evid. 702)).  Dr. Frykman's qualifications

19  easily meet this liberal standard because each aspect of his opinion is supported by

20  relevant education and experience.  Dr. Frykman's unparalleled combination of

21  experience in oncology, clinical trial assessment, and capital markets makes him

22  qualified to testify on the disclosure of clinical trial results.  *See* Pl. Ex. 4.

23       *First*, Dr. Frykman's extensive medical training makes him well qualified to

24  understand and analyze clinical trial results, a critical component of the disclosure

25  analysis.  He earned a medical degree, completed a fellowship in oncology at The

26  Johns Hopkins University School of Medicine, and served as a medical officer at

27  the FDA for two years.  Pl. Ex. 4.  During his time at Johns Hopkins, Dr. Frykman

28  participated in the administration of numerous clinical trials.  Pl. Ex. 5 at 17:8-17.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

7

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1    He simultaneously completed a fellowship at the National Cancer Institute's

2    Division of Cancer Treatment and Diagnosis.  Pl. Ex. 4.

3        *Second*, during his time at the FDA, Dr. Frykman acted as the primary

4    reviewing clinician, the role "most close to" clinical trial protocols, clinical trial

5    data, and companies' development plans.  Pl. Ex. 5 at 47:15-19.  Additionally, Dr.

6    Frykman reviewed portions of press releases submitted to the FDA by companies

7    regarding drugs in the early stages of development and not yet on the market.  *Id.*

8    at 51:10-54:19.  Dr. Frykman's responsibility was to review the information in the

9    press releases and communicate with the FDA's Division of Drug Marketing,

10   Advertising and Communications regarding the substance and accuracy of the

11   release for drugs undergoing phase 1 and 2 trials.  *Id.*

12       *Third*, after his time at the FDA, Dr. Frykman became a policy analyst in the

13   capital markets, analyzing "hundreds and hundreds, probably thousands of press

14   releases" communicating clinical trial results from 2002 to 2009.  *Id.* at 76:5-16,

15   59:14-16.  As a policy analyst at Stanford Washington Research Group, he focused

16   on assessing "what was available in press releases, publications, scientific medical

17   conferences, and offering views on the likelihood o[f] a variety of issues but one of

18   which is the likelihood of FDA approval, the likely outcomes of public advisory

19   committee meetings convened by the FDA."  *Id.* at 70:15-71:5.  Dr. Frykman also

20   provided commentary "to institutional investment clients regarding the likely

21   outcome of clinical trials" and how the "competitive landscape would shake out

22   with the safety and efficacy announced by a company for a particular drug."  *Id.*

23   71:6-14.  Additionally, he would "frequently comment on information in the press

24   releases, both information that was there, as well as information that [he] would

25   like to see . . . but was not there."  *Id.* at 74:1-13.  Since 2009, he has consulted

26   with institutional investors regarding, among other opportunities,

27   biopharmaceutical securities in which to invest, based in part on the companies'

28   public disclosures.  Pl. Ex. 1 at 2; Pl. Ex. 4.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

8

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1    Plaintiff disregards Dr. Frykman's ample, highly relevant experience in this

2    industry, and appears to instead argue that simply because Dr. Frykman has not

3    *drafted* press releases regarding clinical trial results, he does not have the requisite

4    experience to analyze them, and his testimony should be excluded from trial as a

5    result.  Mot. at 5.  This is not the law.  The Ninth Circuit's decision in *Hangarter* is

6    instructive.  373 F.3d 998.  There, the court rejected defendants' argument that an

7    expert was not qualified to opine on insurance claims adjustment standards because

8    the expert had never investigated or adjusted insurance claims himself, and had not

9    been trained to do so.  *Id.* at 1015.  Because the expert had worked in the industry

10   for twenty-five years and had experience with marketing insurance products and

11   evaluating insurance policies and claims, the court affirmed the lower court's

12   finding that the expert was qualified to offer the opinion on industry standards.  *Id.*

13   Likewise here, whether Dr. Frykman has drafted or approved a press release on

14   behalf of an issuing company, his experience reporting on disclosures of thousands

15   of clinical trial results for institutional investors, analyzing clinical trial protocols

16   and press releases while at the FDA, and administering oncology clinical trials as a

17   medical doctor while at The Johns Hopkins University, renders him entirely

18   qualified to offer his opinion in this case.

