UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 15-00865 AG (JCGx) | Date | October 5, 2018 |
|---|---|---|---|
| Title | HSINGCHING HSU v. PUMA BIOTECHNOLOGY, INC. ET AL. | | |

Present: The Honorable  ANDREW J. GUILFORD

| Lisa Bredahl | Not Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

**Proceedings:** [IN CHAMBERS] ORDER RE MOTIONS TO EXCLUDE EXPERT WITNESSES

In a 1993 case called *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the United States Supreme Court explained that district courts are responsible for ensuring that juries hear from only those expert witnesses whose testimony is both relevant and reliable. 509 U.S. 579 (1993). Since then, parties (particularly in high-dollar cases) work hard to poke holes in the other side's experts, hoping to exclude them under the precedent set in *Daubert*. But these motions to exclude often focus on the wrong stuff. While couched in terms of "reliability" and "relevance," the arguments raised in many exclusion motions focus more on the weight of an expert's expected testimony rather than on the expert's qualifications or methods. Moreover, many parties fail to recognize what a powerful thing it is to expose, through damaging cross-examination, another party's flimsy expert at trial.

Through that lens and guided by the relevant rules and cases, the Court approaches the pending motions to exclude experts in this securities fraud class action. Lead Plaintiff Norfolk County Council (on behalf of a certified class of investors) and Defendants Puma Biotechnology, Inc.; Alan H. Auerbach; and Charles R. Eyler filed several motions to exclude. In the following sections, Court addresses the pending motions individually.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 15-00865 AG (JCGx) | Date | October 5, 2018 |
|---|---|---|---|
| Title | HSINGCHING HSU v. PUMA BIOTECHNOLOGY, INC. ET AL. | | |

## 1. GENERAL STANDARD FOR EXPERTS

Under the Federal Rules of Evidence, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" only if certain requirements are met. Fed. R. Evid. 702. Those requirements are:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)–(d). This Rule "contemplates a broad conception of expert qualifications." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269–70 (9th Cir. 1994) (citing Rule 702's advisory notes). Under these standards, the Court acts "as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (internal citations omitted).

## 1. DEFENDANTS' EXPERT—DR. GREGORY K. FRYKMAN

Plaintiffs move to exclude the testimony of Dr. Gregory K. Frykman, Defendants' expert who is expected to testify about industry standards for biotechnology companies releasing clinical trial results and raising money after releasing those results. Plaintiffs argue that Dr. Frykman's testimony should be excluded under Federal Rules of Evidence 702 and 403. Plaintiffs' theory is that Dr. Frykman's testimony is unreliable and possibly confusing.

On a preliminary note, there's some question about whether the bulk of Dr. Frykman's testimony is still relevant, considering the Court's ruling that Puma's press release disclosing the 33% DFS improvement statement wasn't false or misleading (and the Court's entry of partial summary judgment on that statement). Dr. Frykman's testimony largely seems to deal with the industry standards for releasing press releases, so it's unclear whether that part of his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-00865 AG (JCGx) | Date | October 5, 2018 |
|---|---|---|---|
| Title | HSINGCHING HSU v. PUMA BIOTECHNOLOGY, INC. ET AL. | | |

testimony is still necessary—Puma's press release wasn't misleading. Consequently, the Court will look closely at trial for the continuing relevance of Dr. Frykman's testimony.

As for Dr. Frykman's reliability, Plaintiffs argue that he isn't qualified to offer an opinion on industry standards for disclosing clinical trial results because he's a non-practicing physician who "has absolutely no experience in preparing press releases on clinical trial results . . . or analyzing whether press releases comply with any industry standard." (Mo., Dkt. No. 399 at 5.) Plaintiffs also argue that Dr. Frykman's methodology is defective because he hasn't testified about a clearly uniform practice among biotechnology companies for releasing clinical trial results, and because he said he couldn't define what "material" information should and shouldn't be included in a report. Further, Plaintiffs contend that Dr. Frykman's opinion about biotechnology companies' public offerings after clinical trials should be excluded because he "has never been involved in any stock offering by any company," among other reasons. (*Id.* at 14.)

