1  ROBBINS GELLER RUDMAN
  &amp; DOWD LLP
2  PATRICK J. COUGHLIN (111070)
TOR GRONBORG (179109)
3  JASON A. FORGE (181542)
TRIG R. SMITH (237399)
4  SUSANNAH R. CONN (205085)
J. MARCO JANOSKI GRAY (306547)
5  DEBASHISH BAKSHI (311115)
TING H. LIU (307747)
6  655 West Broadway, Suite 1900
San Diego, CA 92101
7  Telephone: 619/231-1058
619/231-7423 (fax)
8  patc@rgrdlaw.com
torg@rgrdlaw.com
9  jforge@rgrdlaw.com
trigs@rgrdlaw.com
10  sconn@rgrdlaw.com
mjanoski@rgrdlaw.com
11  dbakshi@rgrdlaw.com
tliu@rgrdlaw.com
12
Counsel for Plaintiff and the Class
13
UNITED STATES DISTRICT COURT
14
CENTRAL DISTRICT OF CALIFORNIA
15
SOUTHERN DIVISION
16
17  HSINGCHING HSU, Individually and on Behalf of All Others Similarly Situated,

18                                  Plaintiff,

19        vs.

20  PUMA BIOTECHNOLOGY, INC., et al.,

21

22                             Defendants.

Case No. 8:15-cv-00865-AG-SHK

CLASS ACTION

JOINT SUBMISSION REGARDING CONTESTED JURY INSTRUCTIONS

TRIAL DATE: January 15, 2019
TIME: 9:00 a.m.
CTRM: 10D
JUDGE: Hon. Andrew J. Guilford

23
24
25
26
27
28

1521492_1

1   Pursuant to the Court's Order Regarding Jury Instructions (ECF No. 683), the
2   parties submit the following contested jury instructions and objections in a
3   consolidated filing.   The contested instructions are in addition to the instructions
4   agreed upon by the parties.   *See* Joint Set of Jury Instructions (ECF No. 668).   Further
5   statements in support of the parties' instructions have been filed with the Court.   *See*
6   ECF Nos. 667 and 669.   The chart below summarizes the instructions in dispute.

| | Plaintiffs' Proposed Jury Instruction | Defendants' Proposed Jury Instruction |
|---|---|---|
| **1. CORPORATE STATUS** (pages 2-4) | 1. Joint Instruction No. 1 | |
| **2. THE SECURITIES EXCHANGE ACT** (pages 5-12) | 2. Securities–Definition of Recurring Terms | 2. Plaintiff's Claims/Exchange Act Explained |
| **3. ELEMENTS OF 10(b) CLAIM** (pages 13-24) | 3. Securities–Rule 10b-5 Claim | 3. Section 10(b) of the Exchange Act |
| **4. MATERIALITY** (pages 25-37) | 4. Securities–Misrepresentations or Omissions–Materiality | 4. Material Misrepresentations<br>5. Opinion Statements |
| **5. STATE OF MIND** (pages 38-67) | 5. Securities–Knowingly | 6. Knowingly<br>7. Marginal Materiality of Information<br>8. Oral Statements<br>9. Access to Information<br>10. Lack of Insider Stock Sales<br>11. Good Faith |
| **6. RELIANCE** (pages 68-78) | 6. Securities–Fraud-on-the-Market Case | 12. Presumption of Reliance: Fraud-on-the-Market<br>13. Delegation to Investment Advisor |
| **7. CAUSATION** (pages 79-89) | 7. Securities–Causation | 14. Causation<br>15. Corrective Disclosures |
| **8. DAMAGES** (pages 90-97) | 8. Securities–Damages | 16. Damages |

- 1 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# 1. CORPORATE STATUS

1521492_1

## 1.1     Joint Instruction No. 1

One of the parties in this case, Puma Biotechnology, Inc. is a corporation. Under the law, a corporation is considered to be a person.  All parties are equal under the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

A corporation can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

1521492_1

### 1.2 Resolution on the Parties's Joint Instruction on Corporate Status

The parties have resolved their disputes over competing instructions "Liability of a Corporation" and "Corporation as a Party" and now submit the joint instruction above.

1521492_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# 2. THE SECURITIES EXCHANGE ACT

1521492_1

### 2.1   Plaintiffs' Instruction No. 2 (Securities-Definition of Recurring Terms)

Congress has enacted securities laws designed to protect the integrity of financial markets.  The Plaintiffs claim to have suffered a loss caused by the Defendants' violation of certain of these laws.

There are terms concerning securities laws that have a specific legal meaning. The following definitions apply throughout these instructions, unless noted otherwise.

A security is an investment of money in a commercial, financial or other business enterprise, with the expectation of profit or other gain produced by the efforts of others.  Some common types of securities are stocks and bonds.

The buying and selling of securities is controlled by the Securities Laws. A "10b-5 Claim" is a claim brought under a federal statute, Section 10(b) of the Securities Exchange Act of 1934, which in essence prohibits acts of deception in connection with the purchase or sale of a security and in violation of rules and regulations that the SEC has the duty and power to issue. A corresponding SEC Rule, Rule 10b-5, prohibits the misrepresentation of material facts and the omission of material facts in connection with the purchase or sale of securities. A person or business entity who violates the securities laws, including Rule 10b-5, may be liable for damages caused by the violation.

A misrepresentation is a statement of material fact that is false or misleading when it is made. A statement may be misleading even if it is literally true if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs.

An omission is a failure to disclose a material fact that had to be disclosed to prevent other statements that were made from being misleading.

A controlling person is an individual who possesses the power to direct the management or policies of a business enterprise or of another person involved in the management or policy-making of the enterprise.

1521492_1

1      **Authority**:  Manual of Model Civil Jury Instructions for the District Courts of

2  the Ninth Circuit (2017), Model Instruction 18.1 (modified); Scheduling Order

3  Specifying Procedures (ECF No. 85) at 4;  *Schueneman v. Arena Pharm., Inc.*, 840

4  F.3d 698, 706 (9th Cir. 2016); *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir.

5  2008); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 504 (9th Cir. 1992).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1521492_1

### 2.2    Defendants' Instruction No. 2 (Plaintiff's Claims/Exchange Act Explained)

Plaintiff asserts claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 and a corresponding U.S. Securities & Exchange Commission regulation known as Rule 10b-5.  These laws make it unlawful for a person to commit a fraud in connection with the purchase or sale of any security.

A "security" is an investment of money in a commercial, financial, or other business enterprise with the expectation of profit or other gain produced by the efforts of others.  Some common types of securities are stocks.  The Puma common stock in this case is a security.

**Authority**:  Manual of Model Civil Jury Instructions for the Ninth Circuit (2017), Model Instruction 18.1 (modified).

- 8 -

1521492_1

## 2.3 Defendants' Objection to Plaintiffs' Instruction No. 2

Defendants object to Plaintiff's Proposed Instruction 2, and respectfully request that the Court give Defendants' Proposed Instruction 2 instead.

Defendants do not dispute that Plaintiff's Proposed Instruction 2 is based on Ninth Circuit Model Instruction 18.1. But the model instructions are only a guide – the drafters have recognized that it is often necessary to modify the model instructions for a particular case. Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Introduction to 2017 Print Edition (explaining that the model instructions "are not a substitute for the individual research and drafting that may be required in a particular case; nor are they intended to discourage judges from using their own forms and techniques for instructing juries"); *cf. Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005) ("[U]se of a model jury instruction does not preclude a finding of error."). Here, it is appropriate to depart from the model instructions for several reasons.

First, Plaintiff's proposed instruction (and the model it is based on) offers generic language explaining certain aspects of a Section 10(b) claim, but it does not provide a coherent overview of the elements of the claims, nor does it provide complete definitions and descriptions of what is required to prove each element of such a claim. Most significantly, Plaintiff's proposed instruction offers a definition of the core elements of falsity and materiality in paragraph five, but that definition is incomplete and does not explain what standards the jury should apply to determine when or whether a particular statement is materially false or misleading, or what materiality means in the context of a securities fraud claim. Defendants' Proposed Instruction 4 provides this needed context. Plaintiff's Proposed Instruction 2 also risks confusing the jury on this key element because it provides a definition of materiality and falsity in the context of an instruction that purports only to generally explain Section 10(b) *before* the jury has been provided with any guidance about the specific elements Plaintiff must prove to prevail on its claims. To avoid the risk of

1521492_1

misleading or confusing the jury, Defendants' offer Proposed Instructions 2 and 3, which together frame the general nature of the claims at issue and outline the specific elements Plaintiff must prove to prevail on its claims.  The instructions that follow then explain for the jury what is required as to each specific element of a Section 10(b) securities fraud claim, in an orderly fashion.  Defendants' Proposed Instructions 4 and 5 explain the elements of materiality and falsity, Defendants' Proposed Instructions 6-11 explain scienter, Defendants' Proposed Instructions 12 and 13 explain reliance, and Defendants' Proposed Instructions 14-16 explain loss causation and damages.

Second, Plaintiff's Proposed Instruction 2 includes language and definitions that have no application here and would only serve to confuse or mislead the jury.  *See Brownfield v. Jaguar Land Rover N. Am., LLC*, 584 F. App'x 874, 875 (9th Cir. 2014) (reducing the potential for jury confusion is an appropriate reason to modify model jury instructions); *United States v. Anderson*, 741 F.3d 938, 947 (9th Cir. 2013) (district court properly rejected "confusing instruction" that would be "misleading or inadequate to guide the jury's deliberation").  Paragraph six, regarding a claim of omissions, is inapplicable here because Plaintiff has conceded that its claims concern purportedly false or misleading statements, not omissions. Dkt. No. 443 at 13 ("And four, most important, this isn't a case about omissions.").  And paragraph seven, which discusses control person liability, is covered separately by the parties' joint Proposed Closing Instruction 11.

Accordingly, Defendants respectfully request that the Court reject Plaintiff's Proposed Instruction 2.

1521492_1

### 2.4     Plaintiffs' Objection to Defendants' Instruction No. 2

Plaintiffs object to Defendants' proposed Instruction No. 2 because it eliminates nearly all of the language from Model Instruction 18.1 without justification. Plaintiffs' Instruction No. 2 ("Securities – Definition of Recurring Terms") tracks the language of Model Instruction 18.1 with only minor modifications to remove definitions that the parties agree are not relevant in this action.[1]

Defendants altered Model Instruction 18.1 to remove the background regarding the purpose of the federal securities laws (*e.g.*, "Congress has enacted securities laws designed to protect the integrity of financial markets") and the definition of every term set forth in the Model Instruction with the exception of "security."  Defendants cite no authority for their significant changes to Model Instruction 18.1.  ECF No. 85, ¶6.3 (noting that "[t]he Court prefers to use instructions from the Manual of Model Jury Instructions for the Ninth Circuit").   The substantive definitions removed by Defendants include those for "10b-5 Claim," "misrepresentation," "omission," and "controlling person."  But this case involves a 10b-5 claim, alleged misrepresentations and omissions, and a control person claim.  *See* ECF No. 138, ¶¶49-66, 109-112.[2]

Defendants acknowledge that at least certain of the removed definitions, including "misrepresentations," are at issue in the case, but argue that any discussion of those terms should be limited to the instructions regarding the specific elements of Plaintiffs' claims.     But the Ninth Circuit instruction logically defines "misrepresentations" (and "omissions") in Model Instruction 18.1, as those recurring terms are then used in nearly every other instruction.  *See, e.g.*, Model Instruction 18.3/Plaintiffs' Instruction No. 4 (addressing the materiality of misrepresentations and

---

[1]     The parties agree that the definitions for "broker," "dealer," and certain securities are not needed because they are not at issue in this case and that the definition of "instrumentality of interstate commerce" is not needed because it is not in dispute.

[2]     Defendants' contention elsewhere that this action does not involve alleged omissions is incorrect and addressed in full herein at Plaintiffs' objections to Defendants' proposed Instruction No. 3.

omissions); Model Instruction 18.5/Plaintiffs' Instruction No. 5 (addressing Defendants' state of mind when they made the alleged misrepresentations and omissions); Model Instruction 18.8/Plaintiffs' Instruction No. 7 (addressing whether the alleged misrepresentations and omissions were the cause of the economic injury). It would be illogical and confusing to, as Defendants propose, define those terms only within the context of one element without explaining (as Model Instruction 18.1 and Plaintiffs' Instruction No. 2 do) that it is a definition that "appli[es] throughout these instructions."

As addressed further below, Defendants' proposed Instruction No. 4 (where Defendants propose to insert a definition of "misrepresentation") also incorrectly defines what a "misrepresentation" is and fails to include any definition of an "omission." And nowhere do Defendants define what a 10b-5 claim is. These are all relevant terms and are correctly defined and located in Model Instruction 18.1 and Plaintiffs' Instruction No. 2.

The Court should decline to read this instruction, and instead provide the jury with Plaintiffs' proposed Instruction No. 2 (Securities – Definition of Recurring Terms).

1521492_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# 3. ELEMENTS OF 10(b) CLAIM

1521492_1

### 3.1 Plaintiffs' Instruction No. 3 (Securities – Rule 10b-5 Claim)

Plaintiffs allege that Defendants Puma Biotechnology, Inc. and Alan Auerbach defrauded investors by making untrue statements and material omissions about clinical trial results regarding the effectiveness and side effects of the drug neratinib. This is referred to as "the Plaintiffs' 10b-5 claim."

On this claim, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

1. Defendants made an untrue statement of a material fact or omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading in connection with the purchase or sale of securities;

2. Defendants acted knowingly;

3. Plaintiffs relied on the marketplace to ensure the integrity of the price of Puma shares in buying securities; and

4. Defendants' misrepresentations and omissions caused Plaintiffs to suffer damages.

If you find that Plaintiffs have proved each of the above elements, your verdict should be for Plaintiffs.  If, on the other hand, you find that Plaintiffs have failed to prove any of these elements, your verdict should be for Defendants.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Model Instruction 18.2 (modified); Comment to Model Instruction 18.7; *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 268 (2014); *In re Convergent Techs. Sec. Litig*., 948 F.2d 507, 512 n.2 (9th Cir. 1991); and *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1102 (9th Cir. 2010).

1521492_1

### 3.2    Defendants' Instruction No. 3 (Section 10(b) of the Exchange Act)

Plaintiff alleges that Defendants defrauded investors by making false or misleading statements about the results of the ExteNET clinical trial of Puma's breast cancer drug, neratinib.  This is referred to as "Plaintiff's 10(b) claim."

On this claim, Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.    Defendants made an untrue statement of a material fact in connection with the purchase or sale of securities;

2.    Defendants acted knowingly;

3.    Plaintiff justifiably relied on Defendants' untrue statement of a material fact in buying Puma securities; and

4.    Defendants' misrepresentation caused Plaintiff to suffer losses.

The instructions that follow describe in more detail what Plaintiff must prove to satisfy these elements.   Instructions 4 and 5 explain the requirements for what constitutes an "untrue statement of a material fact" or "material misrepresentation." Instructions 6-11 separately define "knowingly."  Instruction 12 defines "justifiable reliance."    Instructions 14-16 explain what Plaintiff must prove to show that Defendants' statements caused them to suffer losses.

If you find that Plaintiff has proved each of the above elements, your verdict should be for Plaintiff.  If, on the other hand, you find that Plaintiff has failed to prove any one of these elements, your verdict should be for Defendants.

**Authority**:  Manual of Model Civil Jury Instructions for the Ninth Circuit (2017), Model Instruction 18.2 (modified); *see also* 15 U.S.C. §78j; 17 C.F.R. §240.10b-5; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, (2005).

- 15 -

1521492_1

### 3.3    Defendants' Objection to Plaintiffs' Instruction No. 3

Defendants object to Plaintiff's Proposed Instruction 3, and respectfully request that the Court give Defendants' Proposed Instruction 3 instead.

- First, Defendants object to Plaintiff's description of its claim in the first paragraph as alleging that Defendants "defrauded investors by making untrue statements and material omissions about clinical trial results regarding the effectiveness and side effects of the drug neratinib" because that description is unfair, argumentative, and incomplete.  Plaintiff's description fails to explain that its claim relates to alleged false or misleading *statements*, that Puma's drug is a breast cancer drug called neratinib, and that the alleged misstatements relate to the *results* of the ExteNET clinical trial, as opposed to the effectiveness and side effects of neratinib generally.  *See Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1022 (9th Cir. 2002) (affirming district court's omission of instructions that were "argumentative and misleading").  By contrast, these facts are clear and are described objectively and in an unbiased manner in Defendants' Proposed Instruction 3.  *See* Defendants' Proposed Instruction 3 ("Plaintiff alleges that Defendants defrauded investors by making false or misleading statements about the results of the ExteNET clinical trial of Puma's breast cancer drug, neratinib").

