1
2
3
4
5

LATHAM & WATKINS LLP
  Michele D. Johnson (Bar No. 198298)
  *michele.johnson@lw.com*
  Kristin N. Murphy (Bar No. 268285)
  *kristin.murphy@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel:  (714) 540-1235
Fax:  (714) 755-8290

6
7
8
9

LATHAM & WATKINS LLP
  Colleen C. Smith (Bar No. 231216)
  *colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, CA 92130-3086
Tel:  (858) 523-5400
Fax:  (858) 523-5450

10
11
12
13
14

LATHAM & WATKINS LLP
  Andrew B. Clubok *(pro hac vice)*
  *andrew.clubok@lw.com*
  Sarah A. Tomkowiak *(pro hac vice)*
  *sarah.tomkowiak@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, DC 20004-1304
Tel:  (202) 637-2200
Fax:  (202) 637-2201

15
16

*Attorneys for Defendants Puma Biotechnology, Inc. & Alan H. Auerbach*

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

17  UNITED STATES DISTRICT COURT

18  CENTRAL DISTRICT OF CALIFORNIA

19  SOUTHERN DIVISION

20
21
22
23
24
25
26
27
28

HSINGCHING HSU, Individually and on Behalf of All Others Similarly Situated,

              Plaintiff,

     v.

PUMA BIOTECHNOLOGY, INC., and ALAN H. AUERBACH,

              Defendants.

CASE NO. 8:15-cv-00865-DOC-SHK

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE CLAIMS**

Date:         November 1, 2021
Time:         8:30 a.m.
Courtroom:  9D
Judge:        Hon. David O. Carter

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

# <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ............................................................................. 1

II. PROCEDURAL BACKGROUND ..................................................... 2

III. LEGAL STANDARD ..................................................................... 7

IV. ARGUMENT .................................................................................. 8

    A. A Jury Should Determine Whether the Capital Group Claims Can Invoke the *Basic* Presumption of Reliance ..................... 8

        1. Courts Have Recognized Several Ways in Which Defendants Can Rebut the Presumption of Reliance ................................................................... 10

        2. The Evidence Is Sufficient to Rebut the Presumption of Reliance on the Capital Group Claims ................................................................... 12

            a. The Capital Group Claimants Would Have Bought Puma Stock Even If They Had Known the True Disease-Free Survival Rates ...................................................... 12

            b. The Capital Group Claimants Did Not Rely on the Integrity of the Market When Buying Puma Stock ......................................... 16

    B. Deficient, Windfall, and Late Claims Should Be Excluded From Any Final Judgment ............................... 19

        1. Claims With Insufficient Evidence Should Be Rejected ................................................................ 20

        2. Claims That Result in Windfalls for Class Members Should Be Rejected ................................ 22

        3. Late Claims Should Not Be Permitted ................... 25

V. CONCLUSION ............................................................................. 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

i

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abrahamson v. Fleschner,*
568 F.2d 862 (2d Cir. 1977) ................................................................................. 25

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ......................................................................................... 7, 9

*Arensen v. Broadcom Corp.,*
2004 WL 3253646 (C.D. Cal. Dec. 6, 2004) ......................................................... 24

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) ................................................................................. 3, 10, 11

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975) ............................................................................ 4, 23

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .......................................................................................... 2, 20

*In re Currency Conversion Fee Antitrust Litig.,*
2009 WL 10695357 (S.D.N.Y. Oct. 22, 2009) .................................................. 20, 25

*Dalberth v. Xerox Corp.,*
766 F.3d 172 (2d Cir. 2014) .................................................................................... 8

*In re Daou Sys., Inc.,*
411 F.3d 1006 (9th Cir. 2005) .................................................................................. 2

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) ........................................................................................ 2, 23

*Feldman v. Pioneer Petroleum, Inc.,*
813 F.2d 296 (10th Cir. 1987) .......................................................................... 19, 21

*Fine v. American Solar King Corp.,*
919 F.2d 290 (5th Cir. 1990) ................................................................................. 11

*GAMCO Invs., Inc. v. Vivendi, S.A.,*
917 F. Supp. 2d 246 (S.D.N.Y. 2013) ............................................................... 11, 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

ii

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

*Gianukos v. Loeb Rhoades & Co., Inc.,*
   822 F.2d 648 (7th Cir. 1987) ................................................................. 12

*Halliburton Co. v. Erica P. John Fund, Inc.,*
   573 U.S. 258 (2014) ................................................................. 3, 10, 11

*Harmsen v. Smith,*
   693 F.2d 932 (9th Cir. 1982) ................................................................. 19, 22

*Jaffe Pension Plan v. Household Int'l, Inc.,*
   756 F. Supp. 2d 928 (N.D. Ill. 2010) ................................................................. 23, 24

*Kline v. Wolf,*
   702 F.2d 400 (2d Cir. 1983) ................................................................. 12, 17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) ................................................................. 20

*Lyngaas v. Curaden AG,*
   436 F. Supp. 3d 1019 (E.D. Mich. 2020) ................................................................. 19

*Pacific Packaging Concepts, Inc. v. Nutrisystem, Inc.,*
   2021 WL 3511200 (C.D. Cal. Aug. 10, 2021) ................................................................. 9

*Pelletier v. Stuart-James Co., Inc.,*
   863 F.2d 1550 (11th Cir. 1989) ................................................................. 19

*In re Safeguard Scis.,*
   216 F.R.D. 577 (E.D. Pa. 2003) ................................................................. 11, 14

*Semerenko v. Cendant Corp.,*
   223 F.3d 165 (3d Cir. 2000) ................................................................. 11

*Stark Trading v. Falconbridge Ltd.,*
   552 F.3d 568 (7th Cir. 2009) ................................................................. 11

*In re Vivendi Universal, S.A. Sec. Litig.,*
   123 F. Supp. 3d 424 (S.D.N.Y. 2015) ................................................................. *passim*

## STATUTES

15 U.S.C. § 78bb(a) ................................................................. 23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

# RULES

Fed. R. Civ. P. 23 .................................................................................................. 24

Fed. R. Civ. P. 56(a) ............................................................................................... 7

# CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. VII ................................................................................. 1, 7, 9

# OTHER AUTHORITIES

1 Jonathan N. Eisenberg,
    *Litigating Securities Class Actions* § 5.06 (2021) ........................................ 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iv

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

## I.     INTRODUCTION

While the trial in this case resolved the claims of the Lead Plaintiff, Norfolk County Council, as Administering Authority of the Norfolk Pension Fund ("Lead Plaintiff"), as well as certain elements of the same claims as to the absent class members, it did not resolve (nor could it) two important elements of a securities violation that can only be determined on a claim-by-claim basis:  (1) individual reliance and (2) damages.  These issues can only be evaluated now, after absent class members have had the opportunity to make individual claims.  Based on those claims and the available evidence, there are two groups of claims for which these elements have not been satisfied that should be excluded from any judgment.