19   Plaintiff is similarly incorrect that a lack of experience testifying as an

20   expert witness (Mot. at 6) should preclude expert testimony.  *See ConAgra*, 90 F.

21   Supp. 3d at 953 ("Prior experience need not consist of prior expert testimony on

22   the same issue") (citing *Matuez v. Lewis*, No. CV 11–7411–JVS (JPR), 2012 WL

23   3582122, at *8 (C.D. Cal. May 9, 2012) report and recommendation adopted, 2012

24   WL 3582629 (C.D. Cal. Aug. 20, 2012)); *Thomas,* 42 F.3d at 1269–70 (years of

25   experience and working in a variety of job categories relevant to the industry in

26   question clearly laid "at least the minimal foundation" necessary to meet the Rule

27   702 qualifications requirement); *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,

28   752 F.3d 807, 814–16 (9th Cir. 2014) (expert qualified because he had relevant

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

9

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   certifications and decades of relevant experience).  Indeed, "[i]f witnesses could

2   not testify for the first time as experts, we would have no experts."  *Matuez*, 2012

3   WL 3582122, at *8.  Nor is the fact that Dr. Frykman has never "taught any

4   course" (Mot. at 6) on disclosures of clinical trials grounds for exclusion.  *See, e.g.*,

5   *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 713–14 (S.D.W.V. 2014) (finding

6   expert qualified based on a review of curriculum vitae despite contention that

7   expert had "not taught any courses or conducted any studies" on the relevant

8   issues); *Lewis v. D.A. Stuart Co.*, No. 5:02CV20, 2003 WL 26097791, at *5 (E.D.

9   Tex. Oct. 22, 2003) (the fact that the expert "never taught a course" did "not render

10  [the expert] unqualified to testify").

11          Plaintiff's cited cases do not warrant a different result.  In two of them, the

12  experts ***conceded that they were not expert in the relevant field***.  Mot. at 6-7

13  (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir.

14  2001) (expert "admit[ted] that she [was] not an expert" on the relevant topic,

15  "conceded several times that she knew little—if anything—about the subject,"

16  admitted to never having researched the key issue in the appeal, and admitted she

17  had never even "seen a warning . . . that was similar to the form in the warning" at

18  issue); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 195 (S.D.N.Y.

19  2009) (proposed expert "admitted that he [was] not an expert," and "stated that he

20  was exposed to [marketing] and 'can have opinions without being an expert'")).

21          The others—which Plaintiff apparently cites for the unremarkable

22  proposition that an expert must "stay[] within the reasonable confines of his

23  subject area" (Mot. at 7)—are also easily distinguishable.  *See Avila v. Willis*

24  *Envt'l. Remediation Tr.*, 633 F.3d 828, 837–39 (9th Cir. 2011) (affirming exclusion

25  of opinions of proposed toxicology expert who "lacked scientific expertise," lacked

26  "actual evidence," offered an opinion based on "speculation," and failed to

27  eliminate possible sources of bias); *United States v. Thompson*, 229 F. Supp. 3d 91,

28  93–94 (D. Mass 2017) (proposed expert excluded because he sought to opine on "a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

10

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   pure issue of law that is not an appropriate subject for testimony," had "limited

2   experience" in the relevant field, and it was "unclear what relevant knowledge" he

3   possessed); *Stewart Title Ins. Co. v. Credit Suisse*, No. 1:11-cv-227-BLW, 2015

4   WL 4250704, at *15 (D. Idaho July 13, 2015) (permitting expert testimony in part:

5   "Because Credit Suisse's own experts are making underwriting an issue, Nielsen

6   will be allowed to testify about industry standards and practices concerning

7   underwriting."); *SEC v. Tourre*, 950 F. Supp. 2d 666, 677 (S.D.N.Y. 2013) (basing

8   its exclusion, in relevant part, on the expert's admission that he "[could not] speak

9   to industry practices" and had "not surveyed" the relevant field in the course of his