These arguments aren't convincing. Dr. Frykman has sufficient credentials and experience to testify on the matters in his report. He earned a medical degree from Johns Hopkins University School of Medecine and served as an FDA medical officer after that. He's participated in and reviewed several clinical drug trials. He's also worked as a policy analyst, reviewing thousands of press releases that detailed clinical trial results and consulting with institutional investors about biopharmaceutical companies. All this is enough to show Dr. Frykman is qualified to give his opinion here. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) ("Given that, unlike scientific or technical testimony, the reliability of [the expert's] testimony was not contingent upon a particular methodology or technical framework, the district court did not abuse its discretion in finding [the expert's] testimony reliable based on his knowledge and experience."). Dr. Frykman's report and deposition reveal that he carefully draws on this experience, readily admitting when his experience doesn't allow him to provide an opinion about a certain subjects or answer certain questions. With their own competing evidence, Plaintiffs' are free to show a jury, if they can, that Dr. Frykman's conclusions about what is "standard" in the biopharmaceutical industry isn't that at all. But at this stage, the Court can't conclude that Dr. Frykman's testimony is unreliable, confusing, or wholly irrelevant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 15-00865 AG (JCGx) | Date | October 5, 2018 |
|---|---|---|---|
| Title | HSINGCHING HSU v. PUMA BIOTECHNOLOGY, INC. ET AL. | | |

The Court DENIES Plaintiffs' motion to exclude the testimony of Dr. Frykman without prejudice to raising objections at trial. (Dkt. No. 398.)

## 2. DEFENDANTS' EXPERT—DR. JOHN KORNAK

Plaintiffs also object to Dr. John Kornak, Defendants' biostatistics expert who is expected to testify about the results of the ExteNET trial. Plaintiffs argue that Dr. Kornak's testimony about KM curves—visual representations of a drug's effectiveness versus a placebo over time—is unreliable because he didn't use widely-accepted methods in drawing trend lines on top of the actual KM curves. Plaintiffs also argue that Dr. Kornak shouldn't be permitted to testify about KM curves beyond two years (the period of the ExteNET trial) because "there is no basis for claiming any such curves existed" before Puma's CEO, Defendant Alan Auerbach, discussed the KM curves on an investor call in July 2014. Plaintiffs' objections to Dr. Kornak's testimony are rooted in Federal Rules of Evidence 702 and 403.

Dr. Kornak's testimony is appropriately focused and reliable. *First*, Dr. Kornak's self-drawn lines reflecting the overall trend in the KM curves aren't inappropriate in this context. Dr. Kornak's lines minimize isolated fluctuations in the actual KM curves. Defendants hope to use this testimony to show that Plaintiffs' own biostatistics expert focused too narrowly on isolated sections of the KM curves, rather than looking at the curves' general trend. This testimony is helpful to the jury because the purportedly fraudulent statements Auerbach made about the KM curves focused on general trends. Further, Plaintiffs are free to cross-examine Dr. Kornak about the trend lines to distinguish between them and the actual KM curves.

*Second*, Dr. Kornak's testimony about the KM curves beyond two years is also appropriate. Defendants aim to use this testimony to show that Auerbach's statement about the KM curves "continuing to separate" beyond two years was factually true and unrelated to what the curves were doing in the trial's first two years. The parties dispute whether Auerbach saw, before the investor call, KM curves beyond two years. They also dispute whether his "continuing to separate" statement misled investors to believe that the curves had been separating all along. But, despite Plaintiffs' arguments otherwise, those factual disputes are no reason to exclude Dr. Kornak's testimony about the post-two-year curves. Instead, his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 15-00865 AG (JCGx) | Date | October 5, 2018 |
|---|---|---|---|
| Title | HSINGCHING HSU v. PUMA BIOTECHNOLOGY, INC. ET AL. | | |

testimony is reliable and helpful to the jury, who will independently resolve the underlying factual questions about what Auerbach did and didn't know before the investor call.

The Court DENIES Plaintiffs' motion to exclude Dr. Kornak's testimony without prejudice to raising objections at trial. (Dkt. No. 401.)

### 3. DEFENDANTS' EXPERT—DR. JACKIE WALLING

Under Federal Rules of Evidence 402, 403, 702, and 703, Plaintiffs move to exclude the testimony of Dr. Jackie Walling. Dr. Walling is Defendants' expert who is expected to testify about the results of the ExteNET trial and various aspects of the FDA's approval of neratinib. Plaintiffs argue that Dr. Walling improperly opines about the "state of mind" of Puma and the FDA at various points. Plaintiffs also contend that Dr. Walling shouldn't be allowed to regurgitate facts derived from otherwise admissible evidence. Plaintiffs also say that much of Dr. Walling's testimony is redundant because it's identical to the testimony of other witnesses.

Plaintiffs' arguments aren't convincing. Dr. Walling has fairly extensive (about 30 years' worth) experience in oncology research and cancer-related drug research. She is particularly well suited to testify about the FDA's process for approving new drugs, considering she's spent the bulk of her career working with biopharmaceutical companies in applying for FDA approval. Dr. Walling's opinion is appropriately limited to the factors the FDA considers in approving a new drug. Dr. Walling may not opine about what Defendants or the FDA actually believed about neratinib's approval prospects at any given point in time. She wasn't involved in that process. But Defendants explain that Dr. Walling isn't testifying about that. Instead, she's testifying about what people could reasonably assume about neratinib's potential for FDA approval at various points, based upon her familiarity with the FDA. This is appropriate expert testimony. Questions about whether Dr. Walling's testimony is redundant of other evidence can easily be resolved at trial. So, too, can questions about the relevance of Dr. Walling's testimony on certain subjects.