- Second, Defendants object to Plaintiff's description of the elements it must prove to prevail on its claim.  While the parties' proposed instructions are similar, and in most respects track Ninth Circuit Model Instruction 18.2, Plaintiff's proposal includes language for certain elements from the model that is not applicable to this case, and as to the element of reliance, departs from the model in a way that would reflect an incorrect statement of the law:

- Plaintiff's instruction includes reference to "omissions" in elements one and four, which risks confusing and misleading the jury.  Although this language appears in the model instruction, it has no application here.  Plaintiff has conceded that its claims concern purportedly false or misleading statements, not

- 16 -

1   omissions.  Dkt. No. 443 at 13 ("And four, most important, this isn't a case

2   about omissions.").  The inclusion of language regarding omissions therefore

3   fails to provide any relevant or useful information, and risks confusing and

4   misleading the jury about Plaintiff's claims.  *Anderson*, 741 F.3d at 947 (district

5   court properly rejected "confusing instruction" that would be "misleading or

6   inadequate to guide the jury's deliberation").

7   • Plaintiff's instruction offers language regarding element three—reliance—that

8   departs significantly from Ninth Circuit Model Instruction 18.2 and misstates

9   the law.  The model instruction states that Plaintiff must prove that it

10   "justifiably relied on Defendants' untrue statement of a material fact in buying

11   [Puma] securities."  Plaintiff attempts to remove the word "justifiable" from the

12   model instruction and to add language that would equate reliance with the

13   requirements for invoking the *Basic Inc. v. Levinson*, 485 U.S. 224, 243–47

14   (1988), fraud-on-the-market presumption of reliance.  But while the fraud-on-

15   the-market presumption offers one avenue for Plaintiff to prove reliance, it does

16   not replace Plaintiff's burden to establish reliance.  *See Halliburton Co. v.*

17   *Erica P. John Fund, Inc.*, 575 U.S. 258, 275 (2014) ("The *Basic* presumption

18   does not eliminate [the reliance] requirement but rather provides an alternative

19   means of satisfying it.  While the presumption makes it easier for plaintiffs to

20   prove reliance, it does not alter the elements of the Rule 10b-5 cause of action

21   and thus maintains the action's original legal scope.").  And even if Plaintiff

22   could substitute language regarding the fraud-on-the-market presumption for

23   justifiable reliance, Plaintiff's modification is still incorrect because it does not

24   adequately describe the predicates required to invoke the fraud-on-the-market

25   presumption in the first instance.  *See Halliburton*, 575 U.S. at 277–78 ("[T]o

26   invoke the [fraud on the market] presumption, a plaintiff must prove that:

27   (1) the alleged misrepresentations were publicly known, (2) they were material,

28   (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock

- 17 -

1    between when the misrepresentations were made and when the truth was

2    revealed.").

3        Accordingly, Defendants respectfully request that the Court reject Plaintiff's

4    Proposed Instruction 3.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1521492_1

### 3.4   Plaintiffs' Objection to Defendants' Instruction No. 3

Plaintiffs object to Defendants' proposed Instruction No. 3 because the introductory sentence is factually incorrect and argumentative, it fails to provide an instruction regarding the allegations of material omissions, Defendants' characterization of the reliance element misstates the law applicable to this case, and Defendants provide no basis for replacing the term "damages" with "losses." Plaintiffs' Instruction No. 3 (Securities – Rule 10b-5 Claim) more accurately tracks Model Instruction 18.2, the facts of this case, and Ninth Circuit authority.

The introductory sentence of Defendants' proposed instruction does not identify that there are alleged material omissions (in addition to alleged misrepresentations). As discussed immediately below, Defendants' assertion that Plaintiffs have not alleged material omissions is incorrect.   The opening sentence of Defendants' proposed instruction also improperly characterizes neratinib as "Puma's breast cancer drug, neratinib."  In addition to the fact that neratinib is *not* Puma's drug – the drug is owned by Pfizer and licensed to Puma – it is not properly characterized as a "breast cancer drug."  Neratinib does not cure or directly treat breast cancer.  In the ExteNET trial, neratinib was tested for use in an extended adjuvant setting, meaning for use in a subset of people who had already been treated for breast cancer and were free of the disease when they entered the trial.  Plaintiffs' Instruction No. 3 neutrally states that the alleged misrepresentations and omissions are about "clinical trial results regarding the effectiveness and side effects of the drug neratinib."

For the first element of Plaintiffs' 10b-5 claim, Defendants' proposed instruction improperly removes the underlined language from Model Instruction 18.2: "Defendants made an untrue statement of a material fact <u>or omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading</u> in connection with the purchase or sale of securities."  Defendants argue that this alteration is appropriate because "Plaintiff has conceded that its claims concern purportedly false or misleading statements, not omissions."  That is false.  At

- 19 -

all times Plaintiffs have alleged that Defendants made false statements **and** failed to disclose (*i.e.*, omitted) the true, material facts about the ExteNET trial.  The operative complaint specifically and repeatedly alleges that Defendants violated the federal securities laws based on their omissions of material facts:

- "Plaintiff and the Class are also entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), **because the claims asserted herein against Defendants are predicated upon omissions of material fact** for which there was a duty to disclose."  ECF 138, ¶92;

- One of the questions of law and fact common to the Class is "[w]hether statements made by Defendants to the investing public during the Class Period misrepresented and **omitted material facts** about neratinib and the ExteNET trial . . . ."  *Id.*, ¶95(b);

- "Defendants . . . made misleading statements and **omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading** . . . ."  *Id.*, ¶101;

- "Puma is liable for all materially false and misleading statements and **omissions** made during the Class Period . . . ."  *Id.*, ¶103;

- "Puma, as an entity, acted with corporate scienter throughout the Class Period, as its officers and agents had actual knowledge of the misrepresentations and **omissions of material facts** . . . ."  *Id.*, ¶105;

- "Defendants had actual knowledge of the misrepresentations and **omissions of material facts** . . . ."  *Id.*, ¶106;

- "By virtue of their high-level positions, and their ownership and contractual rights, participation in and awareness of the ExteNET trial, as well as their intimate knowledge of the false statements and **omissions** made by the Company and disseminated to the investing public . . . ."  *Id.*, ¶110; and

1    • "As set forth above, Defendants each violated §10(b) and Rule 10b-5 by their

2       acts and *omissions* as alleged in this Complaint." *Id.*, ¶112.

3  *See also* ECF No. 154 (Order Denying Motion to Dismiss First Amended Complaint)

4  at 5 ("As just described, Lead Plaintiff alleges that Defendant Auerbach allegedly

5  made the following misstatements or *omissions* regarding the ExteNET trial . . . .")

6  (emphasis added); *id.* at 6 ("Here, Defendant Auerbach's alleged misstatements or

7  *omissions* aren't forward-looking because, at the time of the conference call, 'he had

8  the very ExteNET diarrhea . . . and dropout rate[s] that were ultimately disclosed 11

9  months later.'") (emphasis added and citation omitted); *id.* ("Because the Court

10 concludes that the misstatements or *omissions* identified in the amended complaint

11 aren't covered by the safe harbor provision, it need not address whether the purported

12 cautionary language was 'meaningful.'") (emphasis added and citation omitted).  In

13 fact, Defendants' proposed instruction is inconsistent with their own description of the

14 elements of the 10b-5 claim, which itself mentions omissions three times.  *See* ECF

15 No. 548 (Defendants' Memorandum of Contentions of Fact and Law) at 1.

16        In support of their false assertion that this case does not involve material

17 omissions, Defendants cite to a single sentence, taken out of context, from Plaintiffs'

18 Opposition to Defendants' Motion for Summary Judgment.  ECF No. 443 at 13.  But

19 that sentence was part of a larger argument refuting the contention that, in order to

20 comply with an ASCO medical conference confidentiality policy, Defendants were

21 not permitted to publicly talk about the ExteNET trial results.  *Id.*  Among the myriad

22 reasons Defendants' "confidentiality policy" argument was incorrect, as Plaintiffs

23 stated in the opposition brief, was the fact that in this case Defendants did talk about

24 the trial results, they just did so falsely and did not disclose the true ExteNET results.

25 *Id.*  Defendants' effort to read an abandonment of claims into a single line from

26 Plaintiffs' brief also ignores that in the very same paragraph of that opposition

27 Plaintiffs made it clear that Defendants could not escape liability for their fraud

28 because "there is no statutory exception in the federal securities laws for misstating *or*

- 21 -

*omitting* clinical trial results." *Id*.; *see also* ECF No. 546 at 6 (demonstrating no abandonment of claims of omissions). Plaintiffs' claims are based on misrepresentations and omissions and the jury instructions must reflect that fact.

Defendants' proposed Instruction No. 3 is also flawed because for the third element of Plaintiff's 10b-5 claim, it uses the Model Instruction language for *direct* reliance. But as Defendants are aware, and this Court recognized in its December 8, 2017 Order approving class certification, Plaintiffs are proceeding under the fraud-on-the-market presumption of reliance. *See* ECF No. 218 at 6. Plaintiffs are *not* alleging direct reliance. Accordingly, the direct reliance language Defendants have included in their proposed Instruction No. 3 ("Plaintiff justifiably relied on Defendants' untrue statement of a material fact in buying Puma securities[.]") is inapplicable. Plaintiffs' Instruction No. 3 correctly replaces the direct reliance language with that for fraud-on-the-market cases ("Plaintiffs relied on the marketplace to ensure the integrity of the price of Puma shares in buying securities[.]"). That language is drawn from Model Instruction 18.7, is consistent with Ninth Circuit authority, and is the correct language to use in a fraud-on-the-market case like this. *See* Comment to Model Instruction 18.7 ("Use this instruction [regarding reliance on the integrity of the market] when a theory of fraud on the market is involved."); *see also In re Apple Comput. Sec. Litig*., 886 F.2d 1109, 1113-14 (9th Cir. 1989) (noting that in a direct reliance claim "the plaintiff must show individual reliance on a material misstatement," whereas under a "fraud on the market theory, the plaintiff has the benefit of a presumption that he has indirectly relied on the alleged misstatement, by relying on the integrity of the stock price established by the market").

In support of their proposed instruction, Defendants argue that the fraud-on-the-market doctrine is not the only way to prove reliance. But it is the way Plaintiffs in this case will prove reliance. That direct reliance may be used in other cases isn't relevant, because Plaintiffs here are *not* alleging direct reliance. Defendants also suggest the fraud-on-the-market presumption does not replace Plaintiffs' burden to

prove direct reliance.  But that is exactly what it does.  *See* Comment to Model Instruction 18.7 ("When the plaintiff demonstrates market efficiency, the law presumes that the market itself has factored in relevant information and the plaintiff need not prove that he or she individually or the class of purchasers whom the plaintiff seeks to represent relied on the statements or omissions on which the action is based."); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) (confirming that securities fraud plaintiffs can "satisfy the reliance element of a Rule 10b-5 action by invoking a rebuttable presumption of reliance, rather than proving direct reliance on a misrepresentation"); *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 n.2 (9th Cir. 1991) (holding that in a fraud-in-the-market case the plaintiffs "need only show that they relied on the integrity of the price of the stock as established by the market, which in turn is influenced by information or the lack of it"); *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1102 (9th Cir. 2010) ("the whole market is deceived by a misrepresentation such that '[m]isleading statements . . . defraud purchasers of stock even if the purchasers do not directly rely on the misstatements'") (quoting *Basic Inc. v. Levison*, 485 U.S. 224, 241-42 (1988)).  Because Plaintiffs are proceeding under the fraud-on-the-market presumption of reliance, Defendants' proposed language regarding direct reliance is inapplicable.

For the fourth element of Plaintiff's 10b-5 claim, Defendants' proposed instruction improperly eliminates the reference to omissions and replaces the Model Instruction 18.2 term "damages" with "losses."  *Compare* Model Instruction 18.2, *and* Plaintiffs' Instruction No. 3 ("Defendants' misrepresentations and omissions caused Plaintiffs to suffer damages."), *with* Defendants' proposed Instruction No. 3 ("Defendants' misrepresentation caused Plaintiff to suffer losses.").  As discussed above, the removal of the reference to omissions is improper as Plaintiffs have alleged material omissions.  Defendants have not provided an explanation for replacing "damages" with "losses," and Plaintiffs do not believe there is any reason to deviate from the language of the Model Instruction.

- 23 -

1        The Court should decline to read this instruction, and instead provide the jury

2    with Plaintiffs' proposed Instruction No. 3 (Securities – Rule 10b-5 Claim).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# 4. MATERIALITY

1521492_1

### 4.1 Plaintiffs' Instruction No. 4 (Securities–Misrepresentations or Omissions–Materiality)

Plaintiffs must prove by a preponderance of the evidence that Defendants' misrepresentation or omission was material.

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether to buy or sell that security.

An omission concerning a security is material if a reasonable investor would have regarded what was not disclosed to it as having significantly altered the total mix of information it took into account in deciding whether to buy or sell the security.

You must decide whether something was material based on the circumstances as they existed at the time of the statement or omission.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Model Instruction 18.3 (unmodified); Scheduling Order Specifying Procedures (ECF No. 85) at 4;  *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988); *Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

1521492_1

### 4.2 Defendants' Instruction No. 4 (Material Misrepresentations)

Plaintiff must prove by a preponderance of the evidence that each of Defendants' statements was false or misleading.  To show that the statement was misleading, Plaintiffs must show that a reasonable investor would have received a materially false impression from the statement.

Plaintiff must also prove by a preponderance of the evidence that each false statement was materially false.  A statement is materially false if there is a substantial likelihood that, under all the circumstances, the fact would have assumed actual significance in a reasonable investor's decision whether to buy or sell Puma stock. The mere fact that an investor might find information interesting or desirable is not sufficient to satisfy the materiality requirement.

**Authority**:   Manual of Model Civil Jury Instructions for the Ninth Circuit (2017), Model Instruction 18.3 (modified); *see also* 15 U.S.C § 78u-4(b); 17 C.F.R. § 230.405; *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 960-61 (C.D. Cal. 2000); Jury Charge, *SEC v. Cuban*, No. 08-CV-2050-D (N.D. Tex. Oct. 16, 2013) (Dkt. No. 278), at 10.

1521492_1

### 4.3    Defendants' Objection to Plaintiffs' Instruction No. 4

Defendants object to Plaintiff's Proposed Instruction 4, and respectfully request that the Court instead give Defendants' Proposed Instructions 4–5.

While Plaintiff's proposed instruction is based on Ninth Circuit Model Instruction 18.3, there are several reasons that this Court should depart from the model in this case.  Indeed, even the drafters of those model instructions have recognized that it is often necessary, as it is here, to modify the model instructions for a particular case.  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Introduction to 2017 Print Edition (explaining that the model instructions "are not a substitute for the individual research and drafting that may be required in a particular case; nor are they intended to discourage judges from using their own forms and techniques for instructing juries"); *Cascade Health Sols. v. PeaceHealth,* 515 F.3d 883, 917 (9th Cir. 2008) ("A district court has substantial latitude in tailoring jury instructions.") (quoting *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1051 (9th Cir. 1998)).

- First, Defendants object to this proposed instruction because it references "omissions" as a basis for liability.  Plaintiff has already conceded that its claims concern purportedly false or misleading statements, not omissions.  Dkt. No. 443 at 13 ("And four, most important, this isn't a case about omissions.").  Plaintiff's claims in this case are based on the premise that Defendants' statements were affirmatively misleading, not that Defendants failed to disclose information or facts that they had an independent duty to disclose.  Plaintiff's reference to "omissions" thus fails to provide any relevant or useful information, and, more importantly, risks misleading the jury about the nature of Plaintiff's claims.  *Brownfield*, 584 F. App'x at 875 (recognizing that reducing the potential for jury confusion is an appropriate reason to modify jury instructions); *Anderson*, 741 F.3d at 947 (district court properly rejected "confusing instruction" that would be "misleading or inadequate to guide the jury's deliberation").