*First*, Defendants are entitled to a short trial to determine whether the *Basic* presumption of reliance can be rebutted as to claims made by funds affiliated with The Capital Group Companies, Inc. ("Capital Group" and the "Capital Group Claims").  During the trial, the jury concluded that the fraud-on-the-market presumption of reliance had been established on a class-wide basis, and that the presumption was not rebutted for the Lead Plaintiff.  But this presumption is rebuttable on an *individual* basis upon a showing that any claimant did not purchase Puma securities in reliance on the integrity of the market price.  Here, the available evidence demonstrates that the Capital Group claimants were indifferent to the one misrepresentation as to which the jury found liability, and that these claimants purchased more Puma stock after the corrective information was disclosed on May 13, 2015.  Because Puma has a Seventh Amendment right to present this evidence to a jury so that it may evaluate Capital Group's individual reliance, the Court should exclude Capital Group's claims from any judgment.

*Second*, Defendants are entitled to summary judgment now on numerous claims as to which damages have not been established, whether because they are accompanied by insufficient documentation, would result in windfall profits, or were submitted late.  These claims fall into six categories:

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

1

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

- **Category A**.  Claims missing backup information.
- **Category B**.  Claims with supporting documents that do not identify or do not match the claimant.
- **Category C**.  Claims with incomplete trading records.
- **Category D**.  Claims based on insufficient or unreliable evidence.
- **Category E**.  Claims that would result in a windfall to the claimants.
- **Category F**.  Claims that were submitted after the deadline.

On these claims, Defendants are entitled to judgment as a matter of law, because Plaintiff has not come forward with facts showing that there is any genuine dispute of material fact that would need to be resolved by a jury.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  To the extent the Court disagrees, however, as with the Capital Group Claims, a jury trial is necessary to resolve these factual disputes.  In either event, these disputed claims should not be included in any judgment.

## II.    PROCEDURAL BACKGROUND

This is a securities class action in which Plaintiff alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities & Exchange Commission Rule 10b-5 by making misrepresentations about Puma's life-saving breast-cancer drug, neratinib (NERLYNX®).  Plaintiff represents a class of Puma shareholders.  Plaintiff was required to prove six elements to prevail: (1) a material misrepresentation, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) damages, and (6) loss causation.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).

To establish the element of reliance, Plaintiff was required to show that, "but for" Defendants' misrepresentations, the class would not have purchased Puma stock.  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005).  Lacking direct evidence of reliance on any of the four alleged misrepresentations, at trial Plaintiff invoked the rebuttable fraud-on-the-market presumption of reliance recognized in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

2

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1    *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).  The *Basic* presumption posits "that

2    the market price of shares traded on well-developed markets reflects all publicly

3    available information" and that investors who trade at the market price "do[] so in

4    reliance on the integrity of that price."  *Id.* at 246–47 (footnote omitted).  However,

5    the presumption is *rebuttable* on a class-wide basis or as to any given class

6    member.  Any showing "that severs the link between the alleged misrepresentation

7    and either" (1) "the price received (or paid) by" the class member, or (2) the class

8    member's "decision to trade at a fair market price," will rebut the presumption.

9    *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268–69 (2014)

10   (citations omitted).

11          In the run up to trial, the parties recognized that the reliance element (and in

12   particular, individual challenges to the reliance of absent class members) could not

13   be conclusively resolved until after trial.  *See* Final Pretrial Conf. Tr. at 10:11–17

14   (Oct. 22, 2018), ECF No. 615 ("[T]he issues of individual reliance are dealt with

15   after a trial . . . .  So if [Defendants] have evidence of individual reliance issues,

16   that is an issue that will be raised after a verdict.").  For that reason, in their

17   proposed pretrial order, Defendants expressly "reserved the right to challenge the

18   individual reliance of absent class members following any determination of

19   liability [by the jury]."  Proposed Final Pretrial Conf. Order ¶ 14 (Oct. 11, 2018),

20   ECF No. 585-1.

21          The parties tried the case from January 15 to January 29, 2019.  On February

22   4, 2019, the jury returned a verdict in Plaintiff's favor with respect to only one of

23   the four alleged misrepresentations, a statement made on a July 22, 2014

24   conference call regarding top-line efficacy data from Puma's successful Phase III

25   clinical trial of neratinib, which the jury found caused shareholder losses on May

26   13, 2015, when Puma released the two-year disease-free survival rates from the

27   Phase III trial.  Verdict Form ¶ 1 (Feb. 4, 2019), ECF No. 718 (Redacted).  As to

28   reliance, the jury found that Defendants had not rebutted the presumption of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

3

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

reliance for the Lead Plaintiff individually. *Id.* ¶ 5.1.  The jury then awarded per-share damages of just $4.50, a significant reduction from Lead Plaintiff's asserted per-share damages of $87.20.  *Id.* ¶ 4.  As the parties and the Court had agreed, the jury was not asked to determine whether Defendants had rebutted the presumption of reliance as to each absent class member, or relatedly, the total amount of Defendants' liability and aggregate damages.  Nor could the jury decide those questions—individual damages could not be calculated until the Court decided the formula for doing so, and each class member who came forward with a claim would need to provide sufficient documentation of their damages.  Individual reliance and damages were thus reserved for post-verdict proceedings.