10  experiences). *Id.*

11      Plaintiff offers no explanation for its contention that Dr. Frykman has not

12  "stay[ed] within the reasonable confines" of his expertise here.  Mot. at 7.  Indeed,

13  that assertion disregards extensive testimony in this matter in which Dr. Frykman

14  draws clear connections between his expertise and his proffered opinions about

15  industry disclosure practices.  Pl. Ex. 5 at 17:8-17; 51:10-54:19; 70:15-71:14;

16  72:20-74:24; 76:25-77:9; 280:11-21; 284:19-25; 285:10-286:20; *see also id.* at

17  242:21-243:15; Pl. Ex. 1 at 23-30, Exs. A & B.  Plaintiff's narrow reading of Rule

18  702's "liberal minimum requirements" should be rejected.  *See Kannankeril*, 128

19  F.3d at 809.

20          **2.    Dr. Frykman's Opinions Regarding Industry Disclosure
                    Practices Are Based on His Experience and Are Reliable**
21

22      Plaintiff does not offer any meaningful challenge to Dr. Frykman's

23  methodology under the well-established framework of *Daubert* and its progeny.

24  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–95 (1993)

25  (identifying several non-exclusive factors to consider when addressing

26  methodology); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[A]

27  trial court should consider the specific factors identified in *Daubert* where they are

28  reasonable measures of the reliability of expert testimony.").  Rather, Plaintiff's

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

11

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   primary argument seems to be that Dr. Frykman's opinions are not the result of a

2   reliable methodology.  *See* Mot. at 9-12.  But courts in this circuit have made clear

3   that "[w]hen an expert's testimony is not scientific or technical, the reliability of

4   that testimony need not be based on 'a particular methodology or technical

5   framework,' but instead can be found reliable based on the expert's knowledge and

6   experience alone."  *English v. Estes Express Lines,* No. 5:16-cv-01353-CAS(SKx),

7   2018 WL 1136058, at *5 (C.D. Cal. Feb. 15, 2018) (citing *Hangarter*, 373 F.3d at

8   1018 (affirming reliability of expert based on his knowledge and experience)).  Dr.

9   Frykman's testimony, therefore, is admissible—irrespective of any criticism

10  Plaintiff expresses about his "methodology"—because it is based on his

11  "knowledge and experience."  *Hangarter*, 373 F.3d at 1018.

12          Plaintiff's remaining criticism amounts to an argument that Dr. Frykman has

13  not identified an industry standard, coupled with an argument that his opinion

14  encroaches on the legal issue of materiality.  Mot. at 7-12.  These two criticisms

15  are both incorrect and insufficient to justify excluding Dr. Frykman's opinion.

16  *First*, Dr. Frykman relied on his extensive, relevant expertise in order to articulate

17  an industry standard—that is, that companies like Puma disclosing top-line results

18  would typically disclose whether the trial hit its primary endpoint, the level of

19  statistical significance, and (if applicable) whether the company intends to seek

20  regulatory approval based on the results—and then provided exemplars illustrating

21  that standard.  *See supra* § A.1; Pl. Ex. 1 at Ex. A.  Dr. Frykman explained in detail

22  his framework for assessing top-line clinical trial results on both days of his

23  deposition.  Pl. Ex. 5 at 280:11-21; 284:19-25; 285:10-286:21; *see also id.* at

24  242:21-243:15; Decl. of Kristin N. Murphy ("Defs. Ex.") A at 363:6-16 (selected

25  press releases disclosed top-line, positive clinical trial results within the past ten

26  years), 409:12-411:21 (further criteria included whether the press release related to

27  oncology, whether the drug had been taken out of development, whether there was

28  a registrational intent for the trial, and whether there had been FDA feedback).  He

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

12

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   scrutinized nearly 200 press releases—just as he has done for years in authoring

2   reports in the capital markets—to illustrate the industry standards for clinical

3   results disclosures in the biotechnology industry.  Pl. Ex. 1 at Ex. C.  This is hardly

4   the "*ipse dixit*" Plaintiff claims (Mot. at 12); rather, because his opinion was based

5   on his "experience, training, and education," it is reliable and admissible.