The Court DENIES Plaintiffs' motion to exclude the testimony of Dr. Walling without prejudice to raising objections at trial. (Dkt. No. 404.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 15-00865 AG (JCGx) | Date | October 5, 2018 |
|---|---|---|---|
| Title | HSINGCHING HSU v. PUMA BIOTECHNOLOGY, INC. ET AL. | | |

### 4. PLAINTIFFS' EXPERT—DR. PHILIP LAVIN

Defendants move to exclude testimony from Dr. Philip Lavin, Plaintiffs' expert who is expected to testify about the ExteNET trial's KM curves. Tellingly, Defendants don't contend that Dr. Lavin isn't qualified to offer opinions about KM curves. Instead they (and their expert, Dr. Kornak) say that Dr. Lavin improperly limited the focus of his expert analysis and that his conclusions are based on data that aren't statistically significant.

As the Court explained in its order on the parties' motions for partial summary judgment, Defendants may appropriately highlight for the jury the constraints of Dr. Lavin's testimony through targeted cross-examination. Further, his testimony about the two-year curves is relevant, despite Defendants' arguments to the contrary. On the investor call, Auerbach said the KM curves were "continuing to separate" after two years, which suggests that the curves had been separating during the first two years of the trial, as well. Also, it's appropriate for Dr. Lavin to testify about his experience with what records biostatisticians keep after performing certain calculations. That testimony would be relevant to whether Auerbach saw post-two-year KM curves before the investor call, considering the lack of documented evidence that those curves had been created before then.

The Court DENIES Defendants' motion to exclude the testimony of Dr. Lavin without prejudice to rasing objections at trial. (Dkt. No. 407.)

### 5. PLAINTIFFS' EXPERT—DR. STEVEN FEINSTEIN

Defendants also move to exclude the testimony of Dr. Steven Feinstein, Plaintiffs' loss causation expert. Defendants argue that Dr. Feinstein's testimony is unreliable because he hasn't sufficiently connected the purported corrective disclosures to the decline in Puma's stock price. Defendants argue that Dr. Feinstein relies on flawed methodology and incomplete information.

The Court disagrees. The heart of Dr. Feinstein's testimony is identifying what Puma-specific news released at the ASCO conference on June 1 could have caused the company's stock to drop on June 1 and 2. Dr. Feinstein opines that, although most analysts didn't actually

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-00865 AG (JCGx) | Date | October 5, 2018 |
|---|---|---|---|
| Title | HSINGCHING HSU v. PUMA BIOTECHNOLOGY, INC. ET AL. | | |

discuss the neratinib KM curves or discontinuation rates, those two disclosures caused Puma's stock to drop. Dr. Feinstein reached this conclusion because many analysts were concerned about neratinib's efficacy and safety—the two areas affected by KM curves and discontinuation rates—after the ASCO conference. It's true that the ASCO conference included a lot of information about neratinib. But Dr. Feinstein carefully explains why that other information couldn't have caused Puma's stock price to dip. Indeed, much of the information, save for the KM curves and discontinuation rates, wasn't new. Defendants might have evidence that refutes Dr. Feinstein's conclusions, but they can expose such inconsistencies at trial.

The Court also sees no disqualifying problem with Dr. Feinstein's use of a two-day loss causation window. While the parties dispute whether the ASCO disclosures on June 1 could've caused Puma's stock price dip on June 2, that's a dispute best left to the jury. The Ninth Circuit has expressly stated that there isn't any hard-and-fast rule against two-day loss causation windows, and under the facts of this case it's at least possible that the June 1 disclosures caused the dip on June 2. *See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003). Again, Defendants are free to put on evidence to the contrary.

Defendants also argue that the amount of loss calculated by Dr. Feinstein is improper. But they don't challenge his methods, only the results. This isn't a sufficient basis to exclude Dr. Feinstein's testimony. Defendants' concern with Dr. Feinstein's testimony about the amount of loss can be fleshed out at trial.

The Court DENIES Defendants' motion to exclude the testimony of Dr. Steven Feinstein without prejudice to raising objections at trial. (Dkt. No. 409.)

: 0

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 15-00865 AG (JCGx) | Date | October 5, 2018 |
|---|---|---|---|
| Title | HSINGCHING HSU v. PUMA BIOTECHNOLOGY, INC. ET AL. | | |

| | Initials of Preparer | lmb |
|---|---|---|