- 28 -

Second, Defendants object to this proposed instruction because Defendants' Proposed Instruction 4 offers a more complete and accurate description of current law regarding what is required to prove a material false statement or misrepresentation. Defendants' Proposed Instruction 4 offers only minor changes to the language of the model instruction that clarify that Plaintiff must prove not only that each of the statements at issue was material, but also that each of those statements was false or misleading.  Without this clarification, the jury will not be instructed as to an essential element of Plaintiff's claims – falsity.  *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("Rule 10b-5 . . . prohibit[s] *only* misleading and untrue statements, not statements that are incomplete.").

In addition, Defendants' instruction offers a simple definition of materiality that will help the jury understand this "inherently fact-specific" concept that "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him." *Basic*, 485 U.S. at 236 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)).  As the Supreme Court explained in *Basic*, these assessments "require[] the exercise of judgment in the light of all the circumstances." *Id.*  Defendants accordingly propose additional language for this instruction, which explains materiality to jurors:  "A statement is materially false if there is a substantial likelihood that, under all the circumstances, the fact would have assumed actual significance in a reasonable investor's decision whether to buy or sell Puma stock.  The mere fact that an investor might find information interesting or desirable is not sufficient to satisfy the materiality requirement."  The language in the first sentence comes directly from the jury instruction given in *SEC v. Cuban*, No. 08-CV-2050-D (N.D. Tex. Oct. 16, 2013) (ECF No. 278), and it is entirely consistent with Ninth Circuit authority.  *See McGonigle v. Combs*, 968 F.2d 810, 817 (9th Cir. 1992) ("A fact is material if there is 'a substantial likelihood that, under all the circumstances, the [ ] fact would have assumed actual significance in the deliberations of the reasonable shareholder.'")

1521492_1

1   (internal citation omitted); *see also Retail Wholesale & Dep't Store Union Local 338*

2   *Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) ("The

3   materiality of the misrepresentation or an omission depends upon whether there is a

4   substantial likelihood that it would have been viewed by the reasonable investor as

5   having significantly altered the 'total mix' of information made available for the

6   purpose of decision making by stockholders concerning their investments.") (internal

7   citation omitted).  The second sentence is taken verbatim from the First Circuit's

8   decision in *Milton v. Van Dorn Co.*, 961 F.2d 965, 969 (1st Cir. 1992).  The Ninth

9   Circuit has embraced the same standard.  *See In re Cutera Sec. Litig.*, 610 F.3d 1103,

10  1109 (9th Cir. 2010) ("Often, a statement will not mislead even if it is incomplete or

11  does not include all relevant facts.  Instead, a statement is misleading if it would give a

12  reasonable investor the impression of a state of affairs that differs in a material way

13  from the one that actually exists.") (internal citation omitted).

14          Accordingly, Defendants respectfully request that the Court reject Plaintiff's

15  Proposed Instruction 4.

16

17

18

19

20

21

22

23

24

25

26

27

28

1521492_1

### 4.4 Plaintiffs' Objection to Defendants' Instruction No. 4

Defendants assert that their proposed Instruction No. 4 is based on Model Instruction 18.3. But, there is almost no similarity between Defendants' proposed instruction and the Model Instruction. In contrast, Plaintiffs' Instruction No. 4 (Securities – Misrepresentations or Omissions – Materiality) precisely tracks Model Instruction 18.3. *See* ECF No. 85, ¶6.3 (noting that "[t]he Court prefers to use instructions from the Manual of Model Jury Instructions for the Ninth Circuit"). Defendants have not justified their significant departure from the Model Instruction and their proposed instruction misstates the law and the facts of this case.

First, Defendants' proposed instruction eliminates all references to omissions. As discussed above with respect to Defendants' proposed Instruction No. 3, this case concerns alleged omissions of material facts. Accordingly, any instruction on materiality must include language regarding the materiality of omissions. That language, taken directly from Model Instruction 18.3, is in Plaintiffs' Instruction No. 4, but is missing from Defendants' proposed instruction.

Second, Defendants' proposed instruction states that for a statement to be "misleading" it must be shown that "a reasonable investor would have received a materially false impression from the statement." That is a misstatement of the law. *See Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1350 (C.D. Cal. 2014) (noting that a false statement is one that "'was untrue or misleading when made'") (citation omitted); *see also City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc*., 302 F. Supp. 3d 1028, 1039 (N.D. Cal. 2018) (same); Model Instruction 18.1 (a misstatement is a statement that is "false or misleading when it is made"). Defendants compound their error by proposing in their Instruction No. 4 that separate from the finding of whether a statement created a "materially false impression," the jury must determine whether the statement was "materially false" ("Plaintiff must *also* prove by a preponderance of the evidence that each false statement was materially false.") (emphasis added). While there is no dispute that

- 31 -

1521492_1

1    Plaintiffs must prove Defendants' statements and omissions were materially false (*see*

2    Plaintiffs' Instruction No. 4 and Model Instruction 18.3 ("Plaintiffs must prove by a

3    preponderance of the evidence that Defendants' misrepresentation or omission was

4    material")), there is no basis for Defendants' instructions requiring the jury to first

5    determine whether a statement caused a "materially false impression" and then make a

6    second, separate determination of whether the statement "was materially false."  As

7    set forth in the Model Instruction and Plaintiffs' Instruction No. 4, this is appropriately

8    a single inquiry.

9          Even setting aside the misstatement of law, Defendants' proposed instruction is

10   confusing in that there is no explanation of whether or how a statement that created a

11   "materially false impression" could be different from one that was "materially false"

12   or "would have assumed actual significance in a reasonable investor's decision

13   whether to buy or sell Puma stock."  Presumably a statement that created a "materially

14   false impression" would inherently be "materially false," rendering Defendants' two-

15   part inquiry moot or unnecessarily confusing.  *See United States v. Hughes*, 273 F.

16   App'x 587, 590 (9th Cir. 2007) (noting that jury instructions are meant to "mitigate[]

17   any risk of juror confusion"); *United States v. Varela*, 993 F.2d 686, 689 (9th Cir.

18   1993) ("[T]he court concluded that '[t]he possibility that there was confusion or

19   misunderstanding is strengthened, not eliminated, by view of the instructions as a

20   whole' because the general instruction and the specific instruction were

21   contradictory.") (citation omitted).  *Sharonoff v. Warden*, 2017 WL 2119785, at *9

22   (E.D. Cal. May 16, 2017) (highlighting that jury instructions should "eliminate[] any

23   danger of confusing the issues, or of misleading the jury").

24         Third, Defendants' proposed instruction is also confusing and unclear in

25   describing a material statement as one where "there is a substantial likelihood that,

26   under all the circumstances, the fact would have assumed actual significance in a

27   reasonable investor's decision whether to buy or sell Puma stock."  There is no

28   explanation for what "would have assumed" means or the difference between

- 32 -

"significance" and "actual significance," and this will be far from clear to the jury. Model Instruction 18.3 and Plaintiffs' Instruction No. 4 use the simple, understandable terminology that something is material if a reasonable investor "would consider the fact important." That comports with the law. *See Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996) ("Materiality is established by 'showing that a reasonable shareholder would consider the misrepresentation or omission ***important***, because it altered the total mix of available information.'") (citation omitted and emphasis added); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) ("An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would considerate it ***important*** . . . .) (emphasis added); *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988) ("'"the hiding and secreting of ***important*** information obstructs the operations of the markets as indices of real value"'") (quoting H.R. Rep. No. 1383, at 11) [3]

Fourth, Defendants append to their instruction the argumentative and unnecessary statement that "[t]he mere fact that an investor might find information interesting or desirable is not sufficient to satisfy the materiality requirement." This sentence has no support in the Model Instructions or any Ninth Circuit authority. The only support cited by Defendants is a First Circuit case from 1992, *Milton v. Van Dorn Co.*, 961 F.2d 965 (1st Cir. 1992). Defendants claim that the Ninth Circuit has embraced this First Circuit decision. That is not true. Neither the Ninth Circuit nor any court in this Circuit has held that information that a reasonable investor would be interested in seeing or deemed desirable to know in making the investment decision is inherently not material. To the contrary, if there is a substantial likelihood that an

---

[3]     Defendants' insertion of the term "assumed actual significance" is also unwarranted because it creates the false impression that this case involves a theory of direct reliance on misstatements. The cases cited by Defendants for the use of that phrase were individual actions involving direct reliance, not, like here, class actions involving the fraud-on-the-market presumption of reliance. *See TSC*, 426 U.S. at 449; Jury Charge, *SEC v. Cuban*, No. 08-CV-2050-D, ECF No. 278 at 10 (N.D. Tex. Oct. 16, 2013).

1   investor would consider "interesting" or "desirable" information important in deciding

2   whether to buy or sell stock, than that information *is* material.  *No. 84 Employer-*

3   *Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934

4   (9th Cir. 2003).  Defendants' proposed sentence is, if anything, less accurate than its

5   inverse: the fact an investor *does* find information interesting or desirable in making

6   his or her investment decision *is* evidence of materiality.  But, like Defendants'

7   proposed language, this statement is unnecessary given that the jury can be provided

8   with the legally accurate definition of materiality.  That definition is set forth in Model

9   Instruction 18.3 and Plaintiffs' proposed Instruction No. 4.

10          The Court should decline to read this instruction, and instead provide the jury

11   with Plaintiffs' proposed Instruction No. 4 (Securities – Misrepresentations or

12   Omissions – Materiality).

### 4.5    Defendants' Instruction No. 5 (Opinion Statements)

In determining whether Mr. Auerbach made an untrue statement of material fact, you may consider whether the statements made were statements of "opinion" rather than "fact." An "opinion" is a belief, a view, or a sentiment which the mind forms of persons or things. A statement of fact, such as "the coffee is hot," expresses certainty about a thing. A statement of opinion, such as "I think the coffee is hot," does not.

If you find that Mr. Auerbach's statements were opinion statements, he may only be found liable if Plaintiff proves by a preponderance of the evidence one of the following:

    1.    Mr. Auerbach did not honestly hold the stated opinions when he made them and those opinions were objectively untrue;

    2.    The opinion statements contained statements of fact that were untrue; or

    3.    The statements omitted material facts regarding the basis for Mr. Auerbach's opinions and the omission of those facts made the opinions misleading.

A reasonable investor understands that opinions sometimes rest on a weighing of competing facts. Therefore, an opinion statement is not necessarily misleading merely because a defendant knows, but fails to disclose, some fact cutting the other way.

**Authority**: Manual of Model Civil Jury Instructions for the Ninth Circuit (2017), Comment to Model Instruction 18.1 (modified); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1326–27, 1329, 1332 (2015); *In re Atossa Genetics, Inc. Sec. Litig.*, 868 F.3d 784, 801–02 (9th Cir. 2017); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 614-16 (9th Cir. 2017).

- 35 -

1521492_1

**4.6     Plaintiffs' Objection to Defendants' Instruction No. 5**

Defendants proposed Instruction No. 5 is not based on any Model Instruction, is inapplicable to the facts and allegations in this case, and it misstates the law.

Defendants argue that their proposed instruction is based on **commentary** to Model Instruction 18.1.  But, none of the language in Defendants' proposed instruction is from Model Instruction 18.1 or any other Model Instruction.  And, other than the reference to "opinion statements," Defendants' proposed instruction does not even conform to the commentary to Model Instruction 18.1.  Notably, and contrary to Defendants' claim, the commentary does **not** suggest that a separate "opinion statement" instruction is required, appropriate, or useful.  Moreover, the fact that the commentary discusses *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, __ U.S. __, 135 S. Ct. 1318 (2015), simply demonstrates that the Model Instruction is neither out of date nor legally insufficient.

Even assuming that a separate instruction is warranted in cases involving statements of opinion (it isn't), such an instruction would not be applicable here.  This case does not involve any statements of opinion (*i.e.*, a statement that can't be verified as true or untrue).  All of the alleged misstatements and omissions in this case concern what the actual ExteNET trial results were as of July 22, 2014.  And the trial results Defendants publicly discussed on July 22, 2014 can be verified as false and misleading based on the actual results Defendants had as of that date.  As the Court held in rejecting Defendants' argument that certain of their statements were "forward-looking," Defendants had "the precise information investors sought – the safety results and the dropout rates" and, as alleged, "Defendants Puma and Auerbach knew that the current results weren't in line with historical information they provided."  ECF No. 154 at 6.  This case concerns false statements and omissions of fact.

Moreover, Defendants' proposed definition of what an opinion is ("a belief, a view, or a sentiment which the mind forms of persons or things") excludes what the Supreme Court recognized would **not** be an opinion: "'a thing done or existing' or

- 36 -

1521492_1

1 '[a]n actual happening.'"   *Omnicare*, 135 S. Ct. at 1325 (citation omitted).

2 Defendants' omission of this language is particularly conspicuous because, as

3 discussed, this case concerns misrepresentations and omissions about the ExteNET

4 results that existed as of July 22, 2014.  *See also City of Dearborn Heights Act 345*

5 *Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 614 (9th Cir. 2017)

6 (defining an opinion statement as one that "cannot be objectively verified" in contrast

7 to a verifiable fact).

8       Finally, even based on Defendants' inappropriate instruction, an omission

9 statement would be misleading and actionable if it included a fact that was untrue or it

10 omitted a material fact.  *See* Defendants' proposed Instruction No. 5 ("2.  The opinion

11 statements contained statements of fact that were untrue . . . ."); *id.* ("3.  The

12 statements omitted material facts regarding the basis for [the] opinions . . . .").  But in

13 accordance with Plaintiffs' state of mind instruction, the jury will already be

14 instructed that they need to determine if Defendants made statements "with the

15 knowledge that the statement was false or with reckless disregard for whether the

16 statement was true" or that Defendants "omit[ted] necessary information with the

17 knowledge that the omission would make the statement false or misleading."  *See*

18 Plaintiffs' Instruction No. 5 and Model Instruction 18.5.  So, in addition to the factual

19 and legal deficiencies with Defendants' proposed Instruction No. 5, it is unnecessary

20 and would only confuse the jury.

21       The Court should decline to read this instruction and no alternative instruction

22 is warranted.

23

24

25

26

27

28

1521492_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# 5. STATE OF MIND

1521492_1

### 5.1 Plaintiffs' Instruction No. 5 (Securities - Knowingly)

A defendant acts knowingly when it makes an untrue statement with the knowledge that the statement was false or with reckless disregard for whether the statement was true.

A defendant also acts knowingly when it omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading.

"Reckless" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.

A corporation has the knowledge of its officers and employees when they are acting within the scope of their employment.  Defendant Puma Biotechnology, Inc., which can only act through its officers and employees, acted knowingly if defendant Alan Auerbach acted knowingly and within the scope of his employment.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Model Instruction 18.5 (modified); Scheduling Order Specifying Procedures (ECF No. 85) at 4;  *Gebhart v. SEC*, 595 F.3d 1034, 1041 (9th Cir. 2010); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990); *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476, 477 (9th Cir. 2015).

1521492_1

## 5.2    Defendants' Instruction No. 6 (Knowingly)

Plaintiff must also prove by a preponderance of the evidence that each Defendant acted with scienter, meaning that the Defendant acted knowingly.  A defendant acts knowingly when he makes an untrue statement with the knowledge that the statement was false, or with deliberate recklessness for whether the statement was true.

"Deliberate recklessness" is highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.  It is not enough for Plaintiff to show that Mr. Auerbach acted accidentally, negligently, or merely made a mistake.  Negligence, even gross negligence, does not constitute knowing conduct for purposes of the federal securities laws.

Puma, which can only act through its employees, acted knowingly with respect to the statements at issue in this case if Mr. Auerbach made the statement knowingly.

**Authority**:  Manual of Model Civil Jury Instructions for the Ninth Circuit (2017), Model Instruction 18.5 (modified); *see also Webb v. SolarCity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018); *In re ChinaCast Educ. Corp. Sec. Litig.* 809 F.3d 471, 476 (9th Cir. 2015); *Gebhart v. SEC*, 595 F.3d 1034, 1041-43 (9th Cir. 2010); *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002); *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 976-77 (9th Cir. 1999); *Provenz v. Miller*, 95 F.3d 1376, 1388 (9th Cir. 1996); *Kaplan v. Rose*, 49 F.3d 1363, 1378 (9th Cir. 1994); *McGee v. Am. Oriental Bioengineering, Inc.*, 2014 WL 12586107, at *17 (C.D. Cal. Sept. 23, 2014).