Over the following months, the parties briefed and Judge Guilford decided various post-verdict issues.  During that briefing, Lead Plaintiff took the position that Defendants should not be permitted to take any post-trial discovery, but conceded that "[t]o the extent Defendants have a basis for challenging the reliance of any Class member, ***they can do so***."  Plfs.' Mem. iso Mot. for Approval of Claims Admin. Proc. (June 14, 2019) ECF No. 749 at 18 (emphasis added).  On September 9, 2019, Judge Guilford approved a notice to the class about the verdict, established a claims-administration schedule, awarded prejudgment interest, and determined the methodology for calculating damages.  *See* Minute Order (Sept. 9, 2019), ECF No. 778 ("Order").  The Private Securities Litigation Reform Act ("PSLRA") limits damages to actual damages incurred, which requires that any losses suffered as a result of *purchasing* stock at an inflated price be offset by any gains enjoyed as a result of *selling* the stock at the inflated price.  *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 908–09 (9th Cir. 1975) (damages should be offset by profits recovered due to inflation attributable to the fraud).  Accordingly, Judge Guilford was asked to determine the appropriate method of matching when claimants' purchased shares were sold:  either under the "last-in-first-out" (LIFO) method (in which the last shares purchased are presumed to be the first shares

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1  sold), or the "first-in-first-out" (FIFO) method (in which the first shares purchased

2  are presumed to be the first shares sold).  Order at 9 (ECF No. 778).  Judge

3  Guilford agreed with Defendants that "LIFO is the more appropriate method for

4  matching shares sold during the class period because LIFO accounts for profits

5  resulting from class period sales" and "FIFO often ignores necessary offsets."  *Id*.

6       At the same time, the Court approved Plaintiff's proposed claim form and

7  appointed Gilardi & Co. LLC as the claims administrator.  *Id*. at 6.  The approved

8  claims form provided instructions to each potential claimant regarding the

9  documentation that should be submitted to support a claim.  ECF No. 748-1.

10 Among other things, the form instructed claimants that:

11        Copies of documents evidencing your transactions in Puma stock
          should be attached to your claim.  This can include trade confirmation
12        slips or emails from your bank or stockbroker, monthly, quarterly, or
          annual bank or broker statements, or other documents reflecting your
13        transactions in Puma stock.  ***If any such documents are not in your***
          ***possession, please obtain a copy or equivalent documents*** from your
14        bank broker because these documents will be used to process your
          claim.  ***Failure to provide suitable documentation could delay***
15        ***verification of your claim or result in rejection of your claim.***

16

17 *Id*. at 4 (emphases added).  Claimants were required to submit claims by January

18 28, 2020, and were instructed that "**[t]o recover damages**" claimants "**must**

19 **submit a valid Proof of Claim form . . . no later than [January 28, 2020]**," and

20 warned that "**[l]ate filed claims will only be accepted with the approval of the**

21 **Court**."  *Id*. at 2 (emphasis in original).

22       In February 2020, while the claims administrator was accepting claims, the

23 case was reassigned to this Court.  At the conclusion of the claims submission

24 process, in November 2020, this Court established the process for Defendants to

25 challenge submitted claims.  Order (Nov. 27, 2020), ECF No. 817.  Specifically,

26 the Court ordered Defendants to identify by March 29, 2021, the claims

27 Defendants do not intend to challenge (Group 1); the claims Defendants intend to

28 challenge and the specific basis for the challenges (Group 2); and the claims

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

5

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

Defendants contend they need additional information about in order to assess the claims, including the specific information Defendants contend they need and why the information already provided by the claimant and claims administrator is insufficient (Group 3).  *Id*.  The Court further provided for a process to address any disputed claims.  *See id.* ("If counsel for the parties are unable to resolve disputes regarding any challenged claims, Defendants shall file a motion to exclude the disputed claims, including for each claim the basis for the requested exclusion.").

Consistent with the Court's orders, counsel for Defendants carefully reviewed each of the claims, spending over 450 hours analyzing prior discovery, the claims themselves, and the underlying documentation submitted by each claimant.  Decl. of Jordan D. Cook, (Mar. 29, 2021) ECF No. 819 ¶ 4.  And on March 29, 2021, Defendants submitted a report identifying the claims falling into each of the three categories specified by the Court.  Defs.' Post-Trial Claims Submission Pursuant to ECF No. 817 (Mar. 29, 2021), ECF No. 820.  Defendants did not place any claims in Group 1—unchallenged claims.  *Id.*  In Group 2— claims that are subject to challenge based on the claims submission documentation—Defendants identified approximately 1,300 claims with deficiencies.  Defendants then placed all of the claims, including those identified in Group 2, within Group 3—claims as to which additional discovery was needed to assess the element of individual reliance.  *Id.*

The same day, Defendants also filed a motion for leave to amend the final pretrial order, which sought the previously contemplated post-trial discovery regarding the element of individual reliance with respect to all claims.  Defs.' Notice of Mot. & Mot. for Leave to Amend the Final Pretrial Order (Mar. 29, 2021), ECF No. 818 ("Mot. for Leave to Amend").  On June 11, 2021, the Court denied this motion.  Order (June 11, 2021), ECF No. 832.  In so doing, the Court did not limit Defendants' right to challenge any of the claims in Group 3 based on existing discovery.  *Id.*; *see also* Pl.'s Opp'n to Defs.' Mot. for Leave to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

6

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1  Amend the Final Pretrial Order at 7 (Apr. 26, 2021), ECF No. 825 ("Defendants

2  here have the opportunity to challenge validated claims made by Class members.

3  They can do so using any discovery they developed before the trial or based on any

4  of the over 500,000 pages of documents that have been . . . submitted through the

5  claims . . . process.").

6  **III.   LEGAL STANDARD**

7         For the Court to order Defendants to pay damages to particular class

8  members in this case, it must first conclude that those class members have

9  established their entitlement to final judgment on their securities fraud claims.

10 Here, approximately 1,350 of the absent class members are not entitled to

11 judgment because they cannot establish either the reliance element of their claim,

12 the damages element of their claim, or both.  The claims of those absent class

13 members must therefore be excluded from any final judgment.

14        Defendants respectfully submit that they are entitled to a short jury trial to

15 determine whether they can rebut the presumption of reliance with respect to

16 claims submitted by affiliates of the Capital Group.  As the Supreme Court has

17 explained, "the judge's function is not himself to weigh the evidence and

18 determine the truth of the matter but to determine whether there is a genuine issue

19 for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Indeed,

20 Defendants have consistently asserted their Seventh Amendment right to have all

21 elements of their liability for securities fraud to be adjudicated by a jury. *See* Mot.