6   *Hangarter*, 373 F.3d at 1018 (admitting expert testimony of industry standards

7   based on expert's knowledge and experience).

8          Courts should, and routinely do, admit expert testimony as evidence of

9   industry standards.  *See, e.g., ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648

10   F. App'x 609, 613 (9th Cir. 2016) (reversing district court's exclusion of expert

11   opinion on industry standard where expert's opinion logically advanced the issue);

12   *United States v. Rodriguez*, No. 2:11–cr–296–JAM, 2017 WL 4700043 at *1 (E.D.

13   Cal. Oct. 19, 2017) (admitting expert evidence of mortgage lending industry

14   standards in mortgage fraud scheme); *Smith v. Microsoft Corp.*, No. 11-CV-1958

15   JLS (BGS), 2013 WL 6497073, at *5 (S.D. Cal. Dec. 10, 2013) (admitting expert

16   testimony regarding marketing industry practices as relevant to assisting fact finder

17   understand related question).  Experts may rely on their professional experience to

18   offer opinion testimony regarding generally accepted industry standards.  *See, e.g.,*

19   *Rodriguez*, 2017 WL 4700043 at *1; *WH Smith Hotel Servs., Inc. v. Wendy's Int'l,*

20   *Inc.*, 25 F.3d 422, 429 (7th Cir. 1994) (affirming admission of expert testimony on

21   customs in the commercial real estate industry); *Cage v. City of Chicago*, 979 F.

22   Supp. 2d 787, 803–04 (N.D. Ill. 2013) (admitting expert testimony regarding the

23   meaning of a particular term in the field of forensic serology).

24          Plaintiff's cited cases, in which courts cautioned against the use of industry

25   standards where the industries in question were novel and "comprised of only a

26   few participants who controlled the practice," do not suggest otherwise.  *See SEC*

27   *v. Dain Rauscher, Inc.*, 254 F.3d 852, 857 (9th Cir. 2001) (declining to rule that

28   compliance with industry standards absolved investment bankers and underwriters

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

13

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   of liability in an offering where Defendant "was one of the first" to participate in

2   the type of offering at issue) (cited Mot. at 4); *Fed. Hous. Fin. Agency v. Nomura*

3   *Holding Am., Inc.*, 68 F. Supp. 3d 439, 473 (S.D.N.Y. 2014) (noting that the

4   relevance of industry standards may be lessened in a small, concentrated industry

5   because such standards could lead to a "race to the bottom") (cited Mot. at 4).  In

6   contrast to Plaintiff's cases—neither of which analyzed expert testimony of

7   industry standards under Rule 702—in the industry here, more than three thousand

8   oncological trials are currently being conducted by biotechnology companies.

9   Defs. Ex. B.  Many of those trials will likely yield positive results, and many of

10   those positive results will in turn be disclosed to the public.  Indeed, Dr. Frykman

11   reviewed nearly 200 press releases that fit those parameters.  Pl. Ex. 1 at Ex. C.

12   Plaintiff has not identified any circumstance that would call into question the

13   integrity of these widespread disclosure practices, such that the industry-standard

14   evidence would not be helpful here.

15        Plaintiff's reliance on *SEC v. Bankatlantic Bancorp, Inc.*, No. 12-cv-60082,

16   2013 WL 12009694 (S.D. Fla. Nov. 14, 2013) and *In re Rezulin Products Liability*

17   *Litigation*, 309 F. Supp. 2d 531, 542 (S.D.N.Y. 2004) (Mot. at 4-5) is similarly

18   misplaced.  The court in *Bankatlantic* expressly stated that "an expert may opine

19   'as to whether one party or another acted in compliance with industry standards,'"

20   and acknowledges the relevance of expert industry-standard evidence to evaluating

21   the scienter element of a securities fraud claim.  2013 WL 12009694, at *4, 10

22   ("Adherence to, or departure from, industry standards can be probative of whether

23   ordinary care was observed in conducting the business," and is therefore relevant

24   to "severe recklessness" analysis).  The particular expert testimony proffered in

25   that case, however, was inadmissible on the basis that it was "***wholly predicated*** on

26   after-the-fact events," and therefore not probative of the reasonableness of actions

27   taken during the class period.  2013 WL 12009694, at *11.  Of course, the same is

28   not true here, where Dr. Frykman based his analysis of industry standards on a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

14

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   review of company disclosures from both after *and* before the Press Release.