1521492_1

### 5.3   Defendants' Objection to Plaintiffs' Instruction No. 5

Defendants object to Plaintiff's Proposed Instruction 5 and respectfully request that the Court give Defendants' Proposed Instruction 6 instead.

Defendants do not object to the first paragraph of Plaintiff's instruction, which tracks the language of the model instruction, as does the language of Defendants' Proposed Instruction 6.  Defendants' proposed instruction is preferable, however, as it adds an introductory sentence, which explains that "scienter" refers to "knowing" conduct:  "Plaintiff must also prove by a preponderance of the evidence that each Defendant acted with scienter, meaning that the Defendant acted knowingly.  A defendant acts knowingly when he makes an untrue statement with the knowledge that the statement was false, or with deliberate recklessness for whether the statement was true."

While the next two paragraphs of Plaintiff's Proposed Instruction 5 are based on Ninth Circuit Model Instruction 18.5, here again, there are good reasons for the Court to depart from the model:

- The second paragraph of Plaintiff's Proposed Instruction 5 addresses knowing conduct in the context of omissions:  "A defendant also acts knowingly when it omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading."  Because Plaintiff has conceded that its claims concern purportedly false or misleading statements, not omissions, this language has no application here.  Dkt. No. 443 at 13 ("And four, most important, this isn't a case about omissions.").

- The third paragraph of Plaintiff's Proposed Instruction 5, while a correct statement of the law, is incomplete.  As an initial matter, the correct standard for reckless conduct is "deliberate recklessness," rather than mere "recklessness," and thus the first sentence of the model should be modified to refer to "deliberate recklessness."  *E.g.*, *Webb v. SolarCity Corp.*, 884 F.3d 844,

851 (9th Cir. 2018) ("We have held that plaintiffs can meet this standard by alleging facts demonstrating an 'intent to deceive, manipulate, or defraud' or '<u>deliberate recklessness</u>.'") (emphasis added).  Defendants' Proposed Instruction 6 then explains what this standard entails, clarifying for the jury that negligent conduct is not enough to demonstrate deliberate recklessness:  "It is not enough for Plaintiff to show that Mr. Auerbach acted accidentally, negligently, or merely made a mistake.  Negligence, even gross negligence, does not constitute knowing conduct for purposes of the federal securities laws."  This is a correct and helpful statement of the law, which comes directly from the Ninth Circuit's opinion in *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002) ("Negligence, even gross negligence, does not rise to the level of the nefarious mental state necessary to constitute securities fraud . . . .").  *See also, e.g.*, *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 702 (9th Cir. 2012) ("Scienter requires either 'deliberate recklessness' or 'conscious recklessness' – a 'form of intent rather than a greater degree of negligence.'") (internal citations omitted).  Combined with Defendants' Proposed Instructions 7–11, Defendants' instruction provides a more complete description of current law regarding what is required to prove scienter, including the factors the jury may take into account when deciding whether any Defendant acted knowingly.

Finally, Defendants object to the final paragraph of Plaintiff's Proposed Instruction 5:  "A corporation has the knowledge of its officers and employees when they are acting within the scope of their employment.  Defendant Puma Biotechnology, Inc., which can only act through its officers and employees, acted knowingly if defendant Alan Auerbach acted knowingly and within the scope of his employment."  This language is an improper departure from Ninth Circuit Model Instruction 18.5 because it is an incorrect statement of the law that will mislead the jury.  Specifically, Plaintiff's instruction states that Puma acted with scienter if Mr.

1   Auerbach or Puma's "officers and employees when they are acting within the scope of

2   their employment" acted knowingly.  But in the Ninth Circuit, Puma is only deemed

3   to have acted knowingly if a *senior controlling officer* – as opposed to any employee –

4   acted knowingly.  *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th

5   Cir. 2015) ("The scienter of the senior controlling officers of a corporation may be

6   attributed to the corporation itself to establish liability as a primary violator of § 10(b)

7   and Rule 10b-5 when those senior officials were acting within the scope of their

8   apparent authority.").   In that regard, Plaintiff's Proposed Instruction 5 is also

9   inconsistent with the facts of this case, in which the only senior controlling officer

10  whose knowledge may be imputed to Puma is Mr. Auerbach, and misleadingly

11  suggests that other employees' conduct is relevant to scienter.   This language will

12  likely confuse and mislead the jury.  *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir.

13  1996) ("Jury instructions must be formulated so that they fairly and adequately cover

14  the issues presented, correctly state the law, and are not misleading.").   In contrast, the

15  last paragraph of Defendants' Proposed Instruction 6 explains how the scienter

16  standard applies to Puma in this context, consistent with Ninth Circuit law.  *See*

17  *McGee v. Am. Oriental Bioengineering, Inc.*, 2014 WL 12586107, at *17 n.19 (C.D.

18  Cal. Sept. 23, 2014).

19          Accordingly, Defendants respectfully request that the Court reject Plaintiff's

20  Proposed Instruction 5.

21

22

23

24

25

26

27

28

1521492_1

### 5.4 Plaintiffs' Objection to Defendants' Instruction No. 6

Defendants' proposed Instruction No. 6 partially follows Model Instruction 18.5. But Defendants made one unsupported deletion and one improper addition that misstates the law. Plaintiffs' Instruction No. 5 (Securities – Knowingly), adheres to Model Instruction 18.5 and suffers none of the flaws of Defendants' proposed instruction.

Improperly deleted from Defendants' proposed instruction is the Model Instruction language regarding the knowing or reckless omission of information: "A defendant acts knowingly when it omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading." Model Instruction 18.5; Plaintiffs' Instruction No. 5. Defendants argue that the removal of this language is appropriate because there are no allegations here of material omissions. But as discussed above in response to Defendants' proposed Instruction No. 3, that is incorrect. This case involves omissions of material fact, and any state of mind instruction must include the standard for an omission.

Defendants have also added language suggesting that Defendants could not have acted knowingly if they acted "accidentally, negligently, or merely made a mistake." That is a misstatement of the law. Indeed, Defendants' proposed language ("accidentally, negligently, or merely made a mistake") does not appear in any governing case law, any case cited by Defendants, or any other authority. Defendants cite nothing to support this addition. Where a Defendant knows that his statements are false or omit material information, he cannot escape liability simply by claiming the statement was an accident or he made a mistake. *Reese v. Malone*, 747 F.3d 557, 571 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017); *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1093 (9th Cir. 2010).

- 44 -

1    Defendants cite to *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d

2   385, 391 (9th Cir. 2002), for the proposition that negligence does not rise to the level

3   of knowing conduct.  First, there is nothing in the *DSAM* opinion regarding accidental

4   behavior or making a mistake, let alone any rule that a defendant can evade liability

5   for knowingly making a false statement by claiming it was an accident or mistake.

6   Second, *DSAM* involved the heightened ***pleading*** standard for a claim against an

7   auditor.  *Id.*  It is in the context of auditor liability that negligence is typically relevant.

8   That is because auditors can be sued by their clients for negligence.  But as the Ninth

9   Circuit held, just because an auditor would be liable to a client for negligence does not

10   mean that it necessarily acted with scienter.  *Id.*  Third, while negligence is an

11   example of conduct that would not be reckless, Defendants provide no basis for why

12   this example, as opposed to any other example of what would or would not be

13   knowing or reckless behavior, should be included in the instruction.  As reflected by

14   the commentary to Model Instruction 18.5, there is no need for additional language

15   regarding negligence, as the definitions of "knowingly" and "reckless" already

16   exclude action that would only be negligent.[4]

17    The parties agree that it is appropriate to add a final paragraph regarding how

18   the state of mind standard applies to the defendant corporation, Puma.  And the parties

19   agree that a corporation can only act through its officers and employees and that Puma

20   acted knowingly if defendant Auerbach acted knowingly.   But while similar to

21   Defendants' proposal, the language in Plaintiffs' Instruction No. 5 more accurately

---

22   [4]    Defendants also proposed to add the term "deliberate" before recklessness in
the instruction.  As reflected in Model Instruction 18.5, this addition is unnecessary
23   because the definition of reckless that is provided, and which the parties both agree to,
is the definition used for "deliberate" recklessness, "conscious" recklessness, or any of
24   the other verbs used to describe the required state of recklessness.  *See United States
v. Harris*, 587 F. App'x 411, 411 (9th Cir. 2014) ("a defendant is not entitled to a
25   particularly worded instruction where the instructions given, when viewed as a whole,
adequately and correctly cover the substance of the requested instruction").
26   Accordingly, there is no need to select any verb to precede "reckless," and doing so
would only inject unnecessary and confusing legalese into the instructions.  *See
27   United States v. Anderson*, 741 F.3d 938, 947 (9th Cir. 2013) ("A district court may
properly reject a misleading or confusing instruction.").
28

- 45 -

1  tracks Ninth Circuit precedent regarding agent-agency liability and corporate
2  knowledge scienter. *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 477
3  (9th Cir. 2015) ("'all information known by the agent, at least when received within
4  the scope of authority, is deemed known by the principal'") (citation omitted).

5      The Court should decline to read this instruction, and instead provide the jury
6  with Plaintiffs' proposed Instruction No. 5 (Securities – Knowingly).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.5    Defendants' Instruction No. 7 (Marginal Materiality of Information)

In determining whether Defendants acted knowingly, you may consider the relative materiality of the information.  If it is questionable whether a fact is material or its materiality is marginal, it is less likely that a Defendant acted with the requisite intent.

**Authority**:  *In re Smith & Wesson Holding Corp. Sec. Litig.*, 669 F.3d 68, 77 (1st Cir. 2012); *In re Boston Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 757 (1st Cir. 2011); *Jasin v. Vivus, Inc.*, 2016 WL 1570164, *15 (N.D. Cal. Apr. 19, 2016), *aff'd* 721 F. App'x 665 (9th Cir. 2018).

1521492_1

**5.6    Plaintiffs' Objection to Defendants' Instruction No. 7**

Defendants' proposed instruction has no basis in the Model Instructions or Ninth Circuit authority, is unnecessary given the state of mind instruction (knowingly), and is a misstatement of the law.

By their own admission, Defendants' proposed Instruction No. 7 is one of five state of mind instructions ***in addition to*** the proposed instruction on acting "knowingly."   *See* Defendants' Proposed Instruction No. 3 ("Instructions 6-11 separately define 'knowingly.'").  But L.R. 51-2(c) requires that "[e]ach requested instruction shall . . . [n]ot repeat the principle of law contained in any other request." *See also Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (affirming rejection of instruction as cumulative where "the district court gave other instructions that enabled the jury to consider th[e] issue adequately").  Local Rule 51-2(c) and the guidance from the Ninth Circuit are designed to prevent the confusion and contradictions with addressing a single element that Defendants' six state of mind instructions create. Defendants' proposed instruction makes matters worse by conflating the separate elements of scienter and materiality, each of which would already be addressed in separate instructions.

Defendants' proposed Instruction No. 7 also misstates the law in multiple ways. Defendants' instruction implies that there are different levels or gradations of materiality.  There is no support for that notion in any statute or governing authority. A misstated or omitted fact is either important to a reasonable investor or it isn't.  *See* Model Instruction 18.3 (instructing jury to decide whether a misrepresentation or omission was material, not determine its degree of importance); *see also In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig*., 984 F. Supp. 2d 1021, 1032 (C.D. Cal. 2013) ("The ultimate questions at issue in this litigation will likewise be binary questions: whether the Defendants are liable for making material or fraudulent misrepresentations about the RMBS purchased by Plaintiffs.").  If the jury determines the statements or omissions were material, they will move on to scienter analysis – not

- 48 -

1    ranking how material the misstated or omitted information is.  And if the jury reaches
2    the element of scienter, then they have already determined that Plaintiffs have proven
3    materiality.  It is, inherently, no longer "questionable."  Indeed, by Defendants' own
4    reasoning it would be appropriate to instruct the jury that "if it is ***not questionable*** that
5    the misstated or omitted information was material, then it is ***more*** likely that
6    Defendant acted with the requisite intent."  It is hard to believe Defendants would
7    agree to that instruction.

8        Defendants' proposed instruction is also in conflict with Ninth Circuit (and
9    statutory) authority regarding the appropriate state of mind.  A defendant who makes a
10   statement with knowledge that it is untrue acts with scienter.  *Gebhart v. SEC*, 595
11   F.3d 1034, 1041 (9th Cir. 2010).  That can't change based on how material the
12   statement (or underlying misstated or omitted fact) may be.  The Defendant knows or
13   recklessly disregarded that the statement is false or he does not.  Tellingly, in their
14   proposed instruction Defendants replace "knowingly" with "requisite intent."  That is
15   because it is illogical that someone could know a fact but then be deemed not to have
16   acted knowingly because that fact was of "marginal materiality."

17       Defendants' proposed instruction has no support in any binding authority and is
18   nothing more than a quirk of First Circuit jurisprudence.  The Ninth Circuit has never
19   adopted or even referenced the notion of "marginal materiality."  Even in the First
20   Circuit, the notion of "marginal materiality" is generally limited to the pleading
21   context where there has been no factual finding on materiality and where the standard
22   for pleading scienter is higher than what is required to prove scienter at trial.  *See In re*
23   *Boston Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012); *City of Dearborn*
24   *Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 757 (1st Cir.
25   2011); *see also In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1017-18 (S.D.
26   Cal. 2011) ("a simple inference of scienter is sufficient to support a jury's verdict"
27   compared to the more stringent "'strong' inference of scienter" required of pleadings).
28   The lone district court case identified by Defendants, *Jasin v. Vivus, Inc.*, 2016 WL

- 49 -

1570164 (N.D. Cal. Apr. 19, 2016), quoted First Circuit authority on "marginal materiality" in *dicta*, but found that the plaintiff had not adequately ***plead*** materiality or the defendants' knowledge.   The *Jasin* court did not find that the allegedly misstated information was "marginally material," nor was its finding that the allegations of scienter were insufficient predicated on any notice of "marginal materiality."   *Id*. at *15.

The Court should decline to read this instruction and no alternative instruction is warranted.

### 5.7    Defendants' Instruction No. 8 (Oral Statements)

In determining whether Mr. Auerbach acted knowingly, you may consider the fact that oral statements may be less precise than written statements.

**Authority**:  *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings*, 679 F.3d 952, 956 (7th Cir. 2012).

1521492_1

1    **5.8     Plaintiffs' Objection to Defendants' Instruction No. 8**

2         Defendants' proposed instruction is a misstatement of the law and has no basis

3    in the Model Instructions, the federal securities laws, or Ninth Circuit authority.

4         Proposed Instruction No. 8 is purportedly one of Defendants' six instructions

5    regarding state of mind, but it is so irreparably vague that it is impossible to discern

6    whether it is intended to address a defendant's state of mind or the materiality of an

7    alleged false statement.  Either way, this is another proposed instruction that violates

8    L.R. 51-2(c)'s requirement that "[e]ach requested instruction shall . . . [n]ot repeat the

9    principle of law contained in any other request."  *See also Jones v. Williams*, 297 F.3d

10   930, 935 (9th Cir. 2002) (affirming rejection of instruction as cumulative where "the

11   district court gave other instructions that enabled the jury to consider th[e] issue

12   adequately").  Moreover, instructing the jury that it "***may*** consider the fact that oral

13   statements ***may*** be less precise than written statements" provides no meaningful

14   guidance, and would only lead to confusion.  *See United States v. Anderson*, 741 F.3d

15   938, 947 (9th Cir. 2013) ("A district court may properly reject a misleading or

16   confusing instruction.").

17        The proposed instruction also has no basis in any governing authority.  Section

18   10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated

19   thereunder, draw no distinction between written and oral statement.  The Supreme

20   Court has never drawn a distinction between oral and written statements in addressing

21   any element of a §10(b) claim (or any other claim under the Securities Exchange Act

22   of 1934).  Neither has the Ninth Circuit or any other Circuit Court.  Defendants' only

23   cited authority in support of their proposed instruction is *Plumbers & Pipefitters Local*

24   *Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (7th Cir. 2012).

25   But in noting that the statements at issue in that case were oral, the Seventh Circuit did

26

27

28

1   not hold or even suggest that the scienter (or materiality) standard for oral statements

2   was any different than it is for written statements.[5]

3       Finally, by suggesting that particular evidence has special significance,

4   Defendants' proposed instruction also clashes with Joint Closing Instruction No. 5 ("It

5   is for you to decide how much weight to give to any evidence.").  Given that the jury

6   is entrusted with considering *all* admissible evidence, it would be both improper and

7   unnecessary for the Court to draw jurors' attention to specific evidence deemed to be

8   favorable to one party versus the other.