22 for Leave to Amend at 4–6, 8 (ECF No. 818); Defs.' Reply in Supp. of Mot. for

23 Leave to Amend the Final Pretrial Order at 4–6 (May 10, 2021), ECF No. 829.

24        Defendants are entitled to summary judgment on the issues of damages as to

25 those class members identified in Section IV.B.  Summary judgment shall be

26 granted on a claim "if the movant shows that there is no genuine dispute as to any

27 material fact and the movant is entitled to judgment as a matter of law." Fed. R.

28 Civ. P. 56(a).  An issue of fact is genuine only "if the evidence is such that a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

7

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1   reasonable jury could return a verdict for the nonmoving party." *Dalberth v. Xerox*
2   *Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) (citation omitted).  Because the claimants
3   that are identified in this motion cannot establish damages, the Court should grant
4   summary judgment in Defendants' favor as to those claims, unless Plaintiffs can
5   show there is a genuine issue of material fact precluding judgment as matter of
6   law. *Id.*
7           If the Court concludes that summary judgment for Defendants is not
8   appropriate as to any of the challenged claims, it should instead direct that those
9   claims proceed to a short jury trial on the relevant issues.

10  **IV.    ARGUMENT**

11          **A.    A Jury Should Determine Whether the Capital Group Claims**
12                  **Can Invoke the *Basic* Presumption of Reliance**

13          Among other things, claimant Capital Group provides investment fund
14  management services for specific clients (including for the Lead Plaintiff), and it
15  also offers managed investment funds.  Capital Group employs analysts and
16  portfolio managers, who are investment professionals that identify potential
17  investments and manage the various funds under its control.  Nine of these Capital
18  Group-managed funds purchased Puma stock during the class period and submitted
19  claims for recovery in this case (the "Capital Group Claims"):



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Exs. M-N.  It is possible that post-trial discovery would have revealed other claimants affiliated with Capital Group, but in the absence of discovery, these are the only apparent claimants affiliated with Capital Group based on pre-trial discovery and publicly available information.

Capital Group did not submit any direct evidence of reliance with its claims (*e.g.*, evidence that anyone at Capital Group read Mr. Auerbach's July 22, 2014 statement and relied upon it in purchasing Puma securities) and thus must rely on the class-wide rebuttable *Basic* presumption of reliance to establish that element of its claim.  However, there is a genuine dispute of material fact as to whether affiliates of the Capital Group can do so.

During fact discovery, the Capital Group and its affiliate Capital International Limited, which served as the investment advisor to the Lead Plaintiff, *see* Ex. B, produced hundreds of pages of documents, and two of its employees, Skye Drynan and Darcy Kopcho, sat for depositions.  That evidence, along with the claims documentation submitted by the Capital Group, establishes that the Capital Group claimants did not rely on the integrity of the market price in trading Puma securities.  Rather, the Capital Group employed analysts who based their investment decisions on specialized research into Puma and discussions with company insiders.  The record further establishes that Capital Group would have purchased Puma stock even if they had known the true disease-free survival rates, and made several purchases after the actual disease-free survival rates were revealed to the market on May 14, 2015.

Therefore, there is a factual dispute as to whether the presumption of reliance required to support a valid claim has been rebutted, and the issue should be submitted to a jury.  U.S. CONST. amend. VII ("In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]"); *see also Anderson*, 477 U.S. at 249; *Pacific Packaging Concepts, Inc. v. Nutrisystem, Inc.*, 2021 WL 3511200, at *2 (C.D. Cal. Aug. 10,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

9

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1   2021) (holding that where "evidence demonstrates there are numerous genuine

2   disputes of material fact . . . These are factual issues for a jury.").  Defendants

3   anticipate that any such jury trial would not require more than two days of jury

4   time.  If, however, the Court determines that a short trial is not appropriate,

5   Defendants submit that they are entitled to summary judgment on these issues.

### 1. Courts Have Recognized Several Ways in Which Defendants Can Rebut the Presumption of Reliance

8       In *Basic, Inc. v. Levinson*, the Supreme Court recognized that, under certain

9   circumstances, a plaintiff is entitled to a rebuttable presumption (the "fraud-on-the-

10  market theory") of reliance.  485 U.S. at 247.  Fundamental to the Court's holding

11  was its conclusion that purchasers of a stock "generally" assume that the market

12  price reflects the true value of the company as established through publicly

13  available information.  *See id.* at 244, 247.  But the Court's adoption of the

14  presumption was also driven by "practical" considerations, including its concern

15  that "[r]equiring proof of individualized reliance from each member of the

16  proposed plaintiff class effectively would have prevented [plaintiffs] from

17  proceeding with a class action, since individual issues then would have

18  overwhelmed common ones."  *Id.* at 242.

19      Nevertheless, the Court stressed that "reliance is an element of a Rule 10b-5

20  cause of action," and that the presumption is rebuttable:  "*Any showing* that severs

21  the link between the alleged misrepresentation and either the price received (or

22  paid) by the plaintiff, or his decision to trade at a fair market price, will be

23  sufficient to rebut the presumption of reliance."  *Id.* at 243, 248 (emphasis added);

24  *see also Halliburton*, 573 U.S. at 269–70; *id.* at 295 (Thomas, J., concurring in the

25  judgment) ("[B]y its own terms, *Basic* entitles defendants to ask each class

26  member whether he traded in reliance on the integrity of the market price.").

27  Courts have recognized two ways to rebut the presumption of reliance that are

28  especially relevant here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

10

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

*First*, a defendant may rebut the presumption by showing that a plaintiff would have purchased the stock even if the plaintiff had known of the fraud, or by showing that a plaintiff purchased stock despite knowing the truth about the fraud. *See Basic*, 485 U.S. at 248–49; *see also Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 572 (7th Cir. 2009) (affirming dismissal of Section 10b-5 claim where plaintiffs "knew better" than to rely on allegedly fraudulent statements); *Fine v. American Solar King Corp.*, 919 F.2d 290, 299 (5th Cir. 1990) ("The presumption of reliance can be rebutted by showing . . . that the Plaintiffs would have purchased the stock at the same price had they known the information that was not disclosed" or "that the Plaintiffs actually knew the information that was not disclosed to the market.").  For instance, evidence that a plaintiff increased his holdings in the stock after disclosure of the alleged fraud can demonstrate that the plaintiff "would have made—and in fact did—purchase stock regardless of the fraudulent omission."  *In re Safeguard Scis.*, 216 F.R.D. 577, 582 (E.D. Pa. 2003); *see also GAMCO Invs., Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 261-62 (S.D.N.Y. 2013) (denying plaintiff's motion for summary judgment on reliance because its post-disclosure purchases created a genuine dispute as to its non-reliance).  Along the same lines, the presumption may be rebutted by showing that a plaintiff was a "sophisticated institutional investor whose own specialized knowledge and advanced research rendered it completely indifferent to the fraud."  *In re Vivendi Universal, S.A. Sec. Litig.*, 123 F. Supp. 3d 424, 438 (S.D.N.Y. 2015).