2   Those industry standards and examples, therefore, are directly probative of

3   Defendants' actions during the class period here.

4        Similarly, the evidence regarding industry ethics standards in *Rezulin* was

5   deemed "so vague as to be unhelpful to a fact-finder" on the bases that the offering

6   expert "admitted he was not 'an expert on ethics'" and formed his opinion entirely

7   on "personal, subjective views" rather than on a coherent evaluation of industry

8   practices.  309 F. Supp. 2d at 543–44.  There is no reason here, as there was in

9   *Bankatlantic* and *Rezulin*, to depart from established authority and disallow

10  evidence of industry standards.  Dr. Frykman engaged in a comprehensive review

11  of industry practices based on clearly defined criteria, provided examples that

12  speak directly to the reasonableness of Defendants' actions during the relevant

13  period, and certainly has not admitted that he was not an expert in the topic—

14  indeed, he testified (with good reason) that he is the foremost expert in the field.

15  Pl. Ex. 1 at 23-30, Ex. A; Pl. Ex. 5 at 129:19-131:13.

16       Moreover, Plaintiff is incorrect that Dr. Frykman does not identify an

17  industry-wide standard for disclosing clinical trial results.  Mot. at 7-9.  He

18  specifically does so—as this circuit has repeatedly allowed—by relying on his

19  education and professional experience.  *See English v. Estes Express Lines*, No.

20  5:16-cv-01353-CAS(SKx), 2018 WL 1136058, at *10-11 (C.D. Cal. Feb. 15, 2018)

21  (expert could testify as to the particular industry standards "given [the expert's]

22  education and training in the" relevant area and work experience); *Hangarter*, 373

23  F.3d at 1018 (affirming lower court's conclusion that expert witness's testimony

24  on industry standards was reliable because it was based on expert's "experience,

25  training, and education").  Dr. Frykman identified discrete, objective criteria,

26  explaining that industry standards dictate disclosure of top-line results using the

27  primary endpoint; plans for future regulatory document submission; and level of

28  statistical significance.  Pl. Ex. 5 at 280:11-21; 284:19-25; 285:10-286:21; *see also*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

15

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   *id.* at 242:21-243:15.  That these standards can be fluid based on the individualized

2   nature of each drug and each company is not, as Plaintiff urges, a basis to exclude

3   the testimony altogether.  *See, e.g., In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029,

4   1033 (7th Cir. 1993) (determining an industry standard does not require "the

5   existence of some single, uniform set"; rather, "the range of terms that

6   encompasses the practices in which firms similar in some general way" is one way

7   to establish a general industry standard); *Custom Prods. Corp. v. Intermet Corp.*,

8   170 F. Supp. 2d 853, 859 (E.D. Wis. 2001) ("[C]ertain provisions in the manuals

9   are flexible in accordance with industry standard").  Nor does Plaintiff cite any

10  authority that would purportedly require Dr. Frykman to identify press releases that

11  *fail* to comply with industry standards, in order for those standards to be

12  admissible.  Mot. at 8-9.

13      *Second*, Plaintiff argues that Dr. Frykman's report should be excluded

14  because he acknowledges that companies have an obligation to disclose material

15  information, and he does not offer an opinion on the legal issue of materiality.

16  Mot. at 11.  Plaintiff's would-be standard is not the law.  While appropriately

17  acknowledging the obvious limitation that he does not (and cannot) opine on

18  whether Puma's disclosure was materially false and misleading under the federal

19  securities regulations, Dr. Frykman is permitted to assist the trier of fact in

20  understanding common industry practices regarding top-line clinical trial results—

21  a complex topic with which laypersons are unlikely to be familiar.  *Lewert v.*

22  *Boiron, Inc.*, 212 F. Supp. 3d 917, 927 (C.D. Cal 2016) (expert testimony

23  admissible if it is "based on specialized knowledge that the common layperson

24  likely could not express or apply without assistance."); *see also Hangarter*, 373

25  F.3d at 1016 (9th Cir. 2004) (rejecting argument that expert's opinion regarding

26  industry standards was tantamount to a legal conclusion).