9       The Court should decline to read this instruction and no alternative instruction

10   is warranted.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

[5]   The facts in *Zimmer* underlying the reference to oral statements are also easily

26   distinguishable.  In that case, the oral exchange occurred at an ordinary quarterly
earnings call where questions about FDA warning letters were not anticipated.  *See*

27   679 F.3d at 953, 955-56.  Here, in contrast, the alleged misstatements and omissions
came during a conference call that Defendants held specifically to discuss the

28   ExteNET trial results.

1

### 5.9     Defendants' Instruction No. 9 (Access to Information)

2       Evidence that any Defendant had access to information that was not disclosed to

3   investors is not enough to establish that he acted knowingly.  There must be evidence

4   as to each Defendant that he knew his statement was false or was deliberately reckless

5   as to the truth or falsity of the statement.

6

7       **Authority**:  *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 702 (9th

8   Cir. 2012); *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1093 (9th Cir.

9   2010); *Gebhart v. SEC*, 595 F.3d 1034, 1041-42 (9th Cir. 2010); *Goplen v. 51job,*

10  *Inc.*, 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.10   Plaintiffs' Objection to Defendants' Instruction No. 9

Defendants' proposed Instruction No. 9 is the third of Defendants' six separate state of mind instructions.  But, again, L.R. 51-2(c) requires that "[e]ach requested instruction shall . . . [n]ot repeat the principle of law contained in any other request." *See also Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (affirming rejection of instruction as cumulative where "the district court gave other instructions that enabled the jury to consider th[e] issue adequately").

Defendants' proposed instruction is also a misstatement of the law.  It has no basis in the Model Instructions or Ninth Circuit precedent.  As authority for the proposition that "access to information . . . is not enough to establish [Auerbach] acted knowingly," Defendants identify three Ninth Circuit cases and claim that the "language in Defendants' instruction is derived nearly verbatim from these authorities."  That is false.  None of the cases holds that access to information is not enough to establish a defendant acted with scienter.  The term "access to information" doesn't even appear in two of the cases, and in the third, *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1090 (9th Cir. 2010), it is only used in the context of explaining that the Securities Act of 1933 is intended to prevent "those possessing superior access to information" from "abusing their privileged position to foist unregistered securities on an unwitting public."  That is irrelevant in this case, which is brought under the Securities and Exchange Act of 1934, and it is counter to Defendants' proposed instruction to disregard access to information.  Defendants' other cited authority not only fails to support their position but directly contradicts it.  In *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 710 (9th Cir. 2012), the Ninth Circuit held that allegations the defendants were "hands-on managers" and "reviewed the internal flash reports" ***were*** sufficient to meet the Private Securities Litigation Reform Act of 1995's heightened standard for pleading scienter.  *Gebhart v. SEC*, 595 F.3d 1034, 1041-42 (9th Cir. 2010), has no discussion whatsoever about

- 55 -

1  access to information and the finding of scienter in that case turned on the defendants'

2  failure to undertake any investigation regarding the accuracy of their statements.[6]

3       To the extent any instruction on "access to information" is warranted, it would

4  be the opposite of what Defendants have proposed.  The Ninth Circuit has repeatedly

5  recognized that a defendant's access to information *is* evidence that he acted with

6  scienter (knowingly).  *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th

7  Cir. 2017) ("'particularized allegations that defendants had "***actual access to the***

8  ***disputed [internal sales] information***," . . . raise a strong inference of scienter'")

9  (citation omitted and emphasis added), *cert. dismissed sub nom. Quality Sys., Inc. v.*

10  *City of Miami Fire Fighters' & Police Officers' Ret. Tr.*, __ U.S. __, 2018 WL

11  575053 (Nov. 27, 2018); *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) ("'[b]y

12  making a detailed factual statement, contradicting important data ***to which she had***

13  ***access***, a strong inference arises that she knowingly misled the public'") (citation

14  omitted and emphasis added), *overruled on other grounds by City of Dearborn*

15  *Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir.

16  2017); *S. Ferry LP v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008) ("allegations

17  regarding management's role in a company . . . may independently satisfy the PSLRA

18  where they are particular ***and suggest that defendants had actual access to the***

19  ***disputed information***") (emphasis added).

20       Finally, Defendants' proposed instruction is based on an inaccurate factual

21  predicate.  Defendants claim their instruction is warranted because "plaintiff has

22  argued throughout this case that scienter is established by the mere fact that Mr.

23  Auerbach had access to information he did not disclose."  That's wrong.  This case is

24

---

25  [6]    The out-of-circuit district court opinion cited by Defendants, *Goplen v. 51job,*
26  *Inc.*, 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006), actually holds that access to
   information *is* sufficient to state a claim for securities fraud in the Second Circuit.  But
27  the plaintiffs in that case "fail[ed] to identify any documents, meetings, or reports that
   show that the defendants knew or should have known" their statements were
28  misleading.  *Id.* at 768-70

1   not about mere ***access*** to information.  Defendants actually knew the results of the

2   ExteNET trial that were misstated and omitted.  It is an ***admitted*** fact that:

3       On July 17, 2014, Alvin Wong e-mailed a document titled "Neratinib

4       Protocol 3144A2-WWTop-line Efficacy Analyses Part A (2 years + 28

5       days)" to Mr. Auerbach, Richard Phillips, Richard Bryce, and Claire

6       Sherman.  Among other data points, this document summarized top-line

7       efficacy results for Part A of the ExteNET trial, including that, for the

8       ITT population, the disease-free survival ("DFS") rate at the two-year

9       follow-up for patients treated with neratinib was 93.9%, compared to

10      91.6% for patients treated with placebo, and that at the two-year mark,

11      the absolute difference in disease free survival between the treatment

12      arm compared with placebo was 2.3%.

13  ECF No. 585-1 (Final Pre-trial Conference Order) at 2-3.  It is also an ***admitted*** fact

14  that:

15      On July 18, 2014, Alvin Wong e-mailed a document titled "3004

16      Executive Summary of safety 18JUL2014.pptx" and the top-line safety

17      tables to Mr. Auerbach, Richard Phillips, Richard Bryce, Claire

18      Sherman, Stephan Sagar, and Judith Bebchuk.  3004 Executive Summary

19      of safety 18JUL2014.pptx is a powerpoint summarizing information

20      from the top-line safety tables for the ITT population of the ExteNET

21      Trial.  The first slide of this PowerPoint is titled "Study 3004: Summary

22      of Safety Database Snapshot 7 July 2014," and that this summary

23      reported that the incidence of "grade ≥3" diarrhea in the treatment arm of

24      the ITT population was 39.9% (562 out of 1408 patients), with a median

25      duration of 2.0 days, and that 16.8% of patients in the treatment arm of

26      the ITT population (236 out of 1408 patients) discontinued treatment due

27      to diarrhea.  One of the top-line safety tables attached to Dr. Wong's July

28      18, 2014 email, titled "Clinical Investigation of Neratinib Protocol

1521492_1

1    PUMA-NER-3004, Brief Summary of Adverse Events, Safety

2    Population," identified that 389 out of 1408 patients in the treatment

3    group, or 27.6%, experienced adverse events leading to discontinuation

4    of treatment.

5  *Id.* at 3-4.  Defendants' suggestion that this case only concerns access to information

6  is incorrect.

7    The Court should decline to read this instruction and no alternative instruction

8  is warranted.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**5.11   Defendants' Instruction No. 10 (Lack of Insider Stock Sales)**

In determining whether Mr. Auerbach acted knowingly, you may consider the fact that he did not sell any of his own Puma stock during the class period.

**Authority**:  No. *84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 938 (9th Cir. 2003); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427-28 (9th Cir. 1994); *Feola v. Cameron*, 2015 WL 12644566, at *7 n.2 (C.D. Cal. Nov. 24, 2015); *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1141 (E.D. Wash. 2013), *aff'd*, 2017 WL 2241820 (9th Cir. May 22, 2017); *In re Acceptance Ins. Cos., Inc. Sec. Litig.*, 352 F. Supp. 2d 940, 961-62 (D. Neb. 2004); *Schuster v. Symmetricon, Inc.*, 2000 WL 33115909, *8 (N.D. Cal. Aug. 1, 2000).

1521492_1

### 5.12   Plaintiffs' Objection to Defendants' Instruction No. 10

Defendants' proposed Instruction No. 10 is yet another instruction regarding state of mind that violates L.R. 51-2(c)'s requirement that "[e]ach requested instruction shall . . . [n]ot repeat the principle of law contained in any other request." *See also Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (affirming rejection of instruction as cumulative where "the district court gave other instructions that enabled the jury to consider th[e] issue adequately").

The proposed instruction would also have the Court improperly instruct the jury on a "fact" that: (1) has not been stipulated to or admitted by the parties; and (2) has not been established as true as a matter of law, *e.g.*, judicially noticed.  To provide this instruction would therefore usurp the jury's function as fact finder.  *United States v. Stephens*, 486 F.2d 915, 917 (9th Cir. 1973) ("Judicial comments must be aimed at aiding the jury's fact finding duties, rather than usurping them.").

Moreover, by suggesting that particular evidence has special significance (or that there is other evidence the jury may ***not*** consider), this instruction clashes with Joint Closing Instruction No. 5 ("It is for you to decide how much weight to give to any evidence.").  The jury is entrusted with considering ***all*** admissible evidence, and it would be both improper and unnecessary for the Court to draw jurors' attention to specific evidence favorable to one side.

Defendants argue the Ninth Circuit has held that a lack of stock sales alone can rebut a finding of scienter.  That is not only incorrect, it is in direct contravention of Supreme Court and Ninth Circuit authority.  The Supreme Court has specifically held that even the complete absence of any motive allegation "is not dispositive" on the issue of scienter. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011).  That is consistent with the Ninth Circuit rule that "the lack of stock sales by a defendant is not dispositive as to scienter." *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992) (reversing summary judgment

- 60 -

1   on issue of scienter despite lack of insider sales where evidence showed defendants'

2   knowledge of product defect).

3        Defendants' proposed instruction has no basis in the Model Instructions, and the

4   cases cited by Defendants simply stand for the proposition that insider trading, or the

5   lack of it, is one of a multitude of facts that can be considered in assessing scienter.

6   But the fact that insider trading ***may*** be relevant to the state of mind inquiry does not

7   warrant a separate instruction.   If it did, then it would be equally appropriate to

8   provide numerous other instructions to the jury on factors ***supporting*** a finding of

9   scienter.   For example:

10   • In determining if Defendants acted knowingly, you may consider the fact that

11     Defendants sold $218.5 million of Puma shares in a stock offering during the

12     Class Period.   *See, e.g.*, *In re Portal Software, Inc. Sec. Litig.*, 2005 WL

13     1910923, at *12 (N.D. Cal. Aug. 10, 2005) ("plaintiffs' contention that

14     defendants were motivated to inflate artificially Portal's stock price in the short

15     term in order to conduct a successful secondary public offering and obtain

16     much-needed operating capital does allege facts of a palpable motive for

17     fraud"); ECF No. 76 at 19 (finding that Puma's public offering, *inter ali*a, was

18     sufficient to raise a strong inference of scienter).

19   • In determining if Defendants acted knowingly, you may consider the fact that,

20     but for the $218.5 million stock offering, Puma would have run out of money

21     by the end of 2015.   *See Oaktree Principal Fund V, LP v. Warburg Pincus*

22     *LLC*, 2017 WL 3187688, at *19 (C.D. Cal. Jan. 17, 2017) (finding that

23     defendants' misstatements that were "designed to deceive investors . . . and

24     avoid bankruptcy" raised a strong inference of scienter).

25   • In determining if defendant Auerbach acted knowingly, you may consider the

26     fact that he received compensation of $17.8 million during the Class Period

27     based on the announcement of the ExteNET results on July 22, 2014. *See, e.g.*,

28     *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007)

- 61 -

1    ("personal financial gain may weigh heavily in favor of a scienter inference");

2    *Am. W. Holding*, 320 F.3d at 944 ("a strong inference of scienter can be

3    inferred from [p]laintiffs' allegations . . . that [defendants] were motivated to

4    inflate America West's financial results and stock prices because their

5    eligibility for stock options and executive bonuses were based principally on

6    the company's financial performance"); ECF No. 154 at 8 (finding that

7    Plaintiffs' claims concerning Defendants' performance-based compensation

8    "serve to buttress . . . the already adequate allegations of scienter").

9    • In determining if Defendants acted knowingly, you may consider the fact that

10   Puma officers and employees sold over $200 million of company stock during

11   the Class Period. *See, e.g.*, *In re Adobe Sys., Inc. Sec. Litig.*, 787 F. Supp. 912,

12   917 n.5 (N.D. Cal. 1992) ("conspicuous sales of Adobe stock by Adobe

13   employees during the Class Period could possibly reinforce an inference of

14   scienter"), *aff'd sub nom. Cloutier v. Adobe Sys., Inc.*, 5 F.3d 535 (9th Cir.

15   1992).

16   • In determining if Auerbach acted knowingly, you may consider the fact that he

17   altered an official federal record and submitted it to the counsel for the

18   underwriter banks to secure a $218.5 million stock offering during the Class

19   Period. *See Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967, 971 (9th Cir.

20   2014) (reversing district court's decision to strike forgery allegations as

21   immaterial and finding that defendants' submission of forged bank statements

22   to auditor supported inference of scienter).

23   These are all facts the jury may consider in determining Defendants' state of

24   mind.  But, of course, the Court should not read any instructions that are biased to one

25   party over the others' version of the facts or suggest some facts are more important

26   than others.  *See United States v. Keyser*, 704 F.3d 631, 642 (9th Cir. 2012) ("'A trial

27   judge may refuse an instruction if its language gives undue emphasis to defendant's

28   version of the facts rather than being a statement of appropriate principles of [the] law

- 62 -

1   for the jury to apply to the facts, or if it would tend to influence the jury towards

2   accepting the defendant's version of the facts.'") (citation omitted); *Bird v. Lewis &*

3   *Clark Coll.*, 303 F.3d 1015, 1022 (9th Cir. 2002) (affirming rejection of

4   "argumentative and misleading" instructions).

5        The Court should decline to read this instruction and no alternative instruction

6   is warranted.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1521492_1

### 5.13   Defendants' Instruction No. 11 (Good Faith)

Because knowing conduct is an essential element of Plaintiffs' claims, Defendants cannot be found liable on the claims against them if they acted in good faith.  Defendants have no burden to establish a defense of good faith.  The burden is on Plaintiff to prove fraudulent intent or deliberate recklessness and a consequent lack of good faith by a preponderance of the evidence.

Even false representations of material fact do not amount to a fraud unless done knowingly.  However misleading a statement may be, it is not fraudulent if it was made in good faith.  A Defendant's honest belief that his statements were not misleading is a complete defense.  If you find that Defendants acted in good faith, you must find in favor of Defendants and against Plaintiff.

**Authority**: *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976); *Gebhart v. SEC*, 595 F.3d 1034, 1041-42 (9th Cir. 2010); *Kaplan v. Rose*, 49 F.3d 1363, 1380-81 (9th Cir. 1994); *SEC v. Strategic Global Invs., Inc.*, 262 F. Supp. 3d 1007, 1022 (S.D. Cal. 2017); Sand, Modern Federal Jury Instruction No. 82-8 (modified); Jury Charge, *SEC v. Moshayedi*, 12-CV-01179-JVS-AN (C.D. Cal. Jun. 6, 2014) (Dkt. No. 472, Instruction 27); *see* Jury Charge, *SEC v. Johnston*, No. 16-10607-NMG, Trial Tr. at 95-96 (D. Mass. Nov. 20, 2018) (Dkt. No. 226); Jury Charge, *SEC v. Tourre*, No. 10-CV-03229-KBF, at 22 (S.D.N.Y. July 31, 2013) (Dkt. No. 433-3); Jury Charge, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 05571 (RJH), Trial Tr. at 7516-17 (S.D.N.Y. Jan. 11, 2010) (Dkt. No. 1007); *see also United States v. Gross*, 961 F.2d 1097, 1103 (3d Cir. 1992).