*Second*, a defendant may rebut the presumption of reliance by showing that a plaintiff "did not rely on the integrity of the market price in trading [the] stock." *Halliburton*, 573 U.S. at 276; *see also Semerenko v. Cendant Corp.*, 223 F.3d 165, 179 (3d Cir. 2000).  *Basic* posits that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price."  485 U.S. at 247.  Accordingly, if a defendant shows that this assumption is not true for a given plaintiff, the basis for the fraud-on-the-market theory disappears and the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

11

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

presumption is rebutted.  Courts recognize a number of ways to do this.  For example, an investor who "relie[s] on his own careful assessments of [the Company], drawing largely from his familiarity with the company's assets and tapping into resources unavailable to the average investor," cannot rely on the *Basic* presumption.  *Vivendi*, 123 F. Supp. 3d at 436; *see also Gianukos v. Loeb Rhoades & Co., Inc.*, 822 F.2d 648, 655 (7th Cir. 1987) (presumption rebutted where plaintiff relied on "'inside information' and not on the integrity of the market"); *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (presumption would be rebutted by showing "that plaintiffs did not significantly rely on the integrity of the market").  The available evidence in this case establishes that both of these bases for rebutting the presumption of reliance exist as to the Capital Group.

### 2. The Evidence Is Sufficient to Rebut the Presumption of Reliance on the Capital Group Claims

#### a. The Capital Group Claimants Would Have Bought Puma Stock Even If They Had Known the True Disease-Free Survival Rates

The evidence demonstrates that the Capital Group claimants were indifferent to the fraud.  For example, on May 14, 2015—one day after the true disease-free survival rates were disclosed—Capital Group research analyst Skye Drynan published a post titled "Puma: The house is NOT ON FIRE -- BUY" on Capital's internal Capital Connect system.  *See* Ex. C; Ex. D ("Drynan Tr.") at 129-30.  Ms. Drynan was the Capital Group analyst responsible for investing in U.S. biopharmaceutical companies—including Puma—during the relevant 2015 time period.  Drynan Tr. at 13:1-8.  Ms. Drynan's post discusses the true disease-free survival rates and concludes that they do not affect her bottom-line view: "Neratinib is an [FDA] approvable drug that improves DFS for HER2+ [breast-cancer] patients in year 2 of treatment" and "is an attractive asset on a stand-alone and an M&A target basis."  Ex. C at CII-00391.  This post has a comment by a Capital trader (*see* Drynan Tr. at 63:6-8), which summarizes commentary from

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

12

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1   four major institutional brokers—three of which reiterate a "buy" recommendation

2   for Puma's stock, and one of which recommends holding (with a caveat that this

3   broker "Believes Initial Reaction May Be Overdone"). Ex. C at CII-00391-92.

4          Similarly, on June 2, 2015—a day after more details about the Phase III trial

5   for neratinib were presented to the American Society of Clinical Oncology—Ms.

6   Drynan participated in an internal Capital conference call where she reiterated her

7   view that Puma presented a "strong buying opportunity." Ex. E. The summary

8   bullet points of this call do not even mention the DFS rates. Crucially, according

9   to Darcy Kopcho, "all of the portfolio managers" had access to Ms. Drynan's

10  research. Ex. F ("Kopcho Tr.") at 57:25-58:5.

11         Thus, internal Capital research analysts and decision-makers were wholly

12  unfazed by the true disease-free survival rates, and recommended buying Puma's

13  stock regardless of the true disease-free survival rates. Other evidence is consistent

14  with this conclusion. In a May 21-23, 2015 email exchange, Ms. Drynan and

15  "another investment analyst in another Capital division," Drynan Tr. at 52:21-23,

16  offered Puma's CEO encouragement and advice. *See* Ex. G. This friendly

17  exchange with an individual accused of fraud in this case confirms the true disease-

18  free survival rates were not some earthshattering revelation that undermined the

19  basis for Capital's purchases in Puma stock.



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

13

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK



10      This conclusion is bolstered by evidence that Capital Group was a

11 "sophisticated institutional investor whose own specialized knowledge and

12 advanced research rendered it completely indifferent to the fraud.'" *Vivendi*, 123

13 F. Supp. 3d at 438.  For example, Ms. Drynan's research of potential investments

14 was not limited to public sources, but instead included independent research

15 through multiple avenues.  Drynan Tr. at 14:10-15.  Her research methods included

16 "doing doctor surveys, . . . going to medical meetings, [and] talking to the

17 company you may or may not be interested in buying, along with the competition."

18 *Id*. at 14:16-19.  Ms. Drynan considered it critical to speak with company

19 management because "they are the people who are making the decisions on how to

20 allocate resources for developing the drugs." *Id*. at 20:4-11.  Ms. Drynan would

21 often visit the relevant company's research facility or lab.  *See* Kopcho Tr. 32:21-

22 22.  A significant focus of all of this research was to assess the probability that a

23 company's drug would be approved by the U.S. Food & Drug Administration

24 ("FDA").  Drynan Tr. 20:15-22.  Indeed, she and others at Capital Group would

25 even retain biostatistician consultants to help evaluate this critical question,

26 including by looking at whether data "had been cut incorrectly, or if they thought

27 that it had been done correctly." *Id*. at 21:7-10.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

14

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1   Ms. Drynan's research on any particular biotechnology company was then

2 shared with others within Capital Group, including portfolio managers for multiple

3 funds.  One way Ms. Drynan's research was communicated was through research

4 reports that were published internally and available to all Capital Group portfolio

5 managers.  *Id*. at 45:11-17.  Darcy Kopcho, one of Capital Group's Portfolio

6 Managers, testified that Ms. Drynan also presented the results of her research

7 during meetings of Capital Group portfolio managers.  Kopcho Tr. at 26:12-21.