27          **3.      Dr. Frykman's Opinion Fits the Facts of the Case**

28      Plaintiff asserts that Dr. Frykman's opinion would not assist the jury because

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

16

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   "it was Defendants' misrepresentations during the accompanying conference call

2   that rendered the press release false and misleading," and so the Press Release "can

3   only be considered in context with the conference call statements."  Mot. at 13.

4   (Plaintiff seemingly now pivots from the allegations in its complaint, which

5   directly contest the truth or falsity of the statement in the Press Release.  Am.

6   Compl. ¶ 49.)  But Plaintiff's recrafting of the allegations in the complaint to focus

7   on the statements collectively does not change the fact that Plaintiff will still argue

8   that the Press Release, too, was false or misleading.  Dr. Frykman's opinion is

9   therefore directly relevant to the key issues in this case:  he will provide the jury

10  with important context regarding industry norms for the timing and content of

11  disclosure of topline clinical trial results, as well as the reasons for these customary

12  practices, in order to show what would have been reasonable to disclose in the

13  Press Release here.  *See Bankatlantic*, 2013 WL 12009694, at *6 (acknowledging

14  relevance of industry standards to scienter analysis; excluding expert on other

15  grounds).  Dr. Frykman's testimony will speak "clearly and directly to an issue in

16  dispute in the case, and" therefore "it will not mislead the jury."  *Daubert v.*

17  *Merrell Dow Pharms, Inc.* (*Daubert II*), 43 F.3d 1311, 1321 n.17 (9th Cir. 1995).

18          **4.      Dr. Frykman's Testimony Regarding ASCO Presentation**
                      **Practices Is Based on Specialized Knowledge and Provides**
19                    **Important Context for His Opinions**

20          Dr. Frykman's testimony regarding medical conferences is admissible

21  because it is supported by his experience and provides important context for his

22  opinions that will assist the trier of fact.  *See In re James Wilson Assocs.*, 965 F.2d

23  160, 172-3 (7th Cir. 1992) (allowing an expert witness to explain facts underlying

24  opinion where facts would not be independently admissible); *Theranos*, 2014 WL

25  12695908, at *2 (admitting expert opinion where opinions were relevant to assist

26  the fact finder evaluate evidence underlying ultimate question).

27          Unlike the experts in Plaintiff's cited cases, Dr. Frykman is not simply

28  "rehash[ing] otherwise admissible evidence."  Mot. at 15 (citing *Johns v. Bayer*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY
US-DOCS\102657707
17
OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   *Corp.*, No. 09CV1935 AJB (DHB), 2013 WL 1498965, at *28 (S.D. Cal Apr. 10,

2   2013) (precluding expert from offering chronology that merely recited defendant's

3   internal documents and third party research reports about defendant); *Highland*

4   *Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005)

5   (rejecting expert opinion based **solely** on pleadings, evidence, and depositions

6   already in the record, as well as speculation not based on facts); *Rezulin*, 309 F.

7   Supp. 2d at 551 (excluding testimony on history of drug where it merely recited

8   allegations from the complaint, because it was "a narrative of the case which a

9   juror is equally capable of constructing") (internal citation and quotation marks

10  omitted)).  Rather, Dr. Frykman is relying on his "many years of experience and

11  training" in the biotechnology industry and in the capital markets to highlight

12  principles that are beyond "the parameters of a layperson's common sense"—as

13  experts in this circuit are permitted to do.  *United States v. Finley*, 301 F.3d 1000,

14  1009, 1013-14 (9th Cir. 2002); *see also Lewert*, 212 F. Supp. 3d at 927 (admitting

15  expert testimony based on "relatively simple principles" because they were

16  "nonetheless based on specialized knowledge that the common layperson likely

17  could not express or apply without assistance").  In this section of Dr. Frykman's

18  report, he explains the significance of ASCO relative to other scientific

19  conferences, and the nature of the ASCO submissions process, including the

20  obligations imposed on prospective presenters and the different types of available

21  presentation slots.  Pl. Ex. 1 at 11-17.  This context is directly relevant to the jury's

22  understanding of two critical issues in this case—that is, the content of Puma's

23  July 22, 2014 top-line press release, and the timing of the disclosure of the full trial

24  results relative to that top-line press release.