1521492_1

1

## 5.14   Plaintiffs' Objection to Defendants' Instruction No. 11

2      Defendants' proposed "good faith" instruction directly contravenes Ninth

3   Circuit precedent and has been previously rejected by this Court.

4      Defendant Auerbach long ago abandoned his "good faith" affirmative defense

5   to control person liability.  *See* ECF 585-1, ¶7 (declining to assert any affirmative

6   defenses); ECF No. 221 at 4 (asserting that Auerbach is "no longer pursuing his

7   Control Person Defense"); ECF No. 548 at 15 ("Defendants abandon the following

8   affirmative defense: . . . No. 12 (good faith defense to control person liability as to

9   Alan Auerbach) . . . .).  Nevertheless, he now seeks this "good faith" instruction as a

10  ***negative*** defense to the securities fraud allegations against him.  But in the Ninth

11  Circuit, it is "well settled" that fraud defendants have "'no right' to ***any*** good faith

12  instruction when the jury has been adequately instructed with regard to the intent

13  required."  *United States v. Shipsey*, 363 F.3d 962, 967 (9th Cir. 2004) (emphasis in

14  original); *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995) ("jury

15  instructions that accurately reflect the intent required for the offense obviate the need

16  for a specific instruction on innocent states of mind"); *United States v. Dees*, 34 F.3d

17  838, 842 (9th Cir. 1994) (good faith instruction "unnecessary" in wire fraud trial);

18  *United States v. Green*, 745 F.2d 1205, 1209 (9th Cir. 1984) (mail fraud defendant

19  "not entitled" to good faith instruction).[7]

20  _____

21  [7]    The Ninth Circuit is remarkably consistent on this point, as demonstrated by an array of persuasive authority.  *See United States v. Flowers*, 735 F. App'x 451, 452

22  (9th Cir. 2018) ("Because the instructions correctly placed the burden of proof on the government, defined the elements of wire fraud, and correctly defined the required

23  specific intent element, a separate good faith instruction was not required."); *United States v. McCain*, 697 F. App'x 539, 540 (9th Cir. 2017) ("The district court did not

24  err in declining to give a good-faith jury instruction. . . .  The district court correctly instructed the jury as to specific intent, and nothing more was required on this

25  record."), *cert. denied*, ___ U.S. ___, 138 S. Ct. 1035 (2018); *United States v. Nguyen*, 671 F. App'x 537, 537 (9th Cir. 2016) ("Nguyen contends that the district court

26  should have given a particularized good faith instruction above and beyond the instruction on intent to defraud.  Her claim is foreclosed by this court's precedents."),

27  *cert. denied*, ___ U.S. ___, 137 S. Ct. 1604 (2017); *United States v. Tadios*, 650 F. App'x 394, 397 (9th Cir. 2016) ("Because the district court correctly defined intent, it

28  was not required to instruct the jury on good faith, and the failure to do so was not error."); *United States v. Southerland*, 209 F. App'x 656, 658 (9th Cir. 2006) ("The

1    The proposed "good faith" instruction is not only improper, it's unnecessary.

2  Both parties have submitted proposed instructions as to Defendants' state of mind.

3  *See* Plaintiffs' proposed Instruction No. 7; Defendants' proposed Instruction No. 6;

4  *see also* Model Instruction 18.5 (Knowingly).  Whatever state of mind instruction is

5  ultimately used, it alone can and will properly instruct the jury on the governing law

6  concerning Defendants' intent.  That would be in accordance with L.R. 51-2(c), which

7  requires that "[e]ach requested instruction shall . . . [n]ot repeat the principle of law

8  contained in any other request."  And, as discussed above, Ninth Circuit precedent

9  forecloses a separate "good faith" negative defense as repetitive and thus redundant.

10   With respect to proving state of mind, in the first paragraph of their proposed

11  instruction, Defendants also improperly substitute the term "fraudulent intent" for

12  "knowingly" (with no explanation of whether they are intended to be synonyms).

13  Worse, in addition to proving by a preponderance of the evidence that Defendants

14  acted knowingly, Defendants' proposed instruction imposes on Plaintiffs the

15  nonexistent burden of proving that there was "a consequent lack of good faith."  There

16  is no separate "good faith" element or any basis for the assertion that in addition to

17  proving a defendant acted knowingly, the plaintiff must also prove a lack of good

18  faith.  To the contrary, if Defendants acted knowingly, they necessarily did not act in

19  good faith.

20   In the face of overwhelming authority militating against their proposed

21  instruction, Defendants supply no controlling law whatsoever.  Defendants cite to

22  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976), *Gebhart v. SEC*, 595 F.3d

23  1034, 1041-42 (9th Cir. 2010), and *Kaplan v. Rose*, 49 F.3d 1363, 1380-81 (9th Cir.

24  1994), *overruled by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align*

25  *Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).  But those cases merely stand for the

26  _____

27  district court's decision not to submit a good faith instruction to the jury was justified
because the district court gave adequate instructions on specific intent as an element
28  of the offense.").

- 66 -

proposition that a defendant may offer certain evidence when attempting to negate scienter – not that "good faith" is a discrete element of 10b-5 claims mandating a separate jury instruction. That distinction is reflected in the Ninth Circuit's Model Instructions, which provide a pattern instruction on good faith as an affirmative defense to control person liability – a claim that Auerbach has abandoned – but do not provide any such language for good faith as a negative defense to scienter. *See* Model Instruction 18.11. The only other case cited by Defendants, *United States v. Gross*, 961 F.2d 1097 (3d Cir. 1992), actually holds that the "majority of circuits" – including the Ninth Circuit – believe that "the good faith defense instruction is merely surplusage" of an instruction on the element of intent. *Id.* at 1103 (joining the majority position). Defendants' remaining citations, primarily instructions from other district court cases, do not bind this Court and run counter to established Ninth Circuit law.

Consistent with Ninth Circuit case law, in a previous fraud trial, this Court correctly rejected a very similar instruction. *See United States v. Shults, et al.*, No. SACR 12-00090 AG, Order Denying Post Trial Motions (ECF No. 399) at 6 (C.D. Cal. Apr. 23, 2014) (reiterating that the Court was not required to read a "good faith" instruction and denying motion for new trial).[8] Just as it did in *Shults*, the Court should follow well-settled precedent and decline to provide the jury with Defendants' Proposed Instruction No. 11. No alternative instruction is warranted.

---

[8] The wire fraud defendant's rejected instruction in *Shults* read as follows:

Good faith is a complete defense to all counts of wire fraud because good faith is inconsistent with an intent to defraud. Good faith means a belief or opinion honestly held without an intent to mislead and is not punishable under the wire fraud statues because the belief or opinion turns out to be inaccurate, incorrect or wrong.

The defendant does not have the burden of proving she acted in good faith. The Government must prove beyond a reasonable doubt that the defendant acted with the intent to defraud and did not act in good faith.

*Shults*, No. 8:12-CR-00090, ECF No. 265 at 4.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# 6. RELIANCE

1521492_1

### 6.1 Plaintiffs' Instruction No. 6 (Securities – Fraud-on-the-Market Case)

The fraud-on-the-market presumption allows an injured investor to prove reliance without showing that Defendants' misstatements inspired the investor's decision to buy a particular security. The fraud-on-the-market presumption applies where (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed.

Before this trial began, the Court decided that elements (1), (3), and (4) have been established in Plaintiffs' favor. You should treat these elements as having been proven by a preponderance of the evidence. Therefore, the fraud-on-the-market presumption applies if Plaintiffs have proved by a preponderance of the evidence that Defendants made a material misrepresentation or omission.

Defendants can rebut the presumption of reliance as to Norfolk Pension Fund if they prove, by a preponderance of the evidence, that Norfolk Pension Fund did not rely on the integrity of the market when buying Puma Biotechnology, Inc. securities. Defendants must prove that Norfolk Pension Fund would have bought Puma stock at the same price, even if it had known that the stock price was tainted by fraud.

Defendants can rebut the presumption of reliance as to the Class if they prove, by a preponderance of the evidence, that the alleged misrepresentations or omissions did not affect the market price of Puma stock.

**Authority**: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Model Instruction 18.7 (modified as described below); Order re Motions for Summary Judgment (ECF No. 557) at 6-9; *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014); *Basic Inc. v. Levinson*, 485 U.S. 224, 248-49 (1988); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992); 7 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §22.61 (4th ed. 2002); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1265 (S.D. Cal. 2010).

### 6.2    Defendants' Instruction No. 12 (Presumption of Reliance: Fraud-on-the-Market)

Plaintiff does not have to prove that it justifiably relied on the alleged misrepresentations in deciding to purchase Puma stock if it meets the requirements for invoking a presumption that it relied on the integrity of the market price.  That presumption of reliance assumes that the price at which it purchased Puma stock reflected all publicly available information about the stock.   To invoke the presumption, Plaintiff must prove by a preponderance of the evidence that (1) the alleged misrepresentations were publicly known, (2) they were material, (3) Puma's stock traded in an efficient market, and (4) Plaintiff purchased Puma stock between when the alleged misrepresentations were made and when the truth was allegedly revealed.  Defendants do not dispute the first, third, or fourth elements.  You should therefore treat these elements as having been proven by a preponderance of the evidence.

Defendants have the right to rebut the presumption that Plaintiff relied on the integrity of the market price when purchasing Puma stock.  Accordingly, if you find that Plaintiff has proven all four elements for invoking the presumption, you must then consider whether Defendants have rebutted the presumption of reliance.  In general, to rebut the presumption of reliance, a defendant must show that there was no link between Defendants' alleged misrepresentations and Plaintiffs' decision to purchase Puma stock.  Defendants can rebut the presumption by proving by a preponderance of the evidence that (1) Plaintiff did not actually rely on the integrity of the market price when it purchased the Puma stock, or (2) the alleged misrepresentation did not affect the market price of Puma's stock.

**Authority**:   Manual of Model Civil Jury Instructions for the Ninth Circuit (2017), Model Instruction 18.7 (modified); *Halliburton v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2409 (2014); *Basic Inc. v. Levinson*, 485 U.S. 224, 245-49 (1988).

1521492_1

### 6.3    Defendants' Objection to Plaintiffs' Instruction No. 6

Defendants object to Plaintiff's Proposed Instruction 6 because it is an incomplete and misleading statement of the law, and respectfully request that the Court give Defendants' Proposed Instruction 12 instead.

Plaintiff's Proposed Instruction 6 is an incomplete statement of law because it suggests there are only two ways that Defendants may rebut the presumption of reliance.  The Supreme Court, however, has recognized a much broader set of circumstances under which the presumption may be rebutted: "*Any* showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."  *Basic*, 485 U.S. at 248 (emphasis added) (presumption rebutted where plaintiffs were aware of the "truth" of the alleged misstatements, or where plaintiffs believed the market price of the securities was not an accurate reflection of the true value of the securities); *see, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 183 F. Supp. 3d 458, 466 (S.D.N.Y. 2016) (finding that defendant rebutted the presumption because an institutional investor "was indifferent to the fraud").  Plaintiff's instruction would therefore unduly limit the range of permissible circumstances the jury could take into account in considering whether Defendants have rebutted the presumption of reliance. *See Anderson*, 741 F.3d at 947 (district court properly rejected "confusing instruction" that would be "misleading or inadequate to guide the jury's deliberation").  By contrast, Defendants' Proposed Instruction 12 highlights the two routes to rebuttal highlighted by Plaintiff, while also capturing the broader theoretical framework of *Basic*.  *See* Defendants' Proposed Instruction 12 ("In general, to rebut the presumption of reliance, a defendant must show that there was no link between Defendants' alleged misrepresentations and Plaintiff's decision to purchase Puma stock.  Defendants can rebut the presumption by proving by a preponderance of the evidence that (1) Plaintiff did not actually rely on the integrity of the market price when it purchased the Puma stock, or (2) the alleged

- 71 -

1    misrepresentation did not affect the market price of Puma's stock."). In addition,

2    paragraph three of Plaintiff's proposed instruction limits the possible circumstances

3    under which the jury could find that Plaintiff did not rely on the market price. *See*

4    Pl.'s Proposed Instruction No. 6 ("Defendants must prove that Norfolk Pension Fund

5    would have bought Puma stock at the same price, even if it had known that the stock

6    price was tainted by fraud."). While Plaintiff's cited cases outline possible avenues to

7    rebut the presumption of reliance, those cases do not purport to identify the *only*

8    means of rebuttal. *See, e.g.*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th

9    Cir. 1992) ("*one way* to rebut the fraud-on-the-market theory is to show that the

10   plaintiff would have bought his stock at the same price had he known the information

11   that was not disclosed or misrepresented") (emphasis added). For example,

12   Defendants could also rebut the presumption of reliance if they prove that Plaintiff

13   traded in Puma's securities based on a belief that the market price was inaccurate or

14   that Plaintiff's decision to trade was based on some factor other than the market price.

15   *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 179 n.7 (3d Cir. 2000). Plaintiff's

16   proposed instruction, however, improperly limits the circumstances that would suffice

17   to rebut the presumption.

18        Defendants further object to the third paragraph of Plaintiff's proposed

19   instruction which incorrectly states that rebutting the presumption of reliance as to the

20   Lead Plaintiff would not rebut the presumption of reliance as to the class. But the

21   authorities on which Plaintiff relies for this proposition – a past edition of *Newberg on*

22   *Class Actions* and dicta in *In re REMEC Inc. Securities Litigation*, 702 F. Supp. 2d

23   1202, 1265 (S.D. Cal. 2010) – do not support this position. Neither authority supports

24   Plaintiff's assumption that the class is automatically entitled to proceed where, as

25   here, rebutting the presumption as to the lead plaintiff would call into question the

26   viability of the class and the reach of liability. *See REMEC*, 702 F. Supp. 2d at 1265

27   (involving class representative, not lead plaintiff). Indeed, Plaintiff points to no

28   authority (and there is none) supporting the conclusion that a jury may find liability on

- 72 -

1  behalf of absent class members who are not actively pursuing claims when the Lead

2  Plaintiff designated to pursue those claims has not met an essential element of its own

3  claims.  Where rebutting the presumption of reliance as to the named representative

4  undermines typicality, adequacy, predominance, or other Rule 23 standards,

5  maintenance of the class would be inappropriate and the Court would be justified in

6  decertifying the class.  *Wang v. Chinese Daily News*, 737 F.3d 538, 546 (9th Cir.

7  2013) ("Rule 23 provides district courts with broad authority at various stages in the

8  litigation to revisit class certification determinations and to redefine or decertify

9  classes as appropriate."); *Sanchez v. New York Kimchi Catering, Corp.*, 2018 WL

10  2383145, at *4 (S.D.N.Y. May 24, 2018) ("Even in the absence of a motion to

11  decertify, 'a district court may – and should – decertify a class when the standards of

12  Rule 23 have not been met.'"); *see also, e.g.*, *In re Safeguard Scientifics*, 216 F.R.D.

13  577, 582 (E.D. Pa. 2003) (finding "compelling reason to rebut the reliance

14  presumption" with respect to the lead plaintiff, and denying class certification).

15      Accordingly, Defendants respectfully request that the Court reject Plaintiff's

16  Proposed Instruction 6.

17

18

19

20

21

22

23

24

25

26

27

28

1521492_1

### 6.4 Plaintiffs' Objection to Defendants' Instruction No. 12

The parties agree that a departure from Model Instruction 18.7 regarding the fraud-on-the-market doctrine is warranted given the Court's Order re Summary Judgment. And while the parties' proposed instructions (Plaintiffs' proposed Instruction No. 6 and Defendants' proposed Instruction No. 12) are similar, certain of the language in Defendants' proposed instruction is incomplete or misstates the law.

With respect to the first paragraph of Defendants' proposed instruction, regarding Plaintiffs' burden to prove that the fraud-on-the-market presumption of reliance applies, there is no dispute as to the standard. But Plaintiffs' proposed instruction more precisely instructs the jury that the "presumption applies if Plaintiffs have proved by a preponderance of the evidence that Defendants made a material misrepresentation or omission." *See* Plaintiffs' proposed Instruction No. 6.