8 And according to Ms. Kopcho, portfolio managers such as herself would rely on

9 Ms. Drynan's research in deciding which biotechnology companies to invest in.

10 *Id.* at 30:12-20.

11   These same general practices were applied to Capital Group investments in

12 Puma stock.  Ms. Drynan explained that she recommended purchasing Puma stock

13 both during and after the class period, based on her own, independent research

14 which included direct discussions with Puma's management team.  Indeed, Ms.

15 Drynan communicated regularly with Alan Auerbach, Puma's CEO, regarding her

16 research and investment thesis for Puma.  Drynan Tr. at 36:5-8.  For example, just

17 days after the July 22, 2014 release of the ExteNET trial results, Ms. Drynan

18 attended a meeting with Mr. Auerbach during which he provided details regarding

19 neratinib's safety profile and its efficacy when compared to potential competitors.

20 Ex. H.  Ms. Drynan met with Mr. Auerbach again on October 8, 2014, this time

21 accompanied by Craig Gordon, another Capital Group employee.  Ex. I.  The

22 meeting focused on the timing of the presentation of full clinical trial data, as well

23 as other questions regarding the drug's safety and efficacy profile.  *See id.*  After

24 the meeting, Mr. Auerbach provided the Capital Group team with additional

25 information, prompted by that day's discussions.  Ex. J.

26   Based in part on her discussions with Puma's management team, and her

27 familiarity with Mr. Auerbach and his track record of success, Ms. Drynan's

28 research reports reflected her recommendation to purchase Puma stock.  In a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

15

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

September 2014 research note that was made available to *all* Capital Group
portfolio managers, Ms. Drynan advised that purchasing Puma stock would be an
"investment in the people" at Puma.  Ex. K at CII-00441.  Indeed, in that research
note, Ms. Drynan indicated that the value proposition for Puma did not depend on
any particular metric, but included the very real possibility that Mr. Auerbach
would do what he had previously done which is sell the company to a larger
company—at a premium.  *Id.* at CII-00439 ("Alan's dream scenario is to be given
a shovel & allowed to dig in big pharma's graveyard again.  He wants to do the
same thing *after he sells Puma*.  He is a company builder.") (emphasis added).
And in a January 2015 research report, Ms. Drynan reiterated her recommendation
that Capital Group funds buy Puma stock, based again on her impressions of Mr.
Auerbach.  Ex. L at CII-00395 (stating that Mr. Auerbach is "shrewd & a
workaholic," and a "proven moneymaker" who "understands how to use capital
wisely").  All of this evidence demonstrates that there is *at minimum* a factual
dispute as to whether the presumption of reliance required to support a valid claim
has been rebutted, and the issue should be submitted to a jury.

### b. The Capital Group Claimants Did Not Rely on the Integrity of the Market When Buying Puma Stock

There is also a genuine dispute of fact as to whether the Capital Group
Claimants actually relied on the integrity of the market price in trading Puma
stock.  Capital Group funds made investment decisions based on the independent
research of its specialized research analysts.  Kopcho Tr. at 30:12-20.  Individual
fund portfolio managers relied on that work, and may also have conducted
additional independent research.  *Id.*  This research included extensive
investigation regarding a company's management team, its facilities, its prospects
for success, including in some cases private discussions with insiders and input
from independent experts.  Drynan Tr. at 13:24-14:19, 17:23-18:10, 20:15-22,
34:11-35:19, 36:5-8.  This type of extensive review of an investment is the

LATHAM&WATKINS
ATTORNEYS AT LAW
ORANGE COUNTY

16

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

opposite of blind reliance on the integrity of the market price to reflect the value of the stock.  Rather, Capital Group's research—like that of many other large investment funds—is designed to assess whether a company's stock is undervalued, or for some other reason represents a future growth opportunity that is not reflected in the market price.  And that means Capital Group did *not* "significantly rely on the integrity of the market." *Kline*, 702 F.2d at 403.

As the facts discussed above reflect, Ms. Drynan conducted her own independent research and financial modeling of Puma, based on detailed analysis of medical journals, industry conferences, medical meetings, and other non-price factors.  *See* Drynan Tr. at 13:24-14:19, 17:23-18:10, 20:15-22.  That research was based in substantial part on the special access she had to Puma's management, including the many discussions she had with Mr. Auerbach.  *Id.* at 34:11-35:19, 36:5-8; Ex. H; Ex. I; Ex. J.  Reliance on these types of "resources unavailable to the average investor[]" is exactly the type of information that suffices to rebut the presumption of reliance—because it suggests the plaintiff did not rely on the integrity of the market price. *See Vivendi*, 123 F. Supp. 3d at 436.

The court in *Vivendi* confronted a very similar situation.  *See id.*  There, the court held that an individual class member investment firm could not "survive an individualized rebuttal." *Id.*  In reaching that conclusion, the court noted that "[t]he market price of [the subject security] was not important to [the fund's investment analyst's] calculation of their intrinsic value." *Id.*  "Instead, he relied on his own careful assessments of Vivendi's assets and liquidity position, drawing largely from his familiarity with the company's assets and tapping into resources unavailable to the average investor." *Id.*  The Court noted that "[e]ven had [the analyst] known about the fraud, it would not have mattered to him: he said that he . . . was not misled about Vivendi's debt." *Id.*  And finally, the court noted that the analyst "did not view any of the [] corrective disclosures as 'correcting' any misunderstanding he had" since his firm "did not even start investing in Vivendi

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

17

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1   until after the fourth (of nine) corrective disclosure was disseminated to the

2   market." *Id.*

3        Here, Ms. Drynan's investment thesis—and the basis for her

4   recommendation to Capital Group portfolio managers to purchase Puma stock—

5   was not based on the specific disease-free survival rates that were disclosed on

6   May 13, 2015.  Rather, her investment recommendation was principally motivated

7   by her assessment that neratinib would receive FDA approval and that Puma was

8   an attractive candidate for acquisition. *See, e.g.*, *id*.  She also testified that she had

9   not been misled into investing in Puma by Mr. Auerbach's statements about the

10  disease-free survival rates (or anything else).  Drynan Tr. at 38:23-39:12 ("Q: Do

11  you believe he ever misled you in any way?  A: I do not believe he ever misled me

12  in any way.  Q:  Do you believe that he defrauded you in any way?  A: No."); *see*

13  *also Vivendi*, 123 F. Supp. 3d at 436 (noting the analyst's view that he was not

14  misled).