25      *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 CIV. 7242 (SAS), 2002 WL 1585551

26  (S.D.N.Y. July 16, 2002) (Mot. at 16) is inapposite.  The expert in *LinkCo* relied

27  exclusively on the defendants' internal documents, including "computer files,

28  deposition transcripts and exhibits, and other relevant sources of information"—

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

18

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   documents with which fact witnesses were more familiar than he was—to form his

2   opinion.  *Id*. at *1–2.  That is not the case here.  On the contrary, having worked

3   extensively in capital markets and the biotechnology industry, and having attended

4   ASCO "for years" (Defs. Ex. A at 412:4-21), Dr. Frykman has developed the

5   "specialized expertise" necessary to offer *his* views regarding ASCO presentation

6   practices.  *See Lewert*, 212 F. Supp. 3d at 927.  Finally, irrespective of Plaintiff's

7   characterization of this section of this material as "Wikipedia-like" (Mot. at 15),

8   the Ninth Circuit recognizes that expert testimony "need not be complicated to

9   offer specialized expertise."  *Lewert*, 212 F. Supp. 3d at 927; *see also Finley*, 301

10  F.3d 1000, 1013 ("We must be cautious not to overstate the scope of the average

11  juror's common understanding and knowledge.").

12  **B.    Dr. Frykman Is Qualified to Offer an Opinion Regarding Customary Industry Practices With Respect to Stock Offerings**

13

14      Dr. Frykman offers the opinion that Puma's January 2015 offering,

15  conducted between the announcement of the top-line ExteNET trial results and the

16  disclosure of the full trial results at ASCO, was in line with common industry

17  practice.  Pl. Ex. 1 at 30.  This opinion will be helpful to the jury because it

18  provides context for why companies routinely raise money on a similar time frame,

19  and speaks directly to whether the stock offering is probative of scienter.  *See*

20  *Finley*, 301 F.3d at 1008 (expert testimony is admissible if it "is relevant and will

21  serve to aid the trier of fact.  Expert testimony assists the trier of fact when it

22  provides information beyond the common knowledge of the trier of fact.") (citing

23  *Daubert*, 509 U.S. at 591-93).

24      Plaintiff argues that Dr. Frykman "is not qualified to offer an opinion on this

25  issue because he "has never even been involved in any stock offering by any

26  company."  Mot. at 14.  Once again, Plaintiff offers no authority that requires (or

27  even implies) that Dr. Frykman must have participated directly in a stock offering

28  in order to be qualified to discuss common practices in the biotechnology industry.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

19

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1  *See* Mot. at 14 (citing *Avila*, 633 F.3d at 837-39) (proposed toxicology expert
2  "lacked scientific expertise," lacked "actual evidence," offered an opinion based on
3  "speculation," and failed to eliminate possible sources of bias)).  And once again,
4  *Hangarter* is exactly on point.  373 F.3d at 1015–16 (rejecting movant's argument
5  that expert must be excluded from opining on insurance claims adjustment because
6  expert had never investigated or adjusted claims).

7          Plaintiff ignores Dr. Frykman's substantial experience working with
8  investors and investment bankers on issues involving capital markets transactions,
9  including stock offerings.  During his time at Stanford Washington from 2004 to
10  2009, Dr. Frykman reviewed and evaluated investor presentations from
11  biotechnology companies in order to advise Stanford's investment bankers on
12  clinical development and the competitive landscape prior to a company's public
13  stock offering.  Pl. Ex. 5 at 59:17-60:12, 67:10-68:15.  Drawing on his firsthand
14  experience, Dr. Frykman testified that during the time he worked in capital
15  markets, he witnessed a "repetitive pattern" among biotechnology companies:  (1)
16  "A company would issue a press release"; (2) "there would be a fuller disclosure of
17  the data, either by virtue of a peer-reviewed publication or presentation at a
18  medical or scientific conference"; and (3) "somewhere either preceding or
19  following that presentation of the fuller data" the company would disclose that
20  they were initiating a stock offering.  Pl. Ex. 5 at 187:5-188:7.  Dr. Frykman's
21  extensive experience here is exactly the "specialized expertise" that Ninth Circuit
22  courts have deemed sufficient to establish a "reliable basis" for expert testimony.
23  *See Pyramid Techs.*, 752 F.3d at 814–16 (expert qualified because he had relevant
24  certifications and decades of relevant experience); *Thomas*, 42 F.3d at 1269 (years
25  of experience and working in a variety of job categories relevant to the industry
26  clearly laid "at least the minimal foundation" necessary to meet the Rule 702
27  qualifications requirement).