With respect to the second paragraph of Defendants' proposed instruction, regarding Defendants burden to rebut the presumption of reliance, Defendants' instruction misstates the law. Specifically, Defendants' proposed instruction assumes that rebutting the presumption as to the individual plaintiff (Norfolk Pension Fund) would rebut the presumption of reliance as to all Class members. That is wrong. *See* 7 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §22.61 (4th ed. 2002) ("[A] rebuttal of reliance by a particular class member must necessarily be on an individual basis because there can be no class presumption of nonreliance.") (citing *Arthur Young & Co. v. United States Dist. Ct.*, 549 F.2d 686, 693-95 & n.10 (9th Cir. 1977)); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1265 (S.D. Cal. 2010) ("Even if Defendants establish that Sitton cannot recover because he continued to purchase stock after reading a complaint alleging securities fraud, *the class* may still use the presumption to establish reliance.") (emphasis in original). Indeed, Defendants previously acknowledged this important distinction between rebutting reliance as to the Class versus an individual plaintiff. *See* ECF No. 548 at 9 (Defendants' Memorandum of Contentions of Fact and Law).

- 74 -

1    Defendants' description of what they must prove to rebut the presumption –

2    ("(1) Plaintiff did not actually rely on the integrity of the market price when it

3    purchased the Puma stock, or (2) the alleged misrepresentation did not affect the

4    market price of Puma's stock") – is drawn from Model Instruction 18.7.  But it does

5    not provide the jury with a clear description of what it means to "not actually rely on

6    the integrity of the market price."  To avoid confusion, Plaintiffs' instruction adds that

7    "Defendants must prove that Norfolk Pension Fund would have bought Puma stock at

8    the same price, even if it had known that the stock price was tainted by fraud."  *See*

9    Plaintiffs' proposed Instruction No. 6.   That language is drawn directly from

10   *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), which both parties

11   agree is the appropriate authority.  In *Halliburton*, the Supreme Court held that if a

12   defendant proves "a plaintiff would have bought or sold the stock even had he been

13   aware that the stock's price was tainted by fraud, then the presumption of reliance

14   would not apply").  *Id.* at 269; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497,

15   507 (9th Cir. 1992) ("one way to rebut the fraud-on-the-market theory is to show that

16   the plaintiff would have bought his stock at the same price had he known the

17   information that was not disclosed or misrepresented").[9]

18   The Court should therefore decline to read this instruction, and instead provide

19   the jury with Plaintiffs' proposed Instruction No. 6 (Securities – Fraud-on-the-

20   Market).

21

22

23

24

25

26   ---
[9]   With respect to rebutting the presumption of reliance for the Class, the parties

27   both adhere to the language from Model Instruction 18.7, with the exception being
     that Defendants have improperly removed the reference to omissions.  As discussed

28   above in response to Defendants' proposed Instruction No. 3, that is improper.

1521492_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**6.5     Defendants' Instruction No. 13 (Delegation to Investment Advisor)**

Plaintiff may delegate the authority and discretion to execute purchases of Puma securities to an investment advisor.  Plaintiff may also rely on the judgment of its investment advisor to make investment decisions.

If you find that Plaintiff delegated authority to an investment advisor and/or relied on its investment advisor to make decisions about the purchase or sale of Puma securities, you should treat such investment decisions as if they were made directly by Plaintiff.  You should also construe Plaintiff as having the same knowledge as the investment advisor regarding its investment concerning the purchase or sale of Puma securities.

**Authority**:  *Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15 Civ. 2106 (ER), 2018 WL 2958361, at *4 (S.D.N.Y. June 12, 2018); *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 119-27 (D.D.C. 2017); *In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, Nos. 2:08-md-1919 MJP, C08-387 MJP, 2010 WL 4272567, at *4 (W.D. Wash. Oct. 12, 2010).

1521492_1

### 6.6    Plaintiffs' Objection to Defendants' Instruction No. 13

Defendants' proposed instruction has no basis in Ninth Circuit (or any Circuit Court) authority or the Model Instructions.  It is a misstatement of law and is premised on an inaccurate factual predicate.

Defendants' proposed Instruction No. 13 is wholly based on a single, out-of-Circuit district court opinion, *Villella v. Chem. & Mining Co. of Chile Inc.*, 2018 WL 2958361 (S.D.N.Y. June 13, 2018).  But that case involved a discovery dispute (whether to issue a Letter of Request pursuant to the Hague Convention) and the court simply noted that "courts ***may*** look to a non-party investment adviser's knowledge in determining reliance." *Id.* at *4.  But that does not mean, as Defendants argue and want instructed, that the jury is tasked with making a finding of whether or not Plaintiffs delegated authority to an investment authority and must construe Plaintiffs have "the same knowledge as the investment advisor."  Indeed, the only case from within the Ninth Circuit cited by Defendants, *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 2010 WL 4272567 (W.D. Wash. Oct. 12, 2010), does not hold that a plaintiff has the same knowledge as its investment advisor.  Rather, it simply notes that the court would "look to" the advisor's "knowledge and actions" in assessing the plaintiff's stock transactions for purposes of class certification.  *Id.* at *4.[10]

Defendants' instruction also suffers from a factual flaw.  It inherently assumes that Plaintiff only has a single investment advisor.  But, as Defendants are aware, Plaintiffs' Class Period purchases of Puma stock were made by multiple advisors at the pension fund's investment firm, Capital International.   And, according to testimony from certain of those individuals, different advisors would have had access

---

[10]    The only other case cited by Defendants, *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103 (D.D.C. 2017), also provides no support for Defendants' proposed instruction.  None of the language in Defendants' proposed instruction comes from *Howard* and the case does ***not*** hold or stand for the proposition that all knowledge and decisions of a plaintiff's investment advisor should be construed to the plaintiff.  *See id.*

1521492_1

1    to different information and would have not necessarily have relied on the same bases

2    in making decisions to buy or sell Puma stock.  Defendants' proposed instruction

3    misstates these facts and would mislead or confuse the jury.

4          The Court should decline to read this instruction and no alternative is

5    warranted.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1521492_1

1
2
3
4
5
6
7
8
9
10
11
12

# 7. CAUSATION

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1521492_1

### 7.1  Plaintiffs' Instruction No. 7 (Securities – Causation)

Plaintiffs must prove by a preponderance of the evidence that the alleged material misrepresentations or omissions were the cause of their economic injury.  To establish causation, Plaintiffs must prove that the alleged misrepresentations or omissions played a substantial part in causing the injury or loss Plaintiffs suffered. Plaintiffs need not prove that the alleged misrepresentations or omissions were the sole cause of the economic injuries.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Model Instruction 18.8 (unmodified); Scheduling Order Specifying Procedures (ECF No. 85) at 4;  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005); *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018); CACI No. 430 – Causation: Substantial Factor, Judicial Council of California Civil Jury Instructions (2018 ed.).

1521492_1

### 7.2 Defendants' Instruction No. 14 (Causation)

Plaintiff must prove by a preponderance of the evidence that the alleged material misrepresentations were the cause of its economic injury. To establish causation, Plaintiff must prove that the alleged misrepresentations were a substantial factor in causing Puma's stock price declines on each of May 14, 2015, June 1, 2015, and June 2, 2015. Plaintiff need not prove that the alleged misrepresentations were the sole cause of its economic injuries.

There may be factors other than the alleged misrepresentations that caused Puma's stock price to decline on any given day. For example, changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, taken separately or together, could have affected Puma's stock price. Defendants are not liable for any share price decline attributable to these other contributing factors.

**Authority**: Manual of Model Civil Jury Instructions for the Ninth Circuit (2017), Model Instruction 18.8 (modified); *see also* 15 U.S.C. § 78u-4(b)(4); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005); *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753-54 (9th Cir. 2018) (per curiam); *Nuveen Mun. High Income Opp. v. City of Alameda*, 730 F.3d 111,120 (9th Cir. 2013); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010); Jury Charge, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV-UNGARO (S.D. Fla. 2010) (Dkt. No. 631) at 23-24.

1521492_1

### 7.3    Defendants' Objection to Plaintiffs' Instruction No. 7

Defendants object to Plaintiff's Proposed Instruction 7 and respectfully request that the Court give Defendants' Proposed Instructions 14 and 15 instead.  While Plaintiff's Proposed Instruction 7 tracks the Ninth Circuit's model instruction, Defendants' Proposed Instructions 14 and 15 offer a more complete and accurate description of current law regarding what is required to prove loss causation, and are tailored to the facts of this case.

First, Plaintiff's Proposed Instruction 7 does not explain that the causation requirement can only be satisfied with proof that the asserted misrepresentations—as opposed to unrelated, non-fraudulent factors—caused Plaintiff's alleged economic loss.  By contrast, Defendants' Proposed Instruction 14 quotes directly from the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) to identify the various factors that can affect a company's stock price without causing Plaintiff's losses. *Id.* at 343 (noting that the "tangle of factors affecting price" include "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events").  By omitting reference to these factors, Plaintiff's proposed instruction prevents the jury from understanding the many variables that may impact the market that have nothing to do with the asserted misrepresentations.

Second, Defendants object to the reference to "omissions" in Plaintiff's Proposed Instruction 7.  Although this language appears in the model instruction, it has no application here.  Plaintiff has conceded that its claims concern purportedly false or misleading statements, not omissions.  Dkt. No. 443 at 13 ("And four, most important, this isn't a case about omissions.").  As discussed above, the inclusion of language regarding omissions therefore fails to provide any relevant or useful information, and risks confusing and misleading the jury. *See Anderson*, 741 F.3d at 947 (district court properly rejected "confusing instruction" that would be "misleading or inadequate to guide the jury's deliberation").

- 82 -

1    Accordingly, Defendants respectfully request that the Court reject Plaintiff's

2    Proposed Instruction 7.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1521492_1

### 7.4 Plaintiffs' Objection to Defendants' Instruction No. 14

Defendants' proposed instruction deviates from Model Instruction 18.8, improperly assumes facts, and conflates the causation and damages elements.

Although the first paragraph of Defendants' proposed Instruction No. 14 is roughly based on Model Instruction 18.8, Defendants removed all references to omissions. As discussed above in response to Defendants' proposed Instruction No. 3, this case involves omissions of material fact. Accordingly, any causation instruction must include language regarding omissions.

Defendants also changed the Model Instruction language from "Plaintiffs must prove that the alleged misrepresentations or omissions played a substantial part in causing the injury or loss Plaintiffs suffered" to "Plaintiff must prove that the alleged misrepresentations were a substantial factor in causing Puma's stock price declines on each of May 14, 2015, June 1, 2015, and June 2, 2015." Defendants argue that this change is necessary to reflect the facts of this case. But there is nothing inaccurate or confusing about the language of the Model Instruction (or Plaintiffs' proposed Instruction No. 7, which tracks the Model Instruction without any changes). Moreover, Defendants' proposed language is *not* consistent with the facts of the case. First, the burden on Plaintiff is to prove that the disclosures were a substantial cause of the *Puma-specific* stock price declines (the residual return). Second, Plaintiffs' burden is to show that the June 1, 2015 disclosure was a substantial cause of the *Puma-specific* stock price decline on June 1-2, 2015, not June 1 and June 2, 2015 separately.

The second paragraph of Defendants' proposed Instruction No. 14 has no basis in any Model Instruction. The addition is not needed to correct any error in the Model Instruction or supplement the Model Instruction to reflect any change in the law. Rather, Defendants have recast the correct statement of the law in the Model Instruction (and Plaintiffs' proposed Instruction No. 7), but placed an emphasis on the notion that there are factors, other than the alleged fraud, that caused the Puma-

- 84 -

specific stock price declines at issue.  But it is already clear in Model Instruction 18.8 that Plaintiffs have the burden of proving that it was the alleged misrepresentations and omissions, as opposed to something else, that was a substantial cause of their losses.  The proposed inclusion of "examples" of what could be other causes of a stock price decline, drawn from *dicta* in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005), is unnecessary and improperly lends weight to Defendants' argument that Plaintiffs' losses were substantially caused by something other than the alleged misrepresentations and omissions.  *United States v. Keyser*, 704 F.3d 631, 642 (9th Cir. 2012) ("'A trial judge may refuse an instruction if its language gives undue emphasis to defendant's version of the facts rather than being a statement of appropriate principles of [the] law for the jury to apply to the facts, or if it would tend to influence the jury towards accepting the defendant's version of the facts.'") (citation omitted).  The proposed examples are particularly inappropriate in this case because Defendants' own expert on loss causation did not identify ***any*** non-fraud factor that he concluded caused any (let alone a substantial part) of the Puma-specific stock price declines on May 14, 2015 or June 1-2, 2015.

The last sentence of Defendants' proposed instruction – "Defendants are not liable for any share price decline attributable to these other contributing factors" – again presupposes that there are other "contributing factors" to Plaintiffs' losses.  Moreover, it is not an accurate statement of the law regarding causation.  The causation analysis does not turn on what losses Defendants are liable for, that is damages.  *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) ("'[A]s long as the misrepresentation is one substantial cause of the investment's decline in value, other contributing forces will not bar recovery under the loss causation requirement' but will play a role 'in determining recoverable damages.'") (citation omitted).  It is simply a question of whether the alleged misrepresentations and omissions were a substantial cause of the company-specific stock price declines.  In fact, despite suggesting that their proposed language is drawn from statutory and Ninth Circuit

- 85 -

1   authority, the final sentence of Defendants' proposed instruction is based entirely on a

2   non-binding, out-of-Circuit jury charge.   *See* Jury Charge, *In re BankAtlantic*

3   *Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV-UNGARO, ECF No. 631 at 23-24 (S.D.

4   Fla. 2010).   And, even then, that language was in a *BankAtlantic* instruction on

5   ***damages***, not causation.   *See id.*

6        The Court should decline to read this instruction, and instead provide the jury

7   with Plaintiffs' proposed Instruction No. 7 (Securities – Causation), which is identical

8   to Model Instruction 18.8.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 86 -

1    **7.5    Defendants' Instruction No. 15 (Corrective Disclosures)**

2        A re-characterization of previously disclosed facts is not "corrective" for

3  purposes of establishing causation.

4

5        **Authority**:  *In re Bofi Holding, Inc. Sec. Litig.*, 302 F. Supp. 3d 1128, 1135

6  (S.D. Cal. 2018); *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse*

7  *First Boston*, 853 F. Supp. 2d 181, 193 (D. Mass. 2012); *In re REMEC Inc. Sec. Litig.*,

8  702 F. Supp. 2d 1202, 1266-67 (S.D. Cal. 2010); *In re Omnicom Grp., Inc. Sec. Litig.*,

9  541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008), *aff'd* 597 F.3d 501 (2d Cir. 2010).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1521492_1

### 7.6    Plaintiffs' Objection to Defendants' Instruction No. 15

Defendants' proposed Instruction No. 15 has no basis in the Model Instructions or any Ninth Circuit authority.  Moreover, it is redundant of both proposed causation instructions, and thus violates the local rules.  *See* L.R. 51-2(c) ("Each requested instruction shall . . . [n]ot repeat the principle of law contained in any other request."); *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (affirming rejection of instruction as cumulative where "the district court gave other instructions that enabled the jury to consider th[e] issue adequately").

Defendants argue that their proposed instruction would augment the Model Instruction by providing an example of what would ***not*** be a corrective disclosure.  First, as discussed above with respect to Defendants' proposed Instruction No. 14, there is no basis for providing piecemeal examples of what would or would not be evidence of causation.  Doing so would improperly place emphasis on some evidence versus others and clash with Joint Closing Instruction No. 5 ("It is for you to decide how much weight to give to any evidence.").

Second, while Defendants propose to offer an example of what would not be a "corrective disclosure," other than in this proposed instruction, the term "corrective disclosure" is not used anywhere in the Model Instructions or either parties' proposed instructions.  Thus, Defendants' example is unnecessary and inevitably confusing.

Third, Defendants provide no explanation for what a "re-characterization" is or how a jury would determine whether or not any information was re-characterized.  Particularly in light of the fact that Defendants have admitted that none of the ExteNET trial results at issue – the DFS rates, Grade 3+ diarrhea rate, Kaplan-Meier curves, or the adverse event discontinuation rate – were disclosed prior to May 13, 2015 or June 1, 2015, an instruction on the "re-characterization of previously disclosed facts" is unnecessary and improper.