15       Confirming that Ms. Drynan's recommendation to purchase Puma stock was

16  not based on the disease-free survival rates, after that information was released on

17  May 13, 2015, she recommended that Capital Group *increase* its position in Puma.

18  Drynan Tr. at 171:1-20.  And the evidence confirms that Capital Group, in fact, did

19  so.  In an email to Puma's CEO on May 21-23, 2015, Ms. Drynan told him that she

20  "believe[s] in" Puma's CEO, and that Capital "added on the weakness."  Ex. G at

21  PUMA00040172.  As she explained at her deposition, "[t]he stock was down, and

22  we bought it."  Drynan Tr. at 136:20-25.  Her specific reasoning for this was that

23  she believed that the stock was undervalued. *See id.* at 171, 141, 133.  This is

24  exactly the kind of evidence the *Vivendi* court found sufficient to rebut the

25  presumption of reliance. *Vivendi*, 123 F. Supp. 3d at 436.

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

18

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

**B.    Deficient, Windfall, and Late Claims Should Be Excluded From Any Final Judgment**

An additional group of claims should be excluded from any judgment in this case because they are defective and cannot establish damages.  The Court should enter summary judgment in favor of Defendants as to those claims.  A plaintiff seeking to recover for his losses in a securities class action cannot simply assert his entitlement to recover, but rather must present sufficient information showing that he is entitled to damages.  *See, e.g.*, *Harmsen v. Smith*, 693 F.2d 932, 945 (9th Cir. 1982) (damages alleged in a securities action are "recoverable only to the extent they can be shown"); *see also Pelletier v. Stuart-James Co., Inc.*, 863 F.2d 1550, 1558 (11th Cir. 1989) ("A plaintiff has the burden of proving every element of his Rule 10b-5 anti-fraud action, including damages."); *Feldman v. Pioneer Petroleum, Inc.*, 813 F.2d 296, 302 (10th Cir. 1987) (same).  "In a class action setting, the need for individual proof of damages is not eliminated.  Thus, an individual claiming damages must establish the amount of their actual damages through a proof-of-claim process."  1 Jonathan N. Eisenberg, *Litigating Securities Class Actions* § 5.06 (2021) (emphasis added); *see also Lyngaas v. Curaden AG*, 436 F. Supp. 3d 1019, 1023 (E.D. Mich. 2020) (class actions require "determinations regarding individual class members' entitlement to damages").  This burden is not satisfied if "speculation or conjecture" is required to determine the proper amount of a claim or actual damages.  *Feldman*, 813 F.2d at 301.

Several claimants have not satisfied this obligation to establish their damages.  As discussed below, these claims should be excluded because (1) they lack sufficient (or any) documentation, (2) the claimant enjoyed windfall profits as a result of the claimed fraud, or (3) the claims were submitted after the deadline.  Each of the claims discussed in these categories should be excluded from any final judgment because defendants are entitled to summary judgment with respect to any claimant who "fails to make a showing sufficient to establish the existence of an

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

19

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1  element essential to that party's case[.]"  *Celotex*, 477 U.S. at 322.  Defendants

2  have concurrently submitted Exhibits 1-127, which constitute the defective

3  information submitted in connection with each of the claims submitted here.

4  Defendants are entitled to summary judgment with respect to each of those claims.

5  To the extent that the Court feels further analysis is required, Defendants would

6  support the appointment of a Special Master to analyze the issues discussed below.

7  *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 2009 WL 10695357, at

8  *13 (S.D.N.Y. Oct. 22, 2009) (detailing participation of special master in similar

9  proceedings).

10  **1.  Claims With Insufficient Evidence Should Be Rejected**

11  **Category A.**  The claims in this category lack any backup documentation

12  whatsoever.  There are a total of 1,237 claims in this category, as reflected in

13  Appendix A at Rows 5-1241.  *See* Appendix A.

14  

15  

16  

17  

18  

19  

20  

21  

22  

23  Similar defects are

24  present with respect to the other claims presented in Category A, with the specific

25  shortcomings detailed in Appendix A.  Such unsubstantiated assertions do not

26  satisfy the claimant's burden to establish damages.  *See, e.g., In re LIBOR-Based*

27  *Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 510, 544 (S.D.N.Y. 2018)

28  (uniform and reliable source of trading records was required to prove damages).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

20

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

**Category B.**  Claims in this category were accompanied by documentation that is missing key information necessary to determine whether the documentation actually pertains to the claim in question.  There are a total of forty-three claims in this category, as reflected in Appendix A at Rows 1243-1285.  *See* Appendix A.



The claims submitted by the other claimants in this category suffer from similar defects, all of which are described in detail in Appendix A.  Defendants should not be obligated to pay damages on these claims when connecting them to the trading records provided would require "speculation or conjecture."  *See Feldman*, 813 F.2d at 301 (requiring a plaintiff to provide "an intelligent means in determining an appropriate damages award without speculation or conjecture").

**Category C.**  The claims in this category are accompanied by incomplete documentation.  There are a total of thirteen claims in this category, as reflected in Appendix A at Rows 1287-1299.  *See* Appendix A.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1 ██████████████████████████████████████████

2 ██████████████████████████████████████

3 ████████████████████████████  Without complete and accurate

4 trading records, it is impossible to verify the actual damages purportedly suffered

5 by these claimants.  *C.f. Harmsen*, 693 F.2d at 945 (damages are "recoverable only

6 to the extent they can be shown").

7     **Category D.**  The clams in this category are deficient because the claims are

8 based on insufficient or unreliable documentation.  Indeed, in most instances the

9 supporting documentation consists of spreadsheets or other documents generated

10 for litigation as opposed to the claimants' actual trading records.  There are a total

11 of twenty-four claims in this category, as reflected in Appendix A at Rows 1301-

12 1324.  *See* Appendix A ████████████████████████████████

13 ████████████████████████████████████████████

14 ████████████████████████████████████

15 ████████████████████████████████████

16 ████████████████████████████████

17 ████████████████████████████████████

18 ██████████████████████████████████

19 ████████████████████████████████████████

20 ████████  These bare assertions, completely untethered from any reliable source of

21 information as to the claimant's supposed damages cannot suffice to establish

22 damages.  *C.f. Harmsen*, 693 F.2d at 945.