28          Plaintiff also challenges the reliability of Dr. Frykman's opinion, asserting

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

20

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1   that he has not "set forth any discernible industry standard," because he did not

2   quantify the specific amount of time between comparable announcements of

3   positive clinical trial results and the associated stock offering.  Mot. at 14.  This is

4   a red herring.  Dr. Frykman *does* identify an industry standard—namely, that

5   development-stage biotechnology companies, such as Puma at the time, commonly

6   conduct stock offerings in order "to raise money to support their research and

7   development activities."  Pl. Ex. 1 at 30.  As he also explains, pointing to specific

8   examples, it is common for development-stage companies to conduct a stock

9   offering after the announcement of positive clinical trial results.  *Id*.  And, because

10  these companies often wait until a medical conference to present the full clinical

11  trial results, the stock offering often takes place before the disclosure of those

12  results.  *Id*.  The precise timing varies, naturally, given the unique circumstances of

13  each company.  The fact that Dr. Frykman did not quantify a specific industry

14  standard time frame during which such offerings are conducted is not sufficient

15  basis to exclude his testimony.  *See In re Tolona Pizza Prods. Corp.*, 3 F.3d at

16  1033 (industry standard does not need to be "uniform" and can instead be a general

17  "range" of practices).

18          Any quibble Plaintiff may have with Dr. Frykman's selection of examples

19  (Mot. at 14 n.7), or distinctions based on a stock offering's timing, goes to the

20  weight of his testimony, not its admissibility.  *See Hangarter*, 373 F.3d at 1017

21  n.14 (argument regarding expert's selection of documents did not go to reliability

22  of methodology, but rather went "to the weight of his testimony—an issue properly

23  explored during direct and cross-examination") (internal quotations omitted).

24  **V.     CONCLUSION**

25          For the reasons discussed above, Plaintiff's motion to exclude the testimony

26  of Dr. Gregory Frykman should be denied.

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\102657707

21

OPP'N TO  MOTION TO EXCLUDE TESTIMONY OF
DR. GREGORY K. FRYKMAN
CASE NO. 8:15-CV-00865-AG (SHKx)

1 | Dated:  August 23, 2018          LATHAM & WATKINS LLP

2 |                                  By:   /s/ Michele D. Johnson

3 |                                  Michele D. Johnson
  |                                  Andrew B. Clubok
4 |                                  Colleen C. Smith
  |                                  Sarah A. Tomkowiak
5 |                                  Kristin N. Murphy

6 |                                  COOLEY LLP
  |                                  Michael A. Attanasio (Bar No. 151529)
7 |                                  Koji F. Fukumura (Bar No. 189719)
  |                                  Ryan E. Blair (Bar No. 246724)
8 |                                  Mary Kathryn Kelley (Bar No. 170259)
  |                                  Craig E. TenBroek (Bar No. 287848)
9 |                                  4401 Eastgate Mall
  |                                  San Diego, CA  92121
10|                                  Tel:  (858) 550-6000
  |                                  Fax:  (858) 550-6420
11|                                  mattanasio@cooley.com
  |                                  kfukumura@cooley.com
12|                                  rblair@cooley.com
  |                                  mkkelley@cooley.com
13|                                  ctenbroeck@cooley.com

14|                                  *Attorneys for Defendants Puma Biotechnology,
  |                                  Inc., Alan H. Auerbach, and Charles R. Eyler*