Fourth, Defendants' proposed instruction has no basis in Ninth Circuit authority.  Defendants cite to a small number of district court opinions in support of

- 88 -

1   their proposed instruction.  But only one of those cases, *In re Omnicom Grp., Inc. Sec.*

2   *Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010),

3   even discussed the "re-characterization" of a previously disclosed fact, and there it

4   was because the plaintiffs conceded that no new facts regarding the alleged

5   misrepresentations were disclosed on days with stock price declines.  The Ninth

6   Circuit has never held that a re-characterization of previously disclosed facts cannot

7   be corrective or establish causation.  To the contrary, the Ninth Circuit recognizes that

8   "'[b]ecause loss causation is . . . the ultimate issue is whether the defendants'

9   misstatement, as opposed to some other fact, foreseeably cause the plaintiff's loss.'"

10   *Mineworker Pension Scheme v. First Solar, Inc.*, 881 F.3d 750, 753 (9th Cir. 2018).

11   The Court should decline to read this instruction and no alternative is

12   warranted.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1521492_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# 8. DAMAGES

1521492_1

### 8.1 Plaintiffs' Instruction No. 8 (Securities – Damages)

If you find for Plaintiffs on the 10b-5 claim, then you must consider and decide the amount of money damages per share to be awarded to the Plaintiffs.  You may award only actual damages in an amount that will reasonably and fairly compensate Plaintiffs for the economic loss they sustained.  Actual damages are measured by the artificial inflation per share that was caused by Defendants' misrepresentations or omissions.

Plaintiffs have the burden of proving damages by a preponderance of the evidence.  Your award must be based on evidence and not upon speculation, guesswork, or conjecture.  Damages need not be proven with mathematical certainty but there must be enough evidence for you to make a reasonable estimate of damages.

1521492_1

## 8.2    Defendants' Instruction No. 16 (Damages)

If you find that Plaintiff has not proved all of the elements of its claim against Defendants, then you should not consider the question of damages.  If you find for Plaintiff, then you must consider and decide the specific amount of inflation per share of Puma stock caused by the misrepresentations for which Plaintiff has proven a violation of §10(b).

You may award only actual damages in the specific amount of inflation per share of Puma stock caused by the misrepresentations on which Plaintiff has prevailed.  Your determination must be based on evidence and not upon speculation, guesswork or conjecture.   You should assess the monetary amount that a preponderance of the evidence justifies as the impact of those misrepresentations on Puma's stock price – no more, no less.  You should also consider any contributing factors, which taken separately or together, account for some or all of the declines in Puma's stock price.  You must not select an amount designed to punish or penalize Defendants.  Plaintiff has the burden of proving damages by a preponderance of the evidence.  Plaintiff also bears the burden of disaggregating (or separating out) any share price declines that were caused by other contributing factors from the portion of the share price declines that were caused by the alleged misrepresentations.

**Authority**:  Manual of Model Civil Jury Instructions for the Ninth Circuit (2017), Model Instruction 18.9 (modified); *see also* Manual of Model Civil Jury Instructions for the Eleventh Circuit (2013), Model Instruction 5.13 (modified).

1521492_1

### 8.3    Defendants' Objection to Plaintiffs' Instruction No. 8

Defendants object to Plaintiff's Proposed Instruction 8 because it is an incomplete and misleading statement of the law, and respectfully request that the Court give Defendants' Proposed Instruction 16 instead.

Defendants object to Plaintiff's Proposed Instruction 8 because the instruction fails to explain that damages must be based on losses directly attributed to the misrepresentations that Plaintiff has proved by a preponderance of the evidence, as Defendants' Proposed Instruction 16 makes clear.  Absent this explanation, the jury may mistakenly believe that the *entirety* of the drop in price of Plaintiff's stock should be used to calculate damages, rather than only those losses (if any) that Plaintiff has proven are attributable to misrepresentations.  *See* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Comment to Model Instruction 18.9 (noting that recovery for Section 10(b) claims is limited to "actual damages") (citing 15 U.S.C. § 78bb(a)); *see also Dura Pharms.*, 544 U.S. at 345 (stating that the securities laws are not meant to "provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations *actually cause*") (emphasis added).

Defendants' Proposed Instruction 16 addresses this deficiency in two primary ways.  First, Defendants' instruction makes clear that the jury may only award a monetary amount that represents the impact of the misrepresentations on Puma's stock price.  Defs.' Proposed Instruction No. 16 ("You should assess the monetary amount that a preponderance of the evidence justifies as the impact of those misrepresentations on Puma's stock price—no more, no less").  Second, Defendants' instruction makes clear that actual damages cannot include punitive damages.  *Id.* ("You must not select an amount designed to punish or penalize Defendants.").  Taken together, this language helps ensure the jury awards damages based on the misrepresentations themselves, rather than on irrelevant, or improper, factors.

1521492_1

1    Plaintiff's proposed instruction also fails to make clear that under *Dura*
2 *Pharmaceuticals*, 544 U.S. at 342–43, 345, Plaintiff bears the burden of
3 disaggregating any share price declines not caused by the alleged misrepresentations.
4 Defendants address this gap in their Proposed Instruction 16 by adding a sentence
5 clarifying the requirement: "Plaintiff also bears the burden of disaggregating (or
6 separating out) any share price declines that were caused by other contributing factors
7 from the portion of the share price declines that were caused by the alleged
8 misrepresentations." Defs.' Proposed Instruction No. 16. This addition is critical to
9 ensuring that the jury awards damages only for "economic losses that
10 misrepresentations *actually cause*." *Dura Pharms.*, 544 U.S. at 345 (emphasis added);
11 *see* 15 U.S.C. § 78bb(a)(1) (limiting recovery in any private damages action brought
12 under the Exchange Act to "actual damages to [the plaintiff] on account of the act
13 complained of").

14    Accordingly, Defendants respectfully request that the Court reject Plaintiff's
15 Proposed Instruction 8.

16

17

18

19

20

21

22

23

24

25

26

27

28

1521492_1

**8.4     Plaintiffs' Objection to Defendants' Instruction No. 16**

Defendants assert that their proposed Instruction No. 16 is based on Model Instruction 18.9.  That is not correct.  With the exception of a few snippets of words, Defendants' instruction has no basis in the Model Instruction.  Defendants have not identified any Ninth Circuit authority for their proposed departure from the Model Instruction, and the instruction is a misstatement of the law.

The first sentence of Model Instruction 18.9 (and Plaintiffs' proposed Instruction No. 8) states: "If you find for the plaintiff on the 10b-5 claim, then you must consider and decide the amount of money damages [per share] to be awarded to the plaintiff."  There is no dispute that this is an accurate statement of the law.  Nevertheless, Defendants' proposed instruction would replace that clear and concise language with "[i]f you find for Plaintiff . . . , then you must consider and decide the specific amount of inflation per share of Puma stock caused by the misrepresentations for which Plaintiff has proven a violation of Section 10(b)."  Defendants claim this verbiage is warranted because the Model Instruction and Plaintiffs' instruction do not define the term "money damages."  But the Model Instruction does provide that the jury "may award only actual damages in [an] amount which will reasonably and fairly compensate the plaintiff for the economic loss it sustained" and Plaintiffs' proposed Instruction No. 8 adds that "[a]ctual damages are measured by the artificial inflation per share that was caused by Defendants' misrepresentations or omissions."  That comports with Ninth Circuit law.  *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) ("out of pocket loss is the ordinary standard in a 10b-5 suit"); *see also Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012) ("a securities fraud action attempts to make a plaintiff whole by allowing him to recover his out-of-pocket damages, that is, the difference between what he paid for a security and the uninflated price").

Defendants also unnecessarily add to the first paragraph of their proposed instruction the sentence "[i]f you find that Plaintiff has not proved all of the elements

- 95 -

1   of its claim against Defendants, then you should not consider the question of
2   damages." But the Model Instruction, as well as the start of Defendants' second
3   sentence, already provides that damages are only considered "[i]f you find for the
4   plaintiff" on the 10b-5 claim. Defendants provide no basis for this redundant and
5   unnecessary addition to the language in the Model Instruction.

6       The second paragraph of Defendants' proposed instruction is also flawed. The
7   first two sentences of the second paragraph replace language from the Model
8   Instruction without any basis. For example, Defendants replace "amount which will
9   reasonably and fairly compensate Plaintiffs for the economic loss they sustained" with
10  "the specific amount of inflation per share of Puma stock caused by the
11  misrepresentations." But the Model Instruction language accurately identifies how
12  damages are calculated. Defendants argue that their alterations and additions are
13  consistent with the Eleventh Circuit Pattern Jury Instructions.[11] But, similar and
14  consistent with Model Instruction 18.9, the Eleventh Circuit pattern instruction states
15  that the jury shall award "***full and reasonable compensation*** for all of plaintiff's
16  damages." *See* Eleventh Circuit Civil Pattern Jury Instruction 6.2 (2018). Defendants
17  omit this language from their proposed instruction.

18      Based on the Eleventh Circuit Pattern Jury Instructions, Defendants also
19  propose to add the sentence "[y]ou must not select an amount designed to punish or
20  penalize Defendants." But this is superfluous as Model Instruction 18.9 and
21  Plaintiffs' proposed Instruction No. 8 already state that the jury can only award actual
22  damages.

23      The final sentence of Defendants' proposed instruction states that "Plaintiff also
24  bears the burden of disaggregating (or separating out) any share price declines that
25  were caused by other contributing factors from the portion of the share price declines

---

26  [11]   In their cited authority, Defendants identify Manual of Model Civil Jury
27  Instructions for the Eleventh Circuit (2013), Model Instruction 5.13. But there is no
    2013 Model Instruction 5.13. Plaintiffs assume Defendants intended to cite to
28  Eleventh Circuit Pattern Civil Jury Instruction 6.2, which does address 10b-5 claims.

- 96 -

1   that were caused by the alleged misrepresentations." As with Defendants' proposed

2   Instruction No. 14, this instruction improperly presumes that there are "contributing

3   factors" that caused Plaintiffs' losses, and that Plaintiffs have a separate burden to

4   undertake a disaggregation of those factors.  But there is no basis to presuppose any

5   such "other factors" caused the relevant stock price declines (Defendants' own expert

6   did not identify any). Plaintiffs' burden is to prove the damages caused by the alleged

7   misrepresentations and omissions.

8        Last, as with Defendants' other proposed instructions, their damages instruction

9   improperly excludes any reference to omissions.  This case involves alleged

10  omissions, and the instruction on damages must include that the jury is to award the

11  damages caused by the Defendants' misrepresentations or omissions.

12       The Court should decline to read Defendants' proposed instruction, and instead

13  provide the jury with Plaintiffs' proposed Instruction No. 8 (Damages), which closely

14  follows Ninth Circuit Model Instruction 18.9.

15  DATED:  January 14, 2019       ROBBINS GELLER RUDMAN

16                                                                     & DOWD LLP

17                                       PATRICK J. COUGHLIN

18                                       TOR GRONBORG

19                                       JASON A. FORGE

20                                       TRIG R. SMITH

21                                       SUSANNAH R. CONN

                                     J. MARCO JANOSKI GRAY

22                                       DEBASHISH BAKSHI

                                     TING H. LIU

23                                       s/ TOR GRONBORG

24                                       TOR GRONBORG

25                                       655 West Broadway, Suite 1900

                                     San Diego, CA  92101

26                                       Telephone:  619/231-1058

27                                       619/231-7423 (fax)

28                                       Counsel for Plaintiff and the Class

1521492_1

1

2    DATED:  January 14, 2019               LATHAM & WATKINS LLP
                                           COLLEEN C. SMITH
3

4                                          s/ COLLEEN C. SMITH
                                           COLLEEN C. SMITH
5

6                                          12670 High Bluff Drive
                                           San Diego, CA 92130-3086
7                                          Telephone: (858) 523-5400
                                           colleen.smith@lw.com
8

9                                          LATHAM & WATKINS LLP
                                           MICHELE D. JOHNSON
10                                         KRISTIN N. MURPHY
11                                         650 Town Center Drive, 20th Floor
                                           Costa Mesa, CA 92626-1925
12                                         Telephone: (714) 540-1235
13                                         michele.johnson@lw.com
                                           kristin.murphy@lw.com
14

15                                         LATHAM & WATKINS LLP
                                           ANDREW B. CLUBOK (*pro hac vice*)
16                                         SARAH A. TOMKOWIAK (*pro hac vice*)
17                                         555 Eleventh Street NW, Suite 1000
                                           Washington, DC 20004-1304
18                                         Telephone:  (202) 637-2200
19                                         andrew.chubok@lw.com
                                           sarah.tomkowiak@lw.com
20

21                                         Attorneys for Defendants Puma
                                           Biotechnology, Inc. and Alan H. Auerbach
22

23

24

25

26

27

28

                                           - 98 -

1521492_1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 14, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ TOR GRONBORG
TOR GRONBORG

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: torg@rgrdlaw.com

1521492_1

# Mailing Information for a Case 8:15-cv-00865-AG-SHK HsingChing Hsu v. Puma Biotechnology, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael A Attanasio**
  mattanasio@cooley.com,smiyajima@cooley.com,efiling-notice@ecf.pacerpro.com,michael-attanasio-2678@ecf.pacerpro.com

- **Debashish Bakshi**
  dbakshi@rgrdlaw.com,3472014420@filings.docketbird.com

- **Amanda F Betsch**
  amanda.betsch@lw.com,amanda-betsch-0711@ecf.pacerpro.com

- **Ryan E Blair**
  rblair@cooley.com,efiling-notice@ecf.pacerpro.com,chourani@cooley.com

- **Christopher Thomas Casamassima**
  chris.casamassima@wilmerhale.com,Amanda.Soun@wilmerhale.com,WHDocketing@wilmerhale.com

- **Rosalyn Chapman, RET**
  mdawson@jamsadr.com

- **Rosalyn Chapman (Ret.)**
  mdawson@jamsadr.com

- **Andrew Clubok**
  andrew.clubok@lw.com,andrew-clubok-9012@ecf.pacerpro.com,washington-dc-litigation-services-5378@ecf.pacerpro.com,DCECFNotificationsDC@lw.com

- **Susannah R Conn**
  sconn@rgrdlaw.com,tdevries@rgrdlaw.com,3022905420@filings.docketbird.com

- **Jordan Davisson Cook**
  jordan.cook@lw.com,#ocecf@lw.com,jordan-cook-5273@ecf.pacerpro.com

- **Patrick Joseph Coughlin**
  patc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com

- **Eric J Eastham**
  ejeastham@mintz.com,docketing@mintz.com,KCosta@mintz.com

- **Lorraine Echavarria**
  Lori.Echavarria@wilmerhale.com,joann.ambrosini@wilmerhale.com,gina.gaytan@wilmerhale.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com

- **Koji F Fukumura**
  kfukumura@cooley.com,efiling-notice@ecf.pacerpro.com,chourani@cooley.com

- **Gilardi & Co. LLC**
  classact@gilardi.com

- **Meryn C N Grant**
  meryn.grant@lw.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michele D Johnson**
  michele.johnson@lw.com,karen.patterson@lw.com,michele-johnson-
  7426@ecf.pacerpro.com,#ocecf@lw.com,khadijah-fields-2405@ecf.pacerpro.com,jana.roach@lw.com

- **Mary Kathryn Kelley**
  mkkelley@cooley.com,msalas@cooley.com,efiling-notice@ecf.pacerpro.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com

- **Ting Hsiang Liu**
  tliu@rgrdlaw.com

- **Kristin Nicole Murphy**
  kristin.murphy@lw.com,kristin-murphy-2919@ecf.pacerpro.com,#ocecf@lw.com,khadijah-fields-
  2405@ecf.pacerpro.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- **John Warren Rissier**
  warren.rissier@morganlewis.com,bernice.worley@morganlewis.com

- **Darren J Robbins**
  darrenr@rgrdlaw.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Charlene Sachi Shimada**
  charlene.shimada@morganlewis.com

- **Colleen C Smith**
  colleen.smith@lw.com,colleen-c-smith-7786@ecf.pacerpro.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,kmccormack@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **John F Sylvia**
  jfsylvia@mintz.com

- **Kolin Tang**
  ktang@sfmslaw.com,pleadings@sfmslaw.com

- **Craig Edward TenBroeck**
  ctenbroeck@cooley.com,maraujo@cooley.com,efiling-notice@ecf.pacerpro.com

- **Sarah A Tomkowiak**
  sarah.tomkowiak@lw.com,washington-dc-litigation-services-5378@ecf.pacerpro.com,sarah-tomkowiak-4288@ecf.pacerpro.com,DCECFNotificationsDC@lw.com

- **Lucy Han Wang**
  lucy.wang@morganlewis.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`