23     **2.**    **Claims That Result in Windfalls for Class Members Should**

24         **Be Rejected**

25     Defendants have identified several claims that, if allowed, would result in an

26 impermissible windfall to each of these claimants.  There are a total of twelve

27 claims in this category, as reflected in Appendix A at Rows 1326-1337,

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

22

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1 ████████████████████████████ Appendix A.  Each should be

2 rejected.

3       As explained above, when this Court established the claims process, it

4 agreed with Defendants that LIFO is the more appropriate method for calculating

5 damages, because it accounts for profits resulting from class period sales of shares

6 purchased outside the class period, and therefore avoids any claimant receiving an

7 improper windfall.  Order at 9 (ECF No. 778).  The Court's decision

8 acknowledged that the PSLRA's limitation on recovery to "actual damages"

9 requires that losses suffered as a result of purchasing stock at an inflated price must

10 be reduced, or "offset," by any gains enjoyed as a result of selling the stock at the

11 inflated price.  *Id.*; *see also* 15 U.S.C. § 78bb(a); *Dura Pharms.*, 544 U.S. at 345

12 (securities-law statutes serve "not to provide investors with broad insurance against

13 market losses, but to protect them against those economic losses that

14 misrepresentations actually cause"); *Blackie*, 524 F.2d at 908–09 (damages should

15 be offset by profits recovered due to inflation attributable to the fraud); *Jaffe*

16 *Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 935–36 (N.D. Ill.

17 2010) ("out-of-pocket damages are limited to actual damages such that Plaintiff's

18 losses must be netted against any of their profits attributable to the same fraud").

19 While the Court did not specify how the claims administrator was to apply LIFO

20 where a claimant's total sales exceeded purchases made during the relevant time

21 period, or when a claimant sold shares during the class period that had been

22 purchased before the class period, the law is clear that a claimant should not be

23 allowed to recover damages when it has not actually incurred any losses.

24       Here, there were several claims submitted that reflect gains, not losses, as a

25 result of the share price inflation during the class period. ██████████████

26 ████████████████████████████████████████

27 ████████████████████████████████████

28 ████████████████████████████████

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

23

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK



11   The same is true of the other claims

12   identified in Category E, all of which should be excluded from judgment.

13   To ignore these gains without offsetting them against damages for class

14   period purchases would overstate a class member's actual economic harm resulting

15   from the alleged fraud.  *See Wong*, Purchase-Sale Matching in Securities Litigation

16   9, n.17 (recognizing that damages "should be offset by gains, even if these gains

17   were from sales of shares purchased prior to the class period" "irrespective of the

18   inventory method used to match sales to purchases").  Neither the Securities

19   Exchange Act nor anything in Federal Rule of Civil Procedure 23, allows for an

20   award of damages to an absent class member who sustained no actual loss, merely

21   because other investors established a Section 10(b) violation and did sustain actual

22   losses.  Accordingly, courts routinely apply offsets to remove windfall profits.  *See*

23   *Jaffe*, 756 F. Supp. 2d at 935–36 (reducing damages "for shares purchased before

24   the class period and sold during the Damages Period" by "any gain obtained or loss

25   avoided because of artificial inflation at the time of the sale"); *see also Arensen v.*

26   *Broadcom Corp.*, 2004 WL 3253646, at *2 (C.D. Cal. Dec. 6, 2004) (holding that a

27   proper damages calculation under the PSLRA must "take all the inflation losses

28   resulting from all purchases at the inflated price and reduce this amount by all the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

24

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1  inflation gain resulting from all sales at the inflated price."); *Abrahamson v.*

2  *Fleschner*, 568 F.2d 862, 878 (2d Cir. 1977) (explaining that it is improper to

3  permit a plaintiff to "recover for losses, but [to] ignore his profits, where both

4  result from a single wrong").  This Court should do the same.

5  ### 3.   Late Claims Should Not Be Permitted

6  Finally, several claimants submitted claims after the deadline established by

7  this Court.  There are a total of twelve claims in this category, as reflected in

8  Appendix A at Rows 1339-1350.  *See* Appendix A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮▮▮  The Court should exercise its discretion to exclude these

10 late claims because the Court set a clear deadline by which claims were to be

11 submitted, claimants were provided ample time to submit claims, and Defendants

12 would be prejudiced by allowing late claims.  *See In re Currency Conversion*, 2009

13 WL 10695357, at *13 ("The determination whether to allow the participation of

14 late claimants in a class action settlement is essentially an equitable decision within

15 the discretion of the court.  The Special Master recommends that the late claims be

16 denied. Given the length of time—sixteen months—that claimants were given to

17 submit claims and the lengthy claims approval and appeal process, allowing the

18 substantial number and dollar amount of late claims would be prejudicial.").

19 ## V.   CONCLUSION

20 For the foregoing reasons, Defendants respectfully request that the Court

21 exclude the Capital Group Claims and the claims listed on Appendix A from any

22 final judgment.  Defendants are entitled to a jury trial to determine whether they

23 can rebut the presumption of reliance as to claims filed by affiliates of Capital

24 Group.  And Defendants are entitled to summary judgment as those claims listed

25 on Appendix A.  If this Court disagrees, Defendants respectfully request that the

26 Court order a trial on any claims as to which it concludes there are genuine

27 disputes of material fact.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

25

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK

1  Dated:  August 16, 2021                Respectfully submitted,

2                                          LATHAM & WATKINS LLP

3                                          By  */s/ Michele D. Johnson*

4

5                                              Michele D. Johnson
                                               Andrew B. Clubok
6                                              Colleen C. Smith
                                               Sarah A. Tomkowiak
7                                              Kristin N. Murphy

8

9                                          *Attorneys for Defendants Puma*
                                           *Biotechnology, Inc. & Alan H. Auerbach*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

26

DEFS.' MEM. OF LAW ISO
MOTION TO EXCLUDE CLAIMS
CASE NO. 8:15-CV-00865-DOC-